IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>VEROBLUE FARMS USA, INC., *et al*<br><br>Debtors. | Chapter 11 Bankruptcy<br>Case No. 18-01297<br><br>**MOTION PURSUANT TO F.R.B.P. 2019 TO BAR AD HOC COMMITTEE OF EQUITY SECURITY HOLDERS FROM PARTICIPATING IN THE CASE** |

COME NOW the Debtors, VeroBlue Farms USA, Inc. *et al*, by and through their counsel, and in support of this Motion respectfully state:

## **Background**

1.      On or about December 27, 2018 (Doc. 209), an Appearance of Counsel was filed by the Waterloo, Iowa, law firm of Beecher *et al*, on behalf of a self-proclaimed Ad Hoc Committee of Equity Security Holders (the "AHC").   The Chicago law firm of Horwood Marcus & Berk Chartered then filed an Appearance for the AHC.

2.      Two weeks later, the AHC filed its verified statement required by Rule 2019 of the Federal Rules of Bankruptcy Procedure (the "Rule 2019 Statement"). (Doc. 247).   The AHC conceded the information then contained in the Rule 2019 statement likely will have to be amended or supplemented.   On February 27, 2019, the AHC filed an amendment to the Rule 2019 Statement (the "Amended Rule 2019 Statement") (Doc. 331) adding new members but making no other changes.   No other supplement or amendment has been filed.

3.      F.R.B.P. 2019 is a disclosure provision.  Groups such as the AHC that purport to act for others are subject to Rule 2019.  Although these entities are not formed pursuant to statute or officially recognized by the Court, they are nevertheless "subject to some court control because they are fiduciaries to those they purport to represent.  It is through Rule 2019 that the court monitors such entities." 9 Collier on Bankruptcy ¶ 2109.03 (16th ed.).  The rule is also designed to monitor lawyers involved in the Chapter 11 process. *In re Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 165 (Bankr. S.D.N.Y. 2005) (citations omitted).  Thus, for instance, a law firm serving Committees must disclose fee arrangements, and indeed fee arrangements are not privileged. *Id.* at 166, 168-69.

4.      Rule 2019(e) authorizes this Court, upon non-compliance with F.R.B.P. 2019, to "refuse to permit the entity, group, or committee to be heard…in the case," and to "hold invalid any authority, acceptance, or rejection…by the entity, group, or committee." Additionally, F.R.B.P. 2019(e)(2)(C) specifically authorizes this Court to "grant other appropriate relief."

5.      As set forth below, with their measured obscurity on the entities who instigated its formation and on their organizational documents, the AHC disclosures plainly violate the letter and spirit of Rule 2019.  At a minimum, pursuant to Rule 2019(e), participation should be barred until the AHC belatedly makes complete disclosures.  But the Debtors do not believe that such a limited measure is an adequate response to the nature and scope of the Rule 2019

violations. The questionable circumstances of the AHC's formation and participation, and their wholly misleading solicitation to other shareholders, a copy of which is attached as **Exhibit 1** and discussed in detail below, render inadequate any remedy other than a complete and permanent bar from participating in these cases.

## Specific Rule 2019 Violations

6. The AHC's disclosures violate the explicit requirements of Rule 2019 in several specific respects.

### *Failure to Disclose Circumstances of AHC Formation and All Persons*
### *Involved*

7. *First,* the AHC has chosen not to disclose all of the persons or entities at whose instance the Committee was formed. *Compare* F.R.B.P. 2019(c)(1)(A) (must disclose names of each entity at whose instance the Committee was formed) *with* Rule 2019 Statement (Doc. 247) at ¶2 ("certain members" contacted counsel to form a Committee, but the names of the "certain members" are hitherto un-disclosed).

8. On its face, this shortcoming in disclosure is alone enough to bar participation in the case under Rule 2019(e) unless and until corrected, regardless of the reason for the failure or the nature of the information withheld. However, the disclosure failures in this case do not seem academic. They appear part of a larger failure to disclose "the pertinent facts and circumstances" of AHC formation. F.R.B.P. 2019(c)(1).

9.     In particular, the AHC says nothing about the potential role of the so-called Founders, who are defendants in pending litigation brought by the Debtors. Counsel to the AHC represented the Founders seemingly up until the about the very moment the AHC was formed.   One doubts that circumstance to be pure coincidence.   The AHC skirts the issue by stating, "None of the Founding Shareholders are members of the Equity Committee *or have consented to the jurisdiction of this Court for any purpose."*   Amended Rule 2019 (Doc. 331) Statement ¶ 5 (emphasis added).   This is not a statement of who instigated the AHC's formation.  The Founders could have instigated its formation without joining the AHC, indeed, this seems the natural inference.

10.     Nor does the AHC disclose the role of Sean Maniaci, author or the false and misleading solicitation letter attached as Exhibit 1.   Mr. Maniaci's conflicts of interest and the wholly misleading solicitation letter merit their own separate discussion below.

11.     The Debtors also inquire about the role of Mr. William Turk.  Mr. Turk is the brother-in-law of two of the Founders.   He was a member of the Official Unsecured Creditors Committee until he was removed.   He also appeared on the initial list of members of the AHC.   Nothing is disclosed regarding his role, if any.

12.     The Rule 2019 Statements plainly violate Rule 2019 (c)(1)(A) ("each entity" at whose instance committee was formed must be disclosed).   These failures go to the heart of Rule 2019's purpose.

### *Failure to Disclose Circumstances of Retention of AHC Counsel*

13.     *Second,* the Rule 2019 Statements (Docs. 247 & 331) also fail to properly disclose who arranged employment of AHC counsel.     *See* Rule 2019(c)(1)(B).  It is natural to infer that employment was arranged or instigated with the Founders.  After all, the transition from representation of the Founders to representation of the AHC, all by the same counsel, was seamless.  Moreover, in the Rule 2019 statement, counsel currently representing AHC *still continues to speak for the Founders*.  The quoted language in ¶9 *supra* makes that clear.

14.     As has been pointed out in other pleadings, the efforts of the AHC are curiously well-aligned with the interests of the Founders.  The AHC even advocates for immediate dismissal with prejudice of the pending litigation against the Founders, <u>*WITHOUT*</u> any consideration.

15.      The disclosure requirements here go beyond the identity the party(ies) signing an engagement letter.  Instead, Rule 2019(c) requires disclosure of the "pertinent facts and circumstances" including identify of "each" creditor or equity security holder at whose instance AHC counsel was retained.

16.     As with Rule 2019(c)(1)(A), the disclosure requirement covered in Rule 2019(c)(1)(B) go right to the core of Rule 2019's purpose in these unusual circumstances.

### *Failure to Disclose By-Laws*

17.     *Third,* the AHC's Rule 2019 Statement (Doc. 247 at ¶ 3) fails to include the by-laws or instrument "authorizing the … Committee to act on behalf of …

equity security holders," as explicitly required by F.R.B.P. 2019(c)(4). *Compare* Rule 2019 Statement (Doc. 247at ¶4) (refusing to file or disclose publicly the bylaws) *with In re C F Holding Corp.,* 145 B.R. 124, 126 (Bankr. D. Conn. 1992) (earlier version of Rule 2019 also required attorneys to file copy of instrument that empowers them to act).

18.    In the face of this clear rule, the AHC explicitly has refused to file its by-laws.  Instead, it offered to disclose a copy to the United States Trustee, which even if accomplished does not bring the AHC into compliance with the Rule. Alternatively, it offered to file under seal.  No attempt has been made to file under seal and the case law above would not support such request.  The AHC secrecy regarding its by-laws is frankly perplexing.

*Failure to Disclose Economic Interests*

19.    *Fourth,* the Rule 2019 statements fail to disclose the nature and amount of each disclosable economic interest held *as of the date the Committee was formed. Compare* F.R.B.P. 2019(c)(2) *with* Rule 2019 Statement (Doc. 247 at ¶1) (Exh. A showed name of holders "*as of the date of this Verified Statement*").  The difference is unexplained.   Any attempt to limit provision of the information required under the Rule would be unjustified. *cf. In re Northwest Airlines Corp.*, 363 B.R. 704, 705 (Bankr. S.D.N.Y. 2007) (court refused to seal information that "discloses the specifics of the purchases and sales of ... securities made by Committee members"); 11 U.S.C. §107 and F.R.B.P. 9018 (trade secrets, confidential research, personal identifying information, etc. may be sealed). To the extent the

AHC members assert equity investments are confidential, surely such information is not personal identifying information. Indeed, the information is not even "commercial information" that might otherwise be entitled to confidentiality. *See e.g., In re Quigley Co.,* 437 B.R. 102, 154 (Bankr. S.D.N.Y. 2010) ("bargaining leverage" in future unrelated cases is not "commercial information" entitled to secrecy or §107 protection).

## The AHC's Solicitation Letter is Wholly Misleading

### *Mr. Manicai's Myriad Conflicts of Interest*

20.    The original Rule 2019 Statement (Doc. 247), filed January 13, 2019, reflected a relatively small constituency, consisting mainly of FishDish LLC (and its members, which the AHC misleading presented has having interests in the Debtors), the aforementioned Mr. Turk.   Indeed, arguably the AHC validly consisted of one solitary member, FishDish, per the original Rule 2019 Statement. At the January 14 hearing on the Debtors' Disclosure Statement, AHC counsel represented that its membership would be growing a great deal.  Unknown to the Debtors or the Court at the time of that statement, all shareholders were being sent a letter dated January 9 from Sean Maniaci, attached as Exhibit 1.

21.    Mr. Maniaci is a partner in the Toronto law firm Cassels Brock. Cassels Brock and Mr. Maniaci were counsel to and represented the Debtor. *See, e.g.,* Proof of Claim #21 filed with the Clerk of this Court. At least according to the Proof of Claim, the most recent legal services were rendered by the law firm on November 28, 2017. Cassels Brock's work for the Debtors was not casual or isolated.

Rather, Cassels Brock worked closely with the Debtor in many aspects of the Debtors' operations (such as preparation of investor memoranda). Neither the Debtor nor Cassels Brock has entered into any disengagement agreement.

22.   It turns out that Cassels Brock also rendered legal services for the Debtors' "Founders" and/or their businesses, such as one of the Founders' other businesses, known as ChipMeds. *See* Exhibit 2.

23.   The Debtor is also learning of a much more serious set of apparent conflicts.   If the transactions were effectuated consistent with documents the Debtors have discovered, the conflicts are nothing less than shocking.

24.   Maniaci, along with his brother Anthony, and appears to be one of the first shareholders of Debtors. **Exhibit 3** (August 15, 2014 email between Maniaci and Wulf identifying Maniaci (listed as "Sean") as one of ten shareholders along with the Founders (James Rea, Ted Rea, Bruce Hall, Wulf, and Keith Driver); **Exhibit 4**, September 29, 2014 email chain between Maniaci and Wulf, attaching an Excel spreadsheet including Maniaci and his brother as shareholders (as noted on Maniaci's email to Wulf, attaching the spreadsheet "with mine included," and further demonstrating that Maniaci and his brother Anthony, along with other early shareholders, received a 50% discount on their stock).

25.   Moreover, see **Exhibit 5**, a spreadsheet indicating **that Maniaci's entity, Sailstreet Capital Inc., received 750,000 shares in VBF Canada for a grand total of .075 (seventy-five cents)** in May 2014.  This transaction is further documented in **Exhibit 6**, a subscription agreement signed by Maniaci for

Sailstreet Capital and counter-signed by Wulf for Debtors reflecting that price, and **Exhibit 7,** documentation showing that Sailstreet Capital Inc. paid "$0.000001" per share of stock and that the aforementioned entity headed by Maniaci's brother (Anthony), Left Rail Investments Inc., as well as Maniaci and his brother personally, also received stock for $0.50 a share while the documentation shows that others paid more).  Debtors have not located any documentation indicating that the Maniaci's or their entities paid any more for this stock than is indicated above.

### *The Misleading January 9 Solicitation Letter*

26.     Against the interest of his actual clients (the Debtors), Maniaci authored and circulated Exhibit 1 to all shareholders encouraging them to join the AHC and fund expenses.  The letter not only presents a conflict of interest but, of more immediate relevance to Rule 2019, is seriously misleading in many respects.  The letter highlights the absence of inadvertence in the disclosure failures described above and magnifies the damage to the process caused by those failures.

27.     Indeed, very soon after learning of the letter, the Debtors complained to the Court of some of the ways the letter is misleading.  (Doc. 279).  The AHC has done nothing since to correct the record.  Upon closer examination and learning more about the circumstances, Exhibit 1 is even worse than first thought.  The Debtors urge the Court to give the letter a close read and observe the ways it is misleading.

(a) The letter asserted that "the Bankruptcy Court appointed attorney Tom Fawkes "to represent the Official Committee of Unsecured Creditors."  *See*

Exhibit 1, p. 1. This Court has never made such appointment. Such an assertion in the letter is blatantly wrong, false, misleading, and has no factual basis;

(b) The letter did not disclose Mr. Maniaci's myriad conflicts of interest or his relationship with the Founders, as discussed above;

(c) The letter refers to the alleged investigation by the Unsecured Creditor's Committee "investigation" and "initial conclusions." This is a remarkable sleight of hand. As the AHC knew, the Creditors Committee did not conduct any investigation in any meaningful sense but instead received all its information from the Founders – defendants in pending litigation brought on behalf of the estate – without independent investigation or verification. The Founders have been working closely with the AHC – working with the same counsel. Thus, the Founders and AHC themselves provided allegations to the Creditors Committee. Recognizing the utterly incomplete basis of its investigation, Creditors Committee itself was unwilling to make those allegations to the Court because they were not properly researched, and basic factual allegations are demonstrably wrong. The Creditors Committee has since withdrawn the demand. The January 9 letter, (Exhibit 1) however, with its combination of half-truths and outright falsehoods, leaves a reader with the false impression that a lawyer appointed by the Bankruptcy Court conducted an investigation and that there has been some sort of finding of wrongdoing. In this

regard, it should be kept in mind that the January 9 letter was authored by lawyers and intended for non-lawyers and farmers who do not regularly invest.

(d) The January 9 letter is misleading about the priority of claims in these cases. The letter refers to the chance to "participate in a Bankruptcy Case recovery." But the claims they seek to pursue (lack of merit aside) would be assets of the estate, which is why the AHC seeks bankruptcy court permission to sue the claims. The January 9 letter, however, makes absolutely no mention of the $53 million secured and unsecured claim of Broadmoor or the $28 million in preferred shares held by Alder. Instead, the letter implies that any "Bankruptcy Case recovery" over $4 million will generate returns to shareholders — totally ignoring $80 million of debt and equity with a higher priority. In reality, the only chance of recovery for the members of the AHC would require the complete subordination of the secured claims of Broadmoor below common equity, a subordination of Alder's $28 million of preferred shared below common equity, and a net recovery in excess of $4 million to generate any return to shareholders. The litigation apparently contemplated by the AHC is quite expensive and highly speculative. The letter does not even mention the need for this litigation much less its far-fetched nature; it simply ignores $80 million.

28.   The January 9, 2019 letter asks for money on the strength of these misrepresentations. It urges the shareholders to "get engaged in the process and, crowdfund litigation to protect our interests."  If a business investment were pitched with materials as misleading as the January 9 solicitation letter, the sponsors might get sued for fraud.

### The AHC Should be Barred From Participating in this Case

29.   The AHC's multiple Rule 2019 violations have resulted in a circumstance presenting a very real danger (likelihood in the Debtors' view) that shareholders have been misled into financing the AHC; and the Court and parties have been misled about the AHC's provenance and intentions.  "Whether the court will permit corrective action will vary from case to case.  If the entity sanctioned under Rule 2019(e) acted willfully in failing to comply, the court may make any sanction final; if the failure is inadvertent or technical, the court may condition further participation in the case by those the representative purported to represents." 9 Collier on Bankruptcy ¶ 2109.06[3][a] (16th ed.).

30.   The fundamental Rule 2019 violations presented here cannot be written off as merely "inadvertent or technical."  Instead, they are willful, fundamental and have as likely resulted in actual harm as can ever be established in the case of a faulty disclosure of this nature.  The AHC should be permanently barred from participating in this case and it should be compelled to return its money to the shareholders duped into participating.

WHEREFORE, the Debtors respectfully pray this Court on such notice and hearing as it may direct, enter and enroll an order granting the following relief:

A.      Forbidding the AHC to participate further in this case;

B.      Striking any and all objection from the AHC against confirmation of Debtor's Plan;

C.      Directing return of funds to shareholders who elected to fund the activities of the AHC; and

D.      Granting such further relief as may be just and proper under the premises.

Dated:  March 7, 2019

AG & BUSINESS LEGAL STRATEGIES

/s/ Joseph A. Peiffer
Joseph A. Peiffer
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of March 2019, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system and served electronically on those participants that receive service through the CM/ECF System. The undersigned further certifies the foregoing document was sent to persons or representatives via electronic mail or U.S. Mail postage pre-paid as set forth below.

Signed:  /s/ Hannah Hanser

| | |
|---|---|
| Phillip L. Sheets, Ltd.<br>c/o Phillip Sheets<br>7632 Jefferson Rd<br>Belleville, IL 62221 | William John Turk<br>5621 Valhalla Drive<br>North Richland Hills, TX 76180 |
| McDonald Supply/Hajoca Corp<br>c/o Alysia Hedrick<br>P.O. Box 708<br>Dubuque, IA 52004-0708 | Elizabeth M. Lally<br>17838 Burke Street, Suite 250<br>Omaha, NE 68118 |
| Laura M. Hyer<br>Bradley & Riley PC<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 | Joseph E. Schmall<br>Bradley & Riley<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 |
| Eric W. Lam<br>Simmons Perrine Moyer Bergman PLC<br>115 Third Street SE, Suite 1200<br>Cedar Rapids, IA 52401 | |



**CASSELS BROCK**
LAWYERS

January 9, 2019

Dear Fellow VBF Shareholder,

I write to you as a minority shareholder of VeroBlue Farms. As you are probably aware, on September 21, 2018, VeroBlue Farms USA, Inc. ("VBF")[1] filed a chapter 11 bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Iowa (the "Bankruptcy Court"), case number 18-01297 (the "Bankruptcy Case"). On December 10, 2018, the VBF Debtors (see footnote below) filed the proposed Disclosure Statement and Joint Plan of Reorganization of VeroBlue Farms USA, Inc. and its Affiliated Debtors (the "Plan"). The Plan was initiated by Alder Aqua, Ltd. ("Alder Aqua"), the majority shareholder of VBF.

If the Plan is approved and confirmed by the Bankruptcy Court, Alder Aqua will own the reorganized VBF and wipe out all other equity interests (including yours). Unsecured creditors will get a mere ten cents ($0.10) on the dollar for their claims. To protect the unsecured creditors' interests, the Bankruptcy Court appointed attorney Tom Fawkes[2] to represent the Official Committee of Unsecured Creditors ("Creditors' Committee") in the Bankruptcy Case. After an initial investigation, the Creditors' Committee concluded that significant evidence of lender liability on the part of VBF's senior secured creditor, Broadmoor Financial, L.P. ("Broadmoor") exists and that Alder Aqua acted to improperly control the VBF companies. Additionally, the Creditors' Committee has preliminarily determined that a pending lawsuit against the former founders of VBF[3] is retaliatory in nature and without merit. Accordingly, the Creditors' Committee formally challenged the validity, priority, extent and enforceability of the entirety of Broadmoor's claim and demanded that VBF (a) file suit against the secured creditor, or (b) consent to the Creditors' Committee's prosecution of that action on behalf of VBF, by the deadline established by the Bankruptcy Court for late December.

The Creditors' Committee investigation gives good reason to believe that current minority shareholders may also be able to participate in a Bankruptcy Case recovery. Another Chicago law firm, Horwood Marcus & Berk Chartered, led by attorney Aaron Hammer,[4] is representing an ad hoc (*i.e.,* unofficial) committee of VBF shareholders ("Equity Committee") to join in the Bankruptcy Case and likely prosecute a separate lawsuit against Broadmoor, Alder Aqua and all of its representatives on behalf of VBF shareholders. To that end, the Equity Committee joined the demand made by the Creditors' Committee in late December. The Equity Committee's efforts are being spearheaded by Mr. Ken Lockard and FishDish, LLC, an Iowa based entity with a $6 million preferred equity investment in VBF, and its investors (collectively, "Preferred Shareholders"). There are well over 100 common shareholders

---

[1] And VBF's subsidiaries and affiliates, VBF Operations, Inc. ("VBFO"), Iowa's First, Inc. ("IFI"); VBF Transport, Inc. ("VBFT") and VBF IP, Inc. ("VBFIP" and collectively with VBF, VBFO, IFI, VBFT and VBIP, the "Debtors").

[2] http://restructuringshop.com/Bio-Thomas-Fawkes.aspx

[3] *VeroBlue Farms USA, Inc. v. Wulf, et al,* Case No. 18-cv-3047 (N.D Ia.)

[4] https://www.hmblaw.com/professionals-directory/aaron-l-hammer.aspx

**Cassels Brock & Blackwell LLP**     2100 Scotia Plaza, 40 King Street West, Toronto Canada M5H 3C2
tel 416 869 5300   fax 416 360 8877   www.casselsbrock.com



**CASSELS BROCK**
L A W Y E R S

in VBF ("Common Shareholders") and the goal is to have the majority of them join the Equity Committee.

**If as VBF's minority shareholders we do nothing, it is very likely that we will receive little to nothing in the Bankruptcy Case. Time is not on our side and the time to protect your investment is now. To that end, the Equity Committee is reaching out to all VBF shareholders to get engaged in the process and, essentially, crowdfund litigation to protect our interests.**

If you are interested in participating in this process, we ask that you sign and return the attached letter to protect legal privileges given our respective common interests. Once we receive this letter, you will be able to: (a) review the Equity Committee By-Laws and Master Funding Agreement; (b) be included in the Equity Committee and receive information about the Bankruptcy Case on a regular basis; and (c) if you so choose, to participate in the funding of the Equity Committee's professional fees by contributing between two cents ($.02) and five cents ($.05) per VBF common share you own.

If the Creditors' Committee and Equity Committee are successful in obtaining a recovery in the Bankruptcy Case through litigation or settlement, up to the first $4 million (including litigation costs) of that recovery would be paid to the unsecured creditors represented by the Creditors' Committee.[5] Any recovery over and above that amount would go to the Equity Committee to Preferred Shareholders and Common Shareholders on a 70%-30% basis, after repayment of the financing premium for funding shareholders and net of any outstanding professional fees. Without the Equity Committee agreements and structure, Preferred Shareholders would receive its full $6 million recovery before Common Shareholders received anything from the Bankruptcy Case. The Preferred Shareholders have agreed to share 30% of their preferred return with Common Shareholders until they have received their full recovery, following which 100% of any remaining proceeds will be paid to the Common Shareholders. All payments to Common Shareholders will be divvied up pro rata among the Common Shareholders.

**Even if you choose not to participate in funding the Equity Committee, you can still be engaged and involved in the Equity Committee and receive information on the Bankruptcy Case.** Your support and input remain critical to your and all other shareholders' chances of success and recovery in the aftermath of what we believe has been an improper scheme to deprive you of your investment.

If you want to receive further information or have any questions including with respect to the attached privileges letter, please call or e-mail (or have your attorney call or e-mail) Equity Committee counsel, Aaron Hammer (224) 531-2903; ahammer@hmblaw.com, or John Guzzardo, at (312) 242-3307; jguzzardo@hmblaw.com, for further information and documentation. **Please do not reach out to me directly, as I will refer you to Aaron and John.**

We look forward to hearing from you as soon as possible.

Sincerely,

Sean Maniaci,
Shareholder of VBF

---

[5] This amount represents creditors' recovery on their estimated allowed claims plus legal fees and other expenses.

**From:** Maniaci, Sean [mailto:SManiaci@CasselsBrock.com]
**Sent:** Wednesday, October 15, 2014 10:52 AM
**To:** jrea@verobluefarms.com
**Cc:** tracy.arbanas@verobluefarms.com; Litchen, Jamie
**Subject:** Re: Chipmeds and Chipman Pharmaceuticals Ltd.
Hello Tracy,
I am copying in Jamie Litchen who will be assisting me with this. Please let us know what you need.
Best,

Sean Maniaci
416-860-6466

On Oct 15, 2014, at 11:50 AM, "jrea@verobluefarms.com" <jrea@verobluefarms.com> wrote:

Sean, meet Tracy
Tracy, Meet Sean.
Sean,
Tracy will be requesting corporate docs for chipmeds and chipman pharmaceuticals in order to set up accounting for these companies.
Please exchange contact info.
regards
James Rea
VeroBlue Farms
(844) VEROBLUE -office
(844) 837-6258 - office
(214) 837-3838 - direct

<hr size=2 width="100%" align=center>

This message, including any attachments, is privileged and may contain confidential information intended only for the person(s) named above. Any other distribution, copying or disclosure is strictly prohibited. Communication by email is not a secure medium and, as part of the transmission process, this message may be copied to servers operated by third parties while in transit. Unless you advise us to the contrary, by accepting communications that may contain your personal information from us via email, you are deemed to provide your consent to our transmission of the contents of this message in this manner. If you are not the intended recipient or have received this message in error, please notify us immediately by reply email and permanently delete the original transmission from us, including any attachments, without making a copy.

Exhibit "2" 1 of 1

**From:** Leslie Wulf
**Sent:** Friday, August 15, 2014 2:10 PM
**To:** 'Sean Maniaci'
**Cc:** les@adroitinvest.com
**Subject:** FW: Structure

Jason

Here is what I was thinking for a structure. Give me your thought

Raise $13M-$15M

Convertible preferred in 25% of company 7,500,000 shares @ $1.73

Convertible preferred pay 8%-9% coupon

|  | VBF | 18,000,000 | Of VBF before convert | After Convert | Company Names |
|---|---|---|---|---|---|
| Jason | 6.00% | 1,080,000 | 4.80% | 3.60% | Kelson Capital Inc. |
| Tim | 0.00% | 0 | 0.00% | 0.00% | |
| Sean | 2.00% | 360,000 | 1.60% | 1.20% | |
| James | 18.00% | 3,240,000 | 14.40% | 10.80% | YSKS LLC. |
| Bruce | 18.00% | 3,240,000 | 14.40% | 10.80% | BHDH Family LP. |
| Les | 18.00% | 3,240,000 | 14.40% | 10.80% | LAW Holdings LLC. |
| Ted | 18.00% | 3,240,000 | 14.40% | 10.80% | J2 Family LP. |
| Rick (Fish) | 10.00% | 1,800,000 | 8.00% | 6.00% | RL Sheriff Contracting, Inc. |
| Keith | 10.00% | 1,800,000 | 8.00% | 6.00% | Seven Hours Holding Company Inc. |
| Nelsons | 0.00% | 4,500,000 | 20.00% | 15.00% | |
|  | **100%** | **22,500,000** | **100.00%** | **75.00%** | |
| **Investor Group** | **$13,000,000** | **7,500,000** | **25.00%** | | |
| **Shares @** | **$1.73** | **30,000,000** | | | |

**From:** Maniaci, Sean
**Sent:** Monday, September 29, 2014 4:57 PM
**To:** 'Leslie Wulf '
**Subject:** RE: VBF Round One FF list 9-29-14.xlsx
Les,

With mine included.


Sean Maniaci
Direct: +1 416 860 6466 * Fax: +1 416 642 7158 * smaniaci@casselsbrock.com
2100 Scotia Plaza, 40 King Street West, Toronto, Ontario, M5H 3C2
www.casselsbrock.com

Business & Corporate Law Firm in Canada | Cassels Brock

www.casselsbrock.com

REPRESENTATIVE WORK. Goldcorp and Newmont Combine to Create World's
Leading Gold Company in US$10 Billion Transaction; PharmHouse Completes $80
Million Bank Debt Facility, One of the First Syndicated Debt Deals in the Cannabis
Industry


-----Original Message-----
**From:** Leslie Wulf [mailto:les@verobluefarms.com]
**Sent:** Monday, September 29, 2014 1:17 PM
**To:** Maniaci, Sean
**Cc:** Leslie A Wulf
**Subject:** VBF Round One FF list 9-29-14.xlsx

This message, including any attachments, is privileged and may contain confidential information
intended only for the person(s) named above. Any other distribution, copying or disclosure is strictly
prohibited. Communication by email is not a secure medium and, as part of the transmission process,
this message may be copied to servers operated by third parties while in transit. Unless you advise us to
the contrary, by accepting communications that may contain your personal information from us via
email, you are deemed to provide your consent to our transmission of the contents of this message in
this manner. If you are not the intended recipient or have received this message in error, please notify
us immediately by reply email and permanently delete the original transmission from us, including any
attachments, without making a copy.

Exhibit "4" 1 of 2

| Round 1 VBF | $ | Shares First Round | Recieved | |
|---|---|---|---|---|
| | | $                    0.50 | | |
| | | - | | |
| Tim Finucan | $100,000 | 200,000 | Yes | Check |
| Ted Frandson | $50,000 | 100,000 | Yes | Check |
| Todd Foss | $25,000 | 50,000 | Yes | Check |
| Dave Dodgen | $100,000 | 200,000 | Yes | Check |
| Myron Friesen | $500,000 | 1,000,000 | Yes | Check |
| Geri A. Kohlhaas | $175,000 | 350,000 | Yes | wire |
| JD (Jason Guy) | $25,000 | 50,000 | No | Check |
| Gerald & Joel Pederson | $10,000 | 20,000 | No | Check |
| Brent Nelson | $20,000 | 40,000 | Yes | Check |
| Ian & Barb Campbell | $10,000 | 20,000 | Yes | Check |
| Mike & Carol Yanda | $50,000 | 100,000 | Yes | Check |
| Sappjire Partners | $25,000 | 50,000 | Yes | Check |
| Chad Smith | $25,000 | 50,000 | Yes | Check |
| Chris Roethler | $20,000 | 40,000 | Yes | Check |
| Kathy Getting | $25,000 | 50,000 | Yes | Check |
| Mike Nelosn | $25,000 | 50,000 | Yes | Check |
| Doug Nelson | $26,000 | 52,000 | Yes | Check |
| Tom Charken | $26,500 | 53,000 | Yes | Check |
| Phil Vogue | $25,000 | 50,000 | No | Check |
| Stewart Hinerfeld | $14,000 | 28,000 | Yes | Check |
| Bob Malloy | $17,500 | 35,000 | Yes | wire |
| Barry Stoelting | $12,000 | 24,000 | Yes | wire |
| Greg MaHarry | $35,000 | 70,000 | Yes | Check |
| Brian Skow | $25,000 | 50,000 | Yes | Check |
| Kim Jensen | $5,000 | 10,000 | No | Check |
| Dean Carden | $25,000 | 50,000 | Yes | Check |
| Left Rail Investments Inc. | $20,000 | 40,000 | No | Check |
| Sean Maniaci | $20,000 | 40,000 | No | Check |
| Anthony Maniaci | $20,000 | 40,000 | No | Check |

| Names Shares | | Shares | Paid | Date |
|---|---|---|---|---|
| SAILSTREET CAPITAL INC.- Sean Maniaci | CA | 750,000 | $0.00 | May-14 |

TO:        VEROBLUE FARMS INC.

and to the directors thereof


The undersigned hereby subscribes for and agrees to take up 750,000 common shares in the capital of VeroBlue Farms Inc. and tenders herewith the sum of $0.75 in full payment of the subscription price for such shares.

The undersigned hereby requests that the said shares be allotted to the undersigned or to such persons as the undersigned may in writing direct, that such shares be issued as fully paid and non-assessable and that a certificate or certificates representing such shares be issued in the name of the undersigned or as the undersigned may, in writing, direct.

DATED as of the 18th day of September, 2014.


SAILSTREET CAPITAL INC.

Per: _____

Authorized Signing Officer

I have authority to bind the corporation


Legal*12486091.2

Exhibit "6" 1 of 2

TO:      VEROBLUE FARMS INC.
        (the "**Corporation**")

        and to the directors thereof.

The undersigned, the Chief Executive Officer of the Corporation, hereby certifies that the Corporation has duly received from Sailstreet Capital Inc. (the "**Shareholder**") the sum of $0.75 pursuant to a subscription of shares dated as of the date hereof, which $0.75 is the consideration for the issuance by the Corporation of 750,000 common shares in the capital of the Corporation to the Shareholder as contemplated in a resolution passed by the board of directors of the Corporation today.

DATED as of the 18th day of September, 2014.

_____
Leslie Wulf

# EQUITY

EQUITY FINANCIAL TRUST COMPANY
Effective: 06/08/2016

Page     1

```
*   VEROBLUE FARMS INC
        CUSIP:
        ISIN:

*   Selection by Share Range:
        Holders who own at least 1.0000 shares are included.

*   Suppressed holders ARE included

*   Sort Criteria:
        ALPHABETIC
```

Certified by:

*[signature]*

Report Run On 6/8/2016 At 1:07pm By LORI WINCHESTER

EQUITY FINANCIAL TRUST COMPANY                    Page    8
Effective: 06.08/2016

=========================================================================
ISSUE: VEROBLUE FARMS INC                    VERO

| CCOUNT | NAME & ADDRESS | | HOLDINGS |
|---|---|---|---|
| 3 | BRIAN J. HOLM AND DEBRA A. HOLM<br>1055 FORTY OAKS DR<br>STORY CITY IA 50248<br>UNITED STATES | $0.90 | 39,000<br>0.115% |
| 4 | JESSICA HOY<br>412 BRYAN AVE<br>ROLAND IA 50236<br>UNITED STATES | ¢0.90 | 5,555<br>0.016% |
| 8 | SAILSTREET CAPITAL INC.<br>2100 - 40 KING STREET WEST<br>TORONTO ON M5H 3C2 | ₱0.000001 | 750,000<br>2.211% |
|  | J2 FAMILY LP<br>1507 CAPITAL AVE.<br>SUITE 101<br>PLANO TX 75074<br>UNITED STATES | $0.000001 | 3,300,000<br>9.730% |
| 5 | DOUGLAS W. JACOBSON<br>3605 RIVER RD.<br>DAYTON IA 50530<br>UNITED STATES | $0.90 | 27,777<br>0.082% |
| 6 | K&M AG CONSTRUCTION INC.<br>340 MACKINLEY KANTOR DR<br>WESTER IA 50595<br>UNITED STATES | ¢0.90 | 27,778<br>0.082% |
| 4 | GERI KOHLHAAS<br>11 WEST FORK DR.<br>HUMBOLDT IA 50548<br>UNITED STATES | $0.50 | 350,000<br>1.032% |
| 6 | ASHLEY KAY LARSON<br>5203 NW 5TH ST.<br>ANKENY IA 50023<br>UNITED STATES | ¢0.000001 | 100,000<br>0.295% |
|  | LAW HOLDINGS LLC<br>1507 CAPITAL AVE.<br>SUITE 101<br>PLANO TX 75074<br>UNITED STATES | $0.000001 | 3,600,000<br>10.615% |

Report Run On 6/8/2016 At 1:07pm By LORI WINCHESTER

EQUITY FINANCIAL TRUST COMPANY                    Page    9
Effective: 06/08/2016

===============================================================================

ISSUE: VEROBLUE FARMS INC                          VERO

CCOUNT          NAME & ADDRESS                              HOLDINGS
===============================================================================

3        LEFT RAIL INVESTMENTS INC.                        40,000
         80 CARLAUREN ROAD - 23         $0.50              0.118%
         ATTENTION: ANTHONY O. MANIACI
         WOODBRIDGE ON L4L 7Z5


         LOXLEY INVESTMENTS LLC                            300,000
         1507 CAPITAL AVE.                                 0.885%
         SUITE 101                      $0.000001
         PLANO TX 75074
         UNITED STATES

13       TERRY A. LYONS                                    200,000
         2039 WEST 35TH AVE             $0.000001          0.590%
         VANCOUVER BC V6M 1J1

8        GREGORY MAHARRY &                                 70,000
         JENNIFER MAHARRY                                  0.206%
         904 BANK STREET
         WEBSTER CITY IA 50595          $0.50
         UNITED STATES

6        ROBERT MALLOY                                     35,000
         P.O. BOX 128                   $0.50              0.103%
         GOLDFIELD IA 50542
         UNITED STATES

7        CAROLINE MANESS                                   22,222
         538 WOODLAND DR                $0.90              0.066%
         GREENSBORO NC 27408
         UNITED STATES

2        ANTHONY O. MANIACI                                40,000
         80 CARLAUREN ROAD - 23              $0.50         0.118%
         WOODBRIDGE ON L4L 7Z5

7        SEAN MANIACI                                      40,000
         2100- 40 KING STREET WEST           $0.50         0.118%
         TORONTO ON M5H 3C2

8        ROGER MAYER                                       44,444
         39907 FOOTHILL AVE                                0.131%
         ST. AMSGAR IA 50472            $0.90
         UNITED STATES



         Report Run On 6/8/2016 At 1:07pm By LORI WINCHESTER