.

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | |
| | Case No. 18-01297 |
| VeroBlue Farms USA, Inc., *et. al.*, EIN: | |
| | Chapter 11 |
| Debtors. | |

## SUBSTITUTED AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF VEROBLUE FARMS USA, INC. AND ITS AFFILIATED DEBTORS

Dated: April 15, 2019

Dan Childers
Elderkin & Pirnie, PLC
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Telephone: (319) 362-2137
Facsimile: (319) 362-1640
Email:  dchilders@elderkinpirnie.com

Joseph A. Peiffer
Ag & Business Legal Strategies
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

**Attorneys for the Debtors**

# TABLE OF CONTENTS

**Page**

ARTICLE I      INTRODUCTION ........................................................................................ 1

ARTICLE II      DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION
OF TIME.................................................................................................. 1

2.01    Definitions................................................................................................. 1

2.02    Rules of Interpretation .............................................................................. 8

2.03    Computation of Time ................................................................................ 8

ARTICLE III      TREATMENT OF UNCLASSIFIED CLAIMS............................................ 8

3.01    Administrative Expense Claims................................................................ 8

3.02    DIP Facility Claim .................................................................................... 9

3.03    Professional Fee Claims............................................................................ 9

3.04    Post-Effective Date Professional Fees ..................................................... 9

3.05    Priority Tax Claims................................................................................... 9

3.06    Statutory Fees......................................................................................... 10

ARTICLE IV      DESIGNATION OF CLASSES ............................................................... 10

4.01    Classification.......................................................................................... 10

ARTICLE V      TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS................. 11

5.01    Class 1: Priority Non-Tax Claims.......................................................... 11

5.02    Class 2: Broadmoor Secured Claim....................................................... 11

5.03    Class 3(a), (b) and (c): Secured Tax Claims ......................................... 12

     5.03(a) Class 3(a): Secured Tax Claim—Hamilton County Treasurer (Ur-
ban Farm) ............................................................................................... 12

     5.03(b) Class 3(b): Secured Tax Claim—Hamilton County Treasurer
(Blairsburg Facility)............................................................................... 12

     5.03(c) Class 3(c): Secured Tax Claim—Hardin County Treasurer (Buck-
eye Facility) ........................................................................................... 12

5.04    Class 4: Additional Secured Claim—Card Services............................. 13

5.05    Class 5: General Unsecured Claims....................................................... 13

5.06    Class 6: Intercompany Interests ............................................................ 13

5.07    Class 7: Interests in VBF USA ............................................................. 14

5.08    Cramdown............................................................................................... 14

ARTICLE VI      PROVISIONS REGARDING RESOLUTION OF CLAIMS AND
DISTRIBUTIONS UNDER THE PLAN ................................................... 14

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---|
| 6.01 | Method of Distributions Under the Plan | 14 |
| 6.02 | Claims Objections | 15 |
| 6.03 | Disputed Claims | 15 |
| 6.04 | Claims Estimation | 16 |
| 6.05 | Claims Allowance | 16 |
| ARTICLE VII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 16 |
| 7.01 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 16 |
| 7.02 | Rejection Damages Claims | 16 |
| 7.03 | Assumed Contracts; Cure of Defaults | 17 |
| ARTICLE VIII | UNSECURED CREDITOR TRUST | 18 |
| 8.01 | Unsecured Creditor Trust Declaration | 18 |
| 8.02 | Unsecured Creditor Trustee | 18 |
| 8.03 | Vesting of Assets | 18 |
| 8.04 | Creditor Trust Asset Administration | 19 |
| 8.05 | Case Administration | 19 |
| 8.06 | Creditor Trustee's Professionals | 19 |
| 8.07 | Quarterly Reports | 19 |
| 8.08 | Representative of Estate | 20 |
| 8.09 | Cooperation Regarding Assigned Causes of Action | 20 |
| 8.10 | Compensation of Creditor Trustee and Professionals | 20 |
| 8.11 | Exculpation | 20 |
| ARTICLE IX | OTHER MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN | 21 |
| 9.01 | Term of Bankruptcy Injunction or Stays | 21 |
| 9.02 | Consummation of the Plan | 21 |
| 9.03 | Sources of Cash for Plan Distributions | 21 |
| 9.04 | Compromise of Controversies | 21 |
| 9.05 | Effect of Plan on Undersecured Creditors | 21 |
| 9.06 | Effect of Plan on Debtors | 22 |
| 9.07 | Issuance of the Plan Sponsor New Equity Interest | 23 |

# TABLE OF CONTENTS

(continued)

**Page**

| | | |
|---|---|---:|
| 9.08 | Plan Transactions | 24 |
| 9.09 | Cancellation of Unexercised and Unvested Interests | 24 |
| 9.10 | Preservation of Causes of Action | 25 |
| 9.11 | Powers and Duties of Reorganized Debtors | 25 |
| 9.12 | Default Remedies | 26 |
| 9.13 | Discharge | 26 |
| 9.14 | Debtor Releases | 27 |
| 9.15 | Releases by Holders of Claims and Interests | 28 |
| 9.16 | Exculpation | 29 |
| 9.17 | Injunction on Claims | 29 |
| ARTICLE X | SUBSTANTIVE CONSOLIDATION OF THE DEBTORS | 30 |
| ARTICLE XI | EFFECTIVENESS OF THE PLAN | 31 |
| 11.01 | Conditions Precedent to Effectiveness | 31 |
| 11.02 | Waiver of Conditions Precedent | 31 |
| 11.03 | Effect of Non-Occurrence of Effective Date | 31 |
| ARTICLE XII | RETENTION OF JURISDICTION | 31 |
| ARTICLE XIII | MISCELLANEOUS PROVISIONS | 32 |
| 13.01 | Aid in Implementation of Plan | 32 |
| 13.02 | Amendment or Modification of the Plan | 33 |
| 13.03 | Severability | 33 |
| 13.04 | Revocation or Withdrawal of the Plan | 33 |
| 13.05 | Binding Effect | 33 |
| 13.06 | Notices | 33 |
| 13.07 | Governing Law | 34 |
| 13.08 | Allocation of Plan Distributions Between Principal and Interest | 34 |

.

**SUBSTITUTED AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF VEROBLUE FARMS USA, INC. AND ITS AFFILIATED DEBTORS**

## ARTICLE I
## INTRODUCTION

Pursuant to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), VeroBlue Farms USA, Inc. ("**VBF USA**"), VBF Operations Inc., Iowa's First, Inc., VBF Transport, Inc., and VBF IP, Inc. (the "**Debtors**") propose the following Substituted Amended Joint Chapter 11 Plan of Reorganization (the "**Plan**"). This Plan includes the revisions made to the Plan filed as Doc. 364 on March 13, 2019 in the Technical Amendments to the plan filed on April 15, 2019 as Doc. 464 and includes a Revised Creditor Trust Agreement filed on April 15, 2019 as Doc. 463. Holders of Claims and Interests should refer to the Disclosure Statement accompanying this Plan for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and liquidation analysis, as well as a summary and description of the Plan.[1]

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

2.01 **Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"**Additional Secured Claim**" means any Secured Claim other than the Broadmoor Secured Claim, the Secured Claim held by the Plan Sponsor arising from the Broadmoor Loan, or a Secured Tax Claim.

"**Administrative Expense Claim**" means any right to payment constituting a cost or expense of the Chapter 11 Cases under sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business or liquidation of their assets, any Professional Fee Claim, and any fees or charges assessed against the Estate under section 1930 of Title 28 of the United States Code.

"**Allowed**" means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim (a) for which a Proof of Claim was timely Filed with the Bankruptcy Court, and as to which no Claims Objection is interposed; (b) for which no Proof of Claim thereof was Filed, to the extent that such Claim has been listed by the respective Debtor in its Schedules as liquidated in amount and not disputed or contingent as to liability, and as to which no Claims Objection is interposed; (c) which arises from the recovery of property under sections 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

---

[1]All capitalized terms shall have meaning set forth in Article II of this Plan.

"**Allowed Additional Secured Claim**" means an Additional Secured Claim that is Allowed.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is Allowed.

"**Allowed Claim"** means a Claim that is Allowed.

"**Allowed General Unsecured Claim**" means a General Unsecured Claim that is Allowed.

"**Allowed Interest**" means an Interest that is Allowed.

"**Allowed Priority Non-Tax Claim**" means a Priority Non-Tax Claim that is Allowed.

"**Allowed Priority Tax Claim**" means a Priority Tax Claim that is Allowed.

"**Allowed Professional Fee Claim**" means a Professional Fee Claim that is Allowed.

"**Allowed Secured Claim**" means a Secured Claim that is Allowed.

"**Allowed Secured Tax Claim**" means a Secured Tax Claim that is Allowed.

"**Assigned Causes of Action**" has the meaning ascribed thereto in section 8.03(c) of the Plan

"**Assumed Contracts**" means those Executory Contracts and unexpired leases of the Debtors assumed pursuant to Article VII of this Plan.

"**Avoidance Claims**" means any and all rights, claims, Causes of Action, or rights to avoid any transfer or incurrence of debt that may be asserted or recovered by each Debtor in its capacity as debtor-in-possession pursuant to Chapter 5 of the Bankruptcy Code.

"**Bankruptcy Code**" shall have the meaning set forth in Article I of this Plan.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Iowa.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases.

"**Blairsburg Facility**" means the facility located at 2567 190th Street, Blairsburg, IA 50034, as described in more detail in Schedule A-1, attached to the Schedules Filed by Iowa's First, Inc.

"**Broadmoor**" means Broadmoor Financial, L.P., a Kansas limited partnership.

"**Broadmoor Deficiency Claim**" means Broadmoor's Allowed General Unsecured Claim equal, as of the Effective Date, to the amount the Debtors owe to Broadmoor pursuant to the

Broadmoor Loan, including any interest and fees accrued thereunder, less the amount of the Broadmoor Secured Claim.

"**Broadmoor Loan**" means the loan issued from Amstar Group, LLC and the Plan Sponsor to VBF Operations Inc. and Iowa's First, Inc., as borrowers, a portion of which was subsequently assigned from Amstar Group, LLC to Broadmoor, in the outstanding amount as of the Petition Date of $53,803,271.65.

"**Broadmoor Secured Claim**" means the Allowed Secured Claim held by Broadmoor in the amount of $11,025,000 arising from the Broadmoor Loan.

"**Buckeye Facility**" means the facility located in Radcliffe, Iowa, as described in more detail in Schedule A-2, attached to the Schedules Filed by Iowa's First, Inc.

"**Business Day**" means any day other than a Saturday, Sunday, or any legal holiday under federal law or the state of Iowa.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, in law, equity, or otherwise.

"**Chapter 11 Case(s)**" or "**Case(s)**" means the substantively consolidated chapter 11 cases commenced by the Debtors and jointly administered under case number 18-01297 in the Bankruptcy Court.

"**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Claims Objection**" means any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim) or Interest.

"**Claims Register**" means the official register of Claims against and Interests in the Debtors.

"**Class**" means a class of Claims or Interests as classified under this Plan.

"**Collateral**" means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"**Confirmation**" means entry of the Confirmation Order by the Bankruptcy Court.

3

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases on October 24, 2018 (Doc.88), which appointment was amended on January 7, 2019.

"**Confirmation Hearing**" means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, including any continuances thereof.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"**Consummation**" means the occurrence of the Effective Date.

"**Creditor**" has the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

"**Creditor Trust**" means the creditor trust established in Creditor Trust Agreement attached to the Plan as Exhibit "2."

"**Creditor Trust Agreement**" means the agreement attached to this Plan as Exhibit "2."

"**Creditor Trust Assets**" means the assets transferred to the Creditor Trust as is set forth in section 8.03 of this Plan.

"**Creditor Trustee**" means the trustee named in the Creditor Trust Agreement attached to this Plan as Exhibit "2."

"**Creditor Trustee Expenses**" means the expenses incurred by the Creditor Trustee to administer the Creditor Trust consistent with the Creditor Trust Agreement and the provisions of this Plan.

"**Debtor Releasees**" means each of the other Debtors, the Estate, the Reorganized Debtors, the Plan Sponsor, and each of the foregoing Entities' respective current and former officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, insurance providers, and other professionals and representatives, and each of their direct and indirect shareholders' and owners' respective officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, and other professionals and representatives, including, without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, Anders Wester, and Norman McCowan. Notwithstanding the immediately preceding sentence, Debtor Releasees does not include Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth A. Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman, or any affiliate of the foregoing.

"**Debtors**" shall have the meaning set forth in Article I of this Plan.

4

"**DIP Credit Agreement**" means that certain Debtor-in-Possession Credit Agreement, dated as of September 21, 2018 by and among the Debtors and the Plan Sponsor, and all exhibits, amendments, and supplements thereto.

"**DIP Facility**" means the debtor-in-possession financing provided to the Debtors during the Chapter 11 Cases pursuant to the DIP Credit Agreement.

"**DIP Facility Claims**" means all Claims held by the Plan Sponsor, or its successor or assignee, arising under or relating to the DIP Facilities, whether pursuant to the DIP Credit Agreement, the Final DIP Order, or otherwise.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or in part, by a Final Order; (b) has been withdrawn by agreement between the Debtors and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent, or unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order; (e) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the Filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court, or which is required to be Filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly Filed. In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

"**Disallowed Claim**" means a Claim that is Disallowed.

"**Disclosure Statement**" means the disclosure statement for the Plan, as it may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code or Bankruptcy Rule 3018.

"**Disputed Claim**" means any Claim as to which a Claims Objection is pending, Filed, or contemplated by the Debtors or the Reorganized Debtors, as applicable.

"**Distribution**" means any payment of Cash or issuances of ownership interests in any Reorganized Debtor called for under the Plan.

"**Effective Date**" means the first day after the conditions to effectiveness of the Plan provided in section 11.01 hereof have been satisfied.

"**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

"**Estate**" means the substantively consolidated estates of each Debtor created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code and a Final Order.

"**Exculpated Party**" means the Debtors, the Plan Sponsor, Broadmoor, the Committee, and any of their respective members, partners, officers, directors, employees, advisors, attorneys, professionals, insurance providers, or agents and advisors of any of the foregoing, including,

without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, and Anders Wester.

"**Executory Contract**" means a contract to which one or more of the Debtors are party that is considered an executory contract under the Bankruptcy Code and applicable case law.

"**Federal Judgment Rate**" means the interest rate provided for in 28 U.S.C. § 1961(a).

"**File**" or "**Filed**" means file or filed on the Claims Register or the docket of the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"**Final DIP Order**" means the Final Order approving the DIP Facility.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing, in form and substance, satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

"**General Unsecured Claim**" means any unsecured Claim other than a Priority Tax Claim, Priority Non-Tax Claim, or Administrative Expense Claim.

"**Impaired**" means impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Claim**" means a Claim that is Impaired.

"**Impaired Class**" means a Class containing Claims or Interests that are Impaired.

"**Intercompany Claims**" means any Claim held by one of the Debtors against any other Debtor, including (a) any account reflecting intercompany book entries by a Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor or Debtors, and (c) any Claim derivatively asserted or assertible by or on behalf of a Debtor against any other Debtor or Debtors.

"**Intercompany Interests**" means any Interest held by one of the Debtors in any other Debtor.

"**Interest**" means any equity or ownership interests in and with respect to the Debtors, including any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

6

"**Lists of Holders of Interests**" means the lists of equity security holders and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Petition Date**" means September 21, 2018.

"**Plan**" means this Chapter 11 plan, either in its present form or as the same may be altered, amended, or modified from time to time, and including the Plan Supplement.

"**Plan Released Parties**" means each of the Debtors, the Plan Sponsor, and any of their respective members, partners, officers, directors, employees, advisors, attorneys, professionals, or agents and advisors of any of the foregoing, including, without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, Anders Wester and Norman McCowan. For clarity and notwithstanding the foregoing sentence, Plan Released Parties do not include Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman or any affiliate of the foregoing.

"**Plan Sponsor**" means Alder Aqua, Ltd. or its successor or assignee.

"**Plan Sponsor New Equity Interest**" means 100% of the new equity interests of the Reorganized VBF USA issued to the Plan Sponsor pursuant to section 9.06(a).

"**Post-Petition Interest**" means simple interest per annum at the Federal Judgment Rate, based on a 360-day year for the period from the Petition Date to, but excluding, the Effective Date.

"**Priority Non-Tax Claim**" means any Claim entitled to priority under section 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim for Professional Fees.

"**Professional Fees**" shall have the meaning set forth in section 3.03 of this Plan.

"**Professionals**" means the professionals retained by the Debtors under Bankruptcy Code sections 327 or 1103 and to be compensated pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503(b)(2), (4), or (5).

"**Proof of Claim**" means a proof of claim Filed in connection with any of the Chapter 11 Cases.

"**Reorganized Debtors**" means the Debtors as reorganized as of the Effective Date.

"**Reorganized Debtors' Constituent Documents**" means on or after the Effective Date, the governing documents of each Reorganized Debtor, each in form and substance satisfactory to the Debtors and the Plan Sponsor.

7

"**Reorganized VeroBlue Farms USA, Inc.**" means VBF USA as reorganized as of the Effective Date.

"**Schedules**" means, collectively, the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs.

"**Schedules of Assets and Liabilities**" means the schedules of assets and liabilities and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Secured Claim**" means a Claim that is secured by a Lien on property in which the Debtors' Estate has an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"**Secured Tax Claim**" means any Claim of a governmental unit for taxes owed by any of the Debtors that is secured by Lien.

"**Securities Exchange Act**" means the Securities and Exchange Act of 1934, as amended, codified at 15 U.S.C. § 78a *et seq*.

"**Statements of Financial Affairs**" means the statement of finical affairs and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Unimpaired**" means a Claim, Interest, or Class thereof that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Urban Farm**" means the facility located at 401 Des Moines Street, Webster City, IA 50595, as described in more detail in Schedule A-3, attached to the Schedules Filed by Iowa's First, Inc.

"**U.S. Trustee**" means the Office of the United States Trustee for Region XII.

2.02 **Rules of Interpretation**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective section in, article of, schedule to, or exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

8

2.03 **Computation of Time**

In computing any period of time prescribed or Allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01 **Administrative Expense Claims**

Any party who claims to hold an Administrative Expense Claim (other than a Claim for Professional Fees) must File a motion seeking allowance of such Administrative Expense Claim on or before the date that is 28 days after the Effective Date, regardless of whether or not such party has previously asserted an Administrative Expense Claim in a Proof of Claim. Except to the extent any Entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Claim for Professional Fees) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim by the later of either (i) the Effective Date or as soon thereafter as is reasonably practicable, or (ii) the date that is 14 days after the Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

Notwithstanding the foregoing section 3.01, upon the Effective Date, the Plan Sponsor's Allowed Administrative Expense Claim, other than the DIP Facility Claim, shall be fully satisfied by the Distribution of the Plan Sponsor New Equity Interest.

3.02 **DIP Facility Claim**

On the Effective Date, the DIP Facility Claim shall be deemed to be an Allowed Claim and, at the election of the Plan Sponsor, fully and finally satisfied by the Distribution of the Plan Sponsor New Equity Interest. If the Plan Sponsor does not so elect, the DIP Facility Claim shall be paid in full in Cash on the Effective Date.

3.03 **Professional Fee Claims**

All Professionals seeking payment of Professional Fees or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code ("**Professional Fees**") must File their respective final applications on or before the date that is 45 days after the Effective Date. Except to the extent that the holder of a Professional Fee Claim agrees to different treatment, each holder of an Allowed Professional Fee Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Claim as soon as practicable after such Claim is Allowed by the Bankruptcy Court.

3.04 **Post-Effective Date Professional Fees**

From and after the Effective Date, the Reorganized Debtors shall pay in Cash the reasonable fees and expenses incurred by the Reorganized Debtors' respective professionals, if any, without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance

of doubt, following the Effective Date, any requirement that a Professional comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered to the Debtors after such date shall terminate.

### 3.05 **Priority Tax Claims**

Except to the extent a holder of an Allowed Priority Tax Claim agrees to different treatment, the holder of such Claim shall receive, in full and final satisfaction of such Claim, a Distribution equal to the amount of the Allowed Priority Tax Claim as of the Effective Date either (i) in Cash on the Effective Date or (ii) in installment payments over a period of time not to exceed 5 years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

### 3.06 **Statutory Fees**

On the Effective Date, the Debtors shall make all payments required to be paid to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code. All fees payable pursuant to section 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Reorganized Debtors on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

**ARTICLE IV**
**DESIGNATION OF CLASSES**

### 4.01 **Classification**

Claims and Interests are classified for all purposes, including voting, Confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| 1 | Priority Non-Tax Claim | Yes | Yes |
| 2 | Broadmoor Secured Claim | Yes | Yes |
| 3(a) | Secured Tax Claims—Hamilton County Treasurer (Urban Farm) | Yes | Yes |
| 3(b) | Secured Tax Claims—Hamilton County Treasurer (Blairsburg Facility) | Yes | Yes |

| 3(c) | Secured Tax Claims—Hardin County Treasurer (Buckeye Facility) | Yes | Yes |
|------|---------------------------------------------------------------|-----|-----|
| 4 | Additional Secured Claim—Card Services | Yes | Yes |
| 5 | General Unsecured Claims | Yes | Yes |
| 6 | Intercompany Interests | No | No |
| 7 | Interests in VBF USA | Yes | No |

**ARTICLE V**
**TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS**

5.01 **Class 1: Priority Non-Tax Claims**

(i)   *Treatment*: Unless the holder agrees otherwise, commencing on or as soon as practicable after the Effective Date or the date its Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, four quarterly payments totaling a value equal to the amount of such Allowed Priority Non-Tax Claim as of the Effective Date plus Post-Petition Interest where required under applicable law.

(ii)   *Voting*: The Claims in Class 1 are Impaired.  The holders of Allowed Priority Non-Tax Claim are entitled to vote to accept or reject this Plan.

5.02 **Class 2: Broadmoor Secured Claim**

(i)   *Treatment*:  The Broadmoor Secured Claim shall be treated as follows:

Restructured Note.  On the Effective Date, the Reorganized Debtors shall deliver to Broad-moor a note in the principal amount of $11,025,000, with interest accruing at the rate of 3% per annum.  The Reorganized Debtors shall make monthly payments of interest only until the first anniversary of the Effective Date.  On the first anniversary of the Effective Date, a principal payment of $6,000,000 shall be due.  Thereafter, the remaining balance shall be amortized in equal quarterly payments for three years, with final maturity on the fourth anniversary of the Effective Date.  The Reorganized Debtors shall have the right to pre-pay the note in whole or in part.

Lien.  Broadmoor shall retain its Lien on the Collateral to secure the principal and interest due and payable pursuant to the note described in the preceding paragraph, with such Lien attaching to the Collateral in the same priority as prior to the Petition Date.  Upon payment

11

of the principal and interest under the note described in the preceding paragraph, Broad-moor shall release its Liens.

Participation. The sum of $5,025,000, representing the portion of the Broadmoor Loan allocated to the Collateral in which the Plan Sponsor, as participant, holds a first security interest, shall be payable to the Plan Sponsor on terms to be agreed upon by the Plan Sponsor and Broadmoor.

Restated Loan Documents. In the Plan Supplement, the Debtors may submit an amended and restated note and security documents, acceptable to Broadmoor, regarding the Broad-moor Secured Claim.

Broadmoor Deficiency Claim. The Broadmoor Deficiency Claim shall be a Class 5 General Unsecured Claim.

(ii)  *Voting*: The Claim in Class 2 is Impaired. Broadmoor, as the holder of the Broadmoor Secured Claim, is entitled to vote to accept or reject the Plan.

### 5.03 **Class 3(a), (b), and (c):  Secured Tax Claims**

### 5.03(a) **Class 3(a): Secured Tax Claim—Hamilton County Treasurer (Urban Farm)**

(i)  *Treatment*: Unless the Hamilton County Treasurer agrees otherwise, as relates to its Claim secured by an interest in the Urban Farm, commencing on or as soon as practicable after the Effective Date or the date the aforementioned Secured Tax Claim becomes an Allowed Secured Tax Claim, the Hamilton County Treasurer, in full and final satisfaction of such Claim, shall: (A) retain its Lien on the Urban Farm in an amount equal to the value of such Claim, with the Lien attaching to the Urban Farm in the same relative priority as existed immediately prior to the Petition Date, and (B) four quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)  *Voting*: The Claim in Class 3(a) is Impaired. Hamilton County Treasurer is entitled to vote to accept or reject the Plan.

### 5.03(b) **Class 3(b): Secured Tax Claim—Hamilton County Treasurer (Blairsburg Facility)**

(i)  *Treatment*: Unless Hamilton County Treasurer agrees otherwise, as relates to its Claim secured by an interest in the Blairsburg Facility, commencing on or as soon as practicable after the Effective Date or the date the aforementioned Secured Tax Claim becomes an Allowed Secured Tax Claim, Hamilton County Treasurer, in full and final satisfaction of such Claim, shall: (A) retain its Lien on the Blairsburg Facility in an amount equal to the value of such Claim, with the Lien attaching to the Blairsburg Facility in the same relative priority as existed immediately prior to the Petition Date, and (B) four quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

12

(ii)   *Voting*: The Claim in Class 3(b) is Impaired. Hamilton County Treasurer is entitled to vote to accept or reject the Plan.

5.03(c)   **Class 3(c): Secured Tax Claim—Hardin County Treasurer (Buckeye Facility)**

(i)   *Treatment*: Unless Hardin County Treasurer agrees otherwise, commencing on or as soon as practicable after the Effective Date or the date its Additional Secured Claim becomes an Allowed Additional Secured Claim, Hardin County Treasurer, in full and final satisfaction of such Claim, shall: (A) retain its Lien on the Collateral in an amount equal to the value of such Claim, with the Lien attaching to the Collateral in the same relative priority as existed immediately prior to the Petition Date, and (B) receive four quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)   *Voting*: The Claim in Class 3(c) is Impaired. Hardin County Treasurer is entitled to vote to accept or reject the Plan.

5.04   **Class 4: Additional Secured Claim—Card Services**

(i)   *Treatment*: Unless Card Services agrees otherwise, on the Effective Date, in full and final satisfaction of its Additional Secured Claim, it will be entitled to offset the amount of its the Allowed Additional Secured Claim as of the Effective Date, plus Post-Petition Interest where required under applicable law, against the balance of the Certificate of Deposit at UMB Kansas City, Missouri, Cert. No. 21853261020.  The balance of the Certificate of Deposit not offset, shall be returned to the Debtor without penalty for early surrender.

(ii)   *Voting*: The Claim in Class 4(b) is Impaired.  Card services is entitled to vote to accept or reject the Plan.

5.05   **Class 5: General Unsecured Claims**

(i)   *Treatment*: Allowed Class 5 Claims shall be paid pro rata in accordance with this Plan and the Creditor Trust Agreement.  In accordance with the Creditor Trust Agreement, the Creditor Trust assets shall be deposited in the Creditor Trust on the Effective Date.  The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds from time to time on dates determined by the Creditor Trustee within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (A) make a pro rata distribution on account of Disputed Class 5 Claims that become Allowed Class 5 Claims; and (B) pay the Creditor Trustee's Expenses in full.

Provided that no challenge has been initiated to the Broadmoor Secured Claim, or the liens securing it, and no action has been brought against Broadmoor as of the Effective Date, and further provided that Class 5 votes to accept the Plan and the Effective Date occur on or before May 5, 2019, Broadmoor shall be deemed to waive Distribution on account of the Broadmoor Deficiency Claim.  Broadmoor retains its right to vote the Broadmoor Deficiency Claim as a Class 5 General Unsecured Claim and all other rights.

(ii)    *Voting*: The Claims in Class 5 are Impaired. The holders of Allowed General Unsecured Claims against any of the Debtors, including the Broadmoor Deficiency Claim, are entitled to vote to accept or reject this Plan.

### 5.06 **Class 6: Intercompany Interests**

(i)    *Treatment*: Intercompany Interests shall be cancelled or reinstated, as determined by the Debtors with the consent of the Plan Sponsor.

(ii)    *Voting*: Interests in Class 6 are Unimpaired if reinstated and Impaired if cancelled. The holders of Intercompany Interests are conclusively presumed to have accepted this Plan if such Interests are reinstated and to have rejected this Plan if such Interests are cancelled pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

### 5.07 **Class 7: Interests in VBF USA**

(i)    *Treatment*: All Interests in VBF USA shall be extinguished as of the Effective Date and owners thereof shall receive no Distribution on account of such Interests.

(ii)    *Voting*: Interests in Class 7 are Impaired. The holders of these Interests are conclusively deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

### 5.08 **Cramdown**

If any Class fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that is Impaired and votes not to accept the Plan.

### ARTICLE VI
### PROVISIONS REGARDING RESOLUTION OF CLAIMS
### AND DISTRIBUTIONS UNDER THE PLAN

### 6.01 **Method of Distributions Under the Plan**

a.    In General

Subject to Bankruptcy Rule 9010, all Distributions under the Plan shall be made to the holders of each Allowed Claim at the address of such holder as listed on the Schedules or Proof of Claim, as applicable.

b.    Distributions of Cash

Any Distributions made after the Effective Date under the Plan shall be made by the Reorganized Debtors or the Creditor Trustee (as to Class 5 Claims). Such Distributions shall be made by check unless a different method of payment is agreed upon between the individual Creditors

14

and the Reorganized Debtors or the Creditor Trustee (as applicable).  All checks for Distribution shall be negotiated within 120 days of the date of such check, after which such check shall be void. The holder of an Allowed Claim or Interest that does not negotiate payment within the 120-day period shall have 1 year after the check becomes void to assert payment on account of its Claim pursuant to this Plan, after which time its Claim shall be reduced to zero. At such time, the Reorganized Debtors or the Creditor Trustee (as applicable), shall no longer be obligated to reserve for such Claim or make any further Distributions in respect of such Claim.

Notwithstanding any other provision of this Plan, the Debtors, Reorganized Debtors, or the Creditor Trustee shall not be required to, but may in their discretion, make Distributions to any holder of a Claim in an amount less than $25. In addition, the Debtors, Reorganized Debtors, or the Creditor Trustee shall not be required to, but may in their discretion, make any payment on account of any Claim if the costs of making such payment exceeds the amount of such payment.

      c.     <u>Timing of Distributions</u>

Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

      d.     <u>Tax Withholding</u>

Distributions to holders of Allowed Claims and Interests shall be net of amounts required to be withheld pursuant to applicable state and federal wage or backup withholding requirements. In order to receive a Distribution, a holder of an Allowed Claim must provide the Debtors or Reorganized Debtors or the Creditor Trustee, as applicable, with a completed Department of Treasury Internal Revenue Service Form W-9.

### 6.02 **Claims Objections**

      a.     After the Effective Date, Claims Objections may be made, and Claims Objections made previous thereto shall be pursued, only by the Reorganized Debtors (or, as to Class 5 Claims only, by the Unsecured Creditor Trustee). The deadline for the Reorganized Debtors to File Claims Objections shall be 180 days after the Effective Date, subject to extension by motion to the Bankruptcy Court. After the Effective Date, the Reorganized Debtors shall, without further order of the Bankruptcy Court, have the right to retain and compensate counsel or other professionals to assist with Claims Objections or any other duties of the Reorganized Debtors under the Plan.

      b.     After the Effective Date, the Reorganized Debtors (or  Creditor Trustee as applicable) may settle any Disputed Claims where the proposed Allowed Claim is to be less than $25,000 without notice and a hearing and without an order of the Bankruptcy Court. All other settlements shall be subject to notice and a hearing pursuant to section 102(1) of the Bankruptcy Code and Bankruptcy Rule 9019.

### 6.03 **Disputed Claims**

      a.     Claims other than Class 5 Claims.

If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim. If any Distribution is made while there is an extant Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Disputed Claim is Allowed or Disallowed. If the Claim is Allowed, the holder of the Allowed Claim shall receive its withheld Distribution. If the Claim is Disallowed, then any Distribution that was withheld with respect to such Claim shall be released to the Reorganized Debtors.

b.      Class 5 Claims

If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim.  In the event a Distribution is made while there is a Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Claim is Allowed or Disallowed.  If the Claim is Allowed, the Holder of the Allowed Claim will receive its withheld Distribution

6.04 **Claims Estimation**

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Claims Objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any Claims Objection, including during the pendency of any appeal relating to any such Claims Objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Allowed Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism pursuant to this Plan or approved by the Bankruptcy Court.

6.05 **Claims Allowance**

Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors shall have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date. All Claims of any Entity, subject to section 502(d) of the Bankruptcy Code, shall be deemed Disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes the Debtors.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01 **Assumption or Rejection of Executory Contracts and Unexpired Leases**

Any Executory Contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that: (a) the Debtors have not assumed, assigned, or rejected with

the approval of the Bankruptcy Court, (b) is not identified as an Assumed Contract, and (c) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtors, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 7.02 **Rejection Damages Claims**

With respect to Claims arising from the rejection of Executory Contracts or unexpired leases pursuant to section 7.01 of this Plan, the bar date to File Proofs of Claim in these Cases shall be reopened for a period of 28 days after the Effective Date, and all such Proofs of Claim must be Filed with the Bankruptcy Court during that time. Any such Claim that is Allowed by the Bank-ruptcy Court shall be treated as a Class 5 General Unsecured Claim. Any Claim arising from the rejection of an Executory Contract or unexpired lease pursuant to section 7.01 of this Plan for which a Proof of Claim is not timely Filed within that time period shall be a Disallowed Claim and shall further forever be barred from assertion against the Estate, the Debtors, the Reorganized Debtors, their successors and assigns, or their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

### 7.03 **Assumed Contracts; Cure of Defaults**

Any monetary amounts by which each Executory Contract or unexpired lease to be as-sumed is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Assumed Contract may otherwise agree. The Plan Supplement shall include the list of Assumed Contracts to be assumed by the Reorganized Debtors pursuant to the Plan. The Plan Supplement shall identify the Executory Contracts and unexpired contracts sought to be assumed, the counterparties thereto, and the proposed cure payments as of the projected Effective Date, and upon filing shall be served upon any affected counterparty in accordance with the Bankruptcy Rules. The Debtors reserve the right to remove Executory Contracts or unexpired leases from such list or to modify the cure amounts executed in connection therewith at any time prior to the Con-firmation Hearing.

Any objection to: (a) the amount of any cure payments for the Assumed Contracts, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or lease to be assumed, or (c) any other matter pertaining to assumption, shall be Filed and served on the Debtors on or before the deadline established by the Bankruptcy Court for filing objections to the Plan. If an objection is Filed, the Debtors shall attempt to resolve such objection prior to the Confirmation Hearing. If the parties are unable to consensually resolve such objection prior to the Confirmation Hearing, such objection and any cure amounts to be paid shall be determined at the Confirmation Hearing or as otherwise agreed to by the parties or ordered by the Bankruptcy Court.

If a dispute remains unresolved as of the Effective Date regarding: (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following the

entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such dispute, the Executory Contract at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. However, any such "deemed" assumption shall not affect any counterparty's rights or remedies under section 365 of the Bankruptcy Code or otherwise, which shall be preserved pending final resolution notwithstanding the "deemed" assumption.

## ARTICLE VIII
## CREDITOR TRUST

8.01 **Creditor Trust Agreement**

The Creditor Trust will be formed as of the Effective Date and shall be governed by the Creditor Trust Agreement, substantially in the form filed herewith as **Exhibit 2**.

8.02 **Creditor Trustee**

[Mark Iammarto of Development Specialists, Inc.] shall be appointed as Creditor Trustee.

8.03 **Vesting of Assets**

On the Effective Date, the Creditor Trustee Assets shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan.  The Creditor Trust Assets include:

a.      Cash in the amount of $620,000;

b.      all Avoidance Claims, except any claims arising against any of the following persons or entities:

(i)      Debtor Released Parties;

(ii)     Plan Released Parties;

(iii)    any professional retained by the Debtors pursuant to section 327 of the Bankruptcy Code or as an ordinary course professional;

(iv)     the persons or entities expressly identified in section 8.11 of the Plan; or

(v)      Pranger Industries, Inc., and such others to be agreed upon with the Creditor Trustee.

c.      all Causes of Action held by the Debtors' estates against Rick Sheriff, or any of his affiliates, provided, however, that the Reorganized Debtors shall be entitled to 33 1/3% of Cash recoveries received by the Creditor Trust on account of such Causes of Action (net of attorneys' fees, expert fees, and other out-of-pocket costs) (with the Causes of Action described in (b) and (c) collectively defined as the "*Assigned Causes of Action*").  For the avoidance of doubt, all Creditor Trust Assets shall be held by the Creditor Trust solely in trust for the holders of Allowed Class

18

5 Claims and shall not be deemed property of the Debtors (except the Reorganized Debtors' right to participate in the recoveries of the Rick Sheriff Causes of Action). The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust, subject to oversight from the Creditor Trustee, as applicable.

### 8.04 **Creditor Trust Asset Administration**

The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date. As more fully set forth in the Creditor Trust Agreement, the Creditor Trustee shall be responsible for, *inter alia*, liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Assigned Causes of Action, making distributions of the net proceeds to the beneficiaries of the Creditor Trust, maintaining and administering reserves for Disputed Claims and Claims of Creditors that may be the subject of Avoidance Claims, paying Trustee's Expenses, preparing and filing post-Effective Date operating reports, and all other activities typically related to trust administration.

### 8.05 **Case Administration**

From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases. In addition to the foregoing, for all matters arising in, arising under, or related to the Chapter 11 Cases, the Creditor Trustee shall: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, including, but not limited to, adversary proceedings; (b) be entitled to notice and opportunity for hearing; (c) have exclusive standing (including derivative standing on behalf of the Debtors) to commence and prosecute the Assigned Causes of Action; and (d) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases.

### 8.06 **Creditor Trustee's Professionals**

Upon the acceptance by the Creditor Trustee or his or her appointment in accordance with this Plan and the Creditor Trust Agreement, the Creditor Trustee may, without the need for Bankruptcy Court approval, retain such law firms, accounting firms, experts, advisors, consultants, investigators, or other Professionals as it may deem necessary, in accordance with the Creditor Trust Agreement, to aid in the performance of his responsibilities pursuant to the terms of the Plan, including, without limitation, the liquidation and distribution of the Creditor Trust Assets. The Professionals retained by the Creditor Trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in this Case, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity.

8.07 **Quarterly Reports**

The Creditor Trustee shall prepare and file with the Bankruptcy Court a report within (30) days after the conclusion of every calendar quarter setting forth: (a) all distributions in Class 5 Creditors during the calendar year; (b) a summary of the Creditor Trust deposits and disbursements during the calendar quarter; and (c) a summary of the Creditor Trust Assets.  As used in this section, "calendar quarter" shall mean a three-month period of time, and the first calendar quarter shall commence on the first day of the first quarter immediately following the occurrence of the Effective Date. To the extent the Effective Date does not fall on the first day of a calendar quarter, the first quarterly report shall include the period from (x) the Effective Date through the conclusion of the calendar quarter in which it falls; plus (y) the succeeding calendar quarter.

8.08 **Representative of Estate**

For purposes of the Assigned Causes of Action, the Creditor Trustee shall be deemed the representative of the Estate pursuant to section 1123(b)(3)(B) and may not further transfer any of the Assigned Causes of Action.

8.09 **Cooperation Regarding Assigned Causes of Action**

With respect to the Assigned Causes of Action, the Reorganized Debtors, upon reasonable terms and reasonable notice shall: (a) respond to the Creditor Trustee's reasonable requests for non-privileged documents related to claims or defenses asserted therein; and (b) make representatives of the Reorganized Debtors reasonably available for interview and deposition; provided, however, that the Reorganized Debtors shall not be required to incur out-of-pocket costs or maintain personnel on staff in order to satisfy obligations under this section.  Following the Effective Date, the Creditor Trustee shall have sole authority and discretion to investigate, commence, prosecute and resolve the Assigned Causes of Action.  It is further understood that this provision does not impose obligations upon the Plan Sponsor.

8.10 **Compensation of Creditor Trustee and Professionals.**

The Creditor Trustee and any professionals retained by the Creditor Trustee are entitled to reasonable compensation at their standard rates.  When seeking payment, the Creditor Trustee or the relevant professional shall provide a copy of the statement to reorganized Debtors.  If no written objection to the payment request is received within 10 days, then the sum requested shall be promptly paid.  Any objection shall specify the amount objected to and reasons.  If an objection is made, the undisputed amount shall be promptly paid.  If the parties are unable to resolve any remaining disputes, the Bankruptcy Court shall resolve the dispute upon notice and a hearing.

8.11 **Exculpation**

Neither the Creditor Trustee nor its designees, retained professionals or any duly designated agent or representative shall be liable for anything other than such person's own acts as shall constitute willful misconduct or gross negligence in the performance (or nonperformance) of its duties, or acts contrary to the express terms of this Plan.  The Creditor Trustee may, in connection with the performance of its functions, consult with counsel, accountants, and its agents, and may reasonably rely upon advice or opinions received in the course of such consultation. If the Creditor

Trustee determines not to consult with counsel, accountants, or its agents, such determination shall not in itself be deemed to impose any liability on the Creditor Trustee, /or its designees.  The Creditor Trustee shall indemnify the Creditor Trustee for any and all damages, fees, and expenses incurred in connection with these Cases or this Plan; except that the Creditor Trustee shall not be indemnified from damages, fees, or expenses arising from his gross negligence or willful miscon-duct.

**ARTICLE IX**
**OTHER MEANS FOR IMPLEMENTATION AND**
**EFFECT OF CONFIRMATION OF PLAN**

### 9.01  Term of Bankruptcy Injunction or Stays

Except as otherwise expressly provided in the Plan, all injunctions or stays provided for in these Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the date of entry of the Confirmation Order, shall remain in full force and effect until the closing of these Chapter 11 Cases.

### 9.02  Consummation of the Plan

This Plan implements a comprehensive restructuring of the Debtors through the capital infusion from the Plan Sponsor as provided in section 9.07. Conditions to Consummation of the Plan are:

a.      Entry of an order confirming this Plan in form and substance acceptable to Plan Sponsor; and

b.      The Final Order confirming the Plan is not subject to a stay and has not been reversed or modified on appeal.

### 9.03  Sources of Cash for Plan Distributions

Except as otherwise provided for in this Plan or the Confirmation Order, all Cash required for Distributions shall come from the equity contribution as provided in section 9.07.

### 9.04  Compromise of Controversies

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and settlement of Claims and Interests and controversies resolved pursuant to this Plan. Distributions made to holders of Allowed Claims in any Class are intended to be final.

### 9.05  Effect of Plan on Undersecured Creditors

Wastewater Technologies claims a mechanic's lien on the Urban Farms located in Webster City, Hamilton County, Iowa posted on April 23, 2018 as MNLR#015380-0. Midwest Manure Management, Inc. filed a mechanic's lien on the Buckeye Facility, located in Rural Radcliffe,

Hardin County, Iowa posted on March 22, 2018 as MNLR#015124-0. Broadmoor's claim is secured by a first mortgage lien on all the bankruptcy estate's real estate, specifically including the real estate owned by Iowa's First, Inc. and scheduled on schedule A-3 and A-2 as the Urban Farms and the Buckeye Facility respectively. Copies of Schedules A-2 and A-3 are attached to this Plan as Exhibit "1" for clarity. The undisputed debt owed to Broadmoor is in excess of $53,000,000.00. Therefore, pursuant to 11 U.S.C. § 506(a)(1) the mechanic's liens of Wastewater Technologies and Midwest Manure Management, Inc. shall be void upon the confirmation of the Plan.

### 9.06 **Effect of Plan on Debtors**

 a.  Interests in Reorganized Debtors and Continued Existence

Except as otherwise provided in this Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entities with all of the powers available to such legal entity under applicable law and pursuant to the Reorganized Debtors' Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law, and such Reorganized Debtor's Constituent Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter; or (v) the reincorporation of a Reorganized Debtor under the law of a jurisdiction other than the law under which the Debtor currently is incorporated.

On the Effective Date, the ownership interests in VBF USA shall be cancelled. After giving effect to such cancellation, the Plan Sponsor shall be issued 100% of the ownership interests in Reorganized VBF USA. The ownership interests in the foregoing Reorganized Debtors shall have the rights, privileges, limitations, and restrictions set forth in the Reorganized Debtors' Constituent Documents of each respective Reorganized Debtor, as set forth in the Plan Supplement.

 b.  Governance and Corporate Action

On and after the Effective Date, the Reorganized Debtors shall be managed by and under the direction of their respective boards of directors, as such boards of directors may be constituted from time to time under the Reorganized Debtors' Constituent Documents and applicable non-bankruptcy law. The Plan Sponsor shall have the right to appoint the board of directors of the Reorganized Debtors. The identities and affiliations of the initial officers and directors of the Reorganized Debtors shall be set forth in the Plan Supplement.

On and after the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and directed in all respects, including: (i) selection of the directors and officers of the Reorganized Debtors; (ii) the issuance of the Plan Sponsor New Equity Interests; and (iii) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective

Date) and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the members, directors, or officers of the Debtors or the Reorganized Debtors or otherwise. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Reorganized Debtors, including the Plan Sponsor New Equity Interests and any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this section 9.06 shall be effective notwithstanding any requirements under non-bankruptcy law.

    c.    <u>Vesting of Assets</u>

Except as otherwise provided in this Plan, on and after the Effective Date, all assets of the Estate, including all claims, rights, and Causes of Action, and any property acquired by the Debtors under or in connection with this Plan, shall vest in each respective Reorganized Debtor (or the Creditor Trust as it relates to the Creditor Trust Assets) free and clear of all Claims, Liens, charges, other encumbrances, and interests. Subject to the terms of this Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or, subject to section 6.02(b), settle any Claims, including any Administrative Expense Claims, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

9.07 **Issuance of the Plan Sponsor New Equity Interest**

    a.    The Plan is to be funded through an equity contribution by the Plan Sponsor. As set forth in the Disclosure Statement, the equity contribution is intended to be an amount up to $30,200,000 as follows:

    i. $2,000,000    This amount shall be used to pay for Chapter 11 Case costs and shall be advanced during the Chapter 11 Cases under the DIP Facility. This amount is based on the 13-week cash flow projections, and is intended to cover, among other things, operations and advisor costs during that time.

    ii. $620,000    This amount shall be used to fund Distributions to holders of Allowed General Unsecured Claims. The amount is subject to adjustment.

    iii. $6,180,000    This amount shall be used to pay for interest and principal payments to Broadmoor. The interest is calculated for a 12-month

period.

    iv. $21,400,000    This amount shall be used to pay for capital investments for the Debtors' retrofit and additional working capital.

b.    In exchange for the Plan Sponsor's investment of equity necessary to make the payments required on the Effective Date of the Plan, the Plan Sponsor shall receive the Plan Sponsor New Equity Interest. The Plan Sponsor New Equity Interest shall be authorized under the Reorganized Debtors' Constituent Documents and issued to the Plan Sponsor on the Effective Date. The Plan Sponsor New Equity Interest issuable in accordance with this Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of the Plan Sponsor New Equity Interest is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Interest.

The Reorganized Debtors shall not be reporting companies under the Securities Exchange Act, and the Reorganized Debtors shall not be required to, and shall not, file reports with the SEC or any other governmental entity after the Effective Date. To prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the Reorganized Debtors' Constituent Documents may impose certain trading restrictions, and the Plan Sponsor New Equity Interest shall be subject to certain transfer and other restrictions pursuant to the Reorganized Debtors' Constituent Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.

9.08 **Plan Transactions**

On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors (as applicable), are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the terms of this Plan, including, without limitation: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) rejection or assumption, as applicable, of Executory Contracts or unexpired lease; (d) the filing or execution of appropriate certificates or articles of incorporation or organization, reincorporation, merger, consolidation, conversion, or dissolution, and bylaws; (e) execution of the Creditor Trust Agreement and any other documents reasonably necessary to effectuate the transfer of the Creditor Trust Assets to the Creditor Trust; and (f) all other actions that the Debtors or Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

9.09 **Cancellation of Unexercised and Unvested Interests**

On the Effective Date, any contingent or unexercised option, warrant, or right, contractual or otherwise, to acquire or be awarded any Interest shall be cancelled without the exchange of any similar interest in any Debtor or Reorganized Debtor, or other form of consideration. Any Proof

of Claim Filed on account of Interests cancelled by this section 9.09 shall be Disallowed and the Claims Register shall be adjusted to reflect such disallowance.

### 9.10 **Preservation of Causes of Action**

(a) Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a release, waiver, or relinquishment of any Causes of Action. Avoidance Claims shall be preserved for the benefit of the Unsecured Creditors Trust, to the extent that they constitute Assigned Causes of Action. All other Avoidance Claims against a person or entity not released under the terms of the Plan shall be preserved and may be asserted by the Reorganized Debtors as representative of the Estates as provided in section 1123(b)(3)(B). The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Causes of Action that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, including all Causes of Action set forth in their Schedules Filed as Docs. 47 through 52 as well as the amendments to those Schedules Filed as Docs. 299 & 300, another amendment to be Filed after the date hereof and all the Reorganized Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Assigned Causes of Action may be asserted on behalf of the Unsecured Creditor Trust.

(b) Without limiting the foregoing, all Avoidance Claims and Causes of Action against the following persons or entities are preserved, not assigned to the Creditor Trust, and may be asserted by the Reorganized Debtors: Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth A. Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman or any affiliate of any of the foregoing. Avoidance Claims and Causes of Action preserved include Causes of Action asserted (or which could be asserted) by VBF USA in the case captioned *VeroBlue Farms USA, Inc. v. Wulf, et al*, Case No. 3:18:03047 (N.D. Iowa).

### 9.11 **Powers and Duties of Reorganized Debtors**

In addition to any other powers described in the Plan, the powers and duties of the Reorganized Debtors consist of the following:

    a.    To take control of, preserve, and operate property of the Estate, subject to the terms of the Plan;

    b.    To investigate and prosecute, settle, or abandon all Causes of Action belonging to or assertible by the Estate;

    c.    To review, object to, seek equitable subordination of, or seek any other remedy with respect to Claims Filed against the Debtors;

    d.    To abandon, discontinue, dismiss, amend, settle, compromise, negotiate, or otherwise resolve all disputes, including all Causes of Action and Claims Objections Filed by the Debtors;

e.      To make Distributions on account of all Allowed Claims and Interests consistent with the terms of this Plan;

f.      To retain Entities and Professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

g.      To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

h.      To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including Professional Fees incurred after the Effective Date;

i.      To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

j.      To effectuate any of the provisions in this Plan;

k.      To ask the Bankruptcy Court to enter the final decree; and

l.      To execute all documents appropriate to convey assets of the Estate consistent with the terms of this Plan.

### 9.12 **Default Remedies**

If the Reorganized Debtors fail to comply with any of their obligations under the Plan, Creditors or Interest holders, as applicable, shall move for relief in the Bankruptcy Court to enforce the terms of the Plan; provided, however, the creditors holding Class 2, 3, or 4 Allowed Secured Claims may enforce their rights in the event of default under applicable law without prior relief in the Bankruptcy Court.

### 9.13 **Discharge**

Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of Claims, Interests, and Causes of Action of any nature whatsoever by any Entity, including any interest accrued on any Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors, the Estate, or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of any Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the

Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan, effective as of the Effective Date. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, the Confirmation Order shall be a judicial determination of the complete and full discharge of all Claims and Interests by any Entity, subject to the Effective Date occurring. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all property of the Estate shall vest in the Reorganized Debtors, free and clear of all Claims and Interests of any Entity and with the full and complete discharge of any and all Claims, Interests, or Causes of Action of any Entity.

9.14 **Debtor Releases**

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR RELEASEES ARE DEEMED RELEASED AND DISCHARGED BY EACH OF THE DEBTORS, EACH OF THE REORGANIZED DEBTORS, THE ESTATE, AND ANY ENTITY SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, AND OTHER RIGHTS AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR AVOIDANCE CLAIMS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED, OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, THE CONDUCT OF THE DEBTORS' BUSINESSES, THE IN-COURT OR OUT-OF-COURT EFFORTS TO RESTRUCTURE OR LIQUIDATE THE DEBTORS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN (INCLUDING THE PLAN SUPPLEMENT) OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, OR THE PLAN (INCLUDING THE PLAN SUPPLEMENT), THE FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE

27

**DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, ON THE ONE HAND, AND ANY DEBTOR RELEASEE, ON THE OTHER HAND, PREPETITION CON-TRACTS AND AGREEMENTS WITH ANY DEBTOR, OR ANY OTHER ACT OR OMIS-SION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THE DEBTOR RELEASES SHALL NOT OPERATE TO WAIVE OR RELEASE (a) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OR ANY OTHER COURT OF COMPETENT JURISDICTION; (b) ANY CAUSES OF AC-TION EXPRESSLY SET FORTH IN AND PRESERVED BY THIS PLAN OR THE PLAN SUPPLEMENT; OR (c) THE RIGHT OF THE DEBTORS OR REORGANIZED DEBT-ORS TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RE-LEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR AS-SUMED PURSUANT TO A FINAL ORDER.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANK-RUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE RELEASES SET FORTH IN THIS SECTION 9.14, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT SUCH RELEASES ARE: (a) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES; (b) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS SEC-TION 9.14; (c) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATE; (d) FAIR, EQUITABLE, AND REASONABLE; (e) GIVEN AND MADE AFTER DUE NO-TICE AND OPPORTUNITY FOR HEARING; AND (f) A BAR TO ANY ENTITY AS-SERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THIS SECTION 9.14.**

9.15 **Releases by Holders of Claims and Interests**

**UPON THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERA-TION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS THAT RE-CEIVES A PAYMENT OR DISTRIBUTION UNDER THE PLAN, AND EACH OF SUCH HOLDERS' PREDECESSORS, SUCCESSORS, ASSIGNS, AND EACH OF THEIR PRE-SENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, AND AGENTS (ACTING IN SUCH CAPACITY) SHALL BE DEEMED TO HAVE WAIVED, RELEASED, VOIDED, AND DISCHARGED THE PLAN RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, JUDGMENTS, OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE PLAN RELEASED PARTIES' OBLIGATIONS UNDER THIS PLAN) WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UN-MATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXIST-ING OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE**

**EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, (INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY THE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVATIVELY) OF THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTORS, EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS, AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, AND AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE, OR THE VOTE, CONSENT, OR AUTHORIZATION OR APPROVAL OF ANY ENTITY. NOTWITHSTANDING ANYTHING IN THIS SECTION 9.15 THAT COULD BE CONSTRUED TO THE CONTRARY, BROADMOOR RETAINS ALL CLAIMS AND RIGHTS AGAINST ALDER AQUA, LTD AND ALDER AQUA, LTD RETAINS ALL CLAIMS AND RIGHTS AGAINST BROADMOOR PURSUANT TO THE PARTIES' PARTICIPATION AGREEMENT.**

9.16 **<u>Exculpation</u>**

**None of the Exculpated Parties shall have or incur any liability to any Entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, solicitation of votes, Confirmation, or approval of the Plan, or any compromises or settlements contained therein, the administration of the Plan or Distributions under the Plan, the Disclosure Statement, and any ancillary documents related thereto or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, the foregoing provisions of this section 9.16 shall not affect the liability of any Exculpated Party that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct, and in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

9.17 **<u>Injunction on Claims</u>**

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any other order of the Bankruptcy Court that may be applicable, all holders of Claims or other debt or liability that is treated under the Plan or Interest or other right of interest that is terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan against the Debtors, the Estate, or the Reorganized Debtors or any properties or interest in properties of the Debtors or the Reorganized Debtors; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Estate,  the Reorganized Debtors, or any properties or interest in

properties of the Debtors or the Reorganized Debtors; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Estate,  the Reorganized Debtors, or any properties or interest in properties of the Debtors or Reorganized Debtors; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Estate,  the Reorganized Debtors, or any properties or interest in properties of the Debtors or the Reorganized Debtors; (e) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan; and (f) taking any actions to interfere with the implementation or Consummation of the Plan, with respect to any such Claim or other debt or liability that is discharged or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan.

## ARTICLE X
## SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

For purposes of voting on, Confirmation of, and Distributions to be made to holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to Confirmation of this Plan, that the Bankruptcy Court enter an order providing for the consolidation of the estates of the Debtors into a single estate for purposes of this Plan, the Confirmation hereof, and Distributions hereunder.

Pursuant to the Confirmation Order: (1) all assets and liabilities of the consolidated Debtors shall be deemed to be merged solely for purposes of Distributions to be made hereunder, (2) the obligations of each Debtor shall be deemed to be the obligation of the consolidated Debtors solely for purposes of Distributions hereunder, (3) any Claims Filed or to be Filed in connection with any such obligations shall be deemed Claims against the consolidated Debtors, (4) each Claim Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the assets and liabilities of the Debtors, (5) all transfers, disbursements, and Distributions made by any Debtor hereunder shall be deemed to be made by the consolidated Debtors, and (6) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Intercompany Interests shall be treated as provided in Class 6 of this Plan.

Notwithstanding the foregoing, such limited consolidation shall not affect: (1) the legal and corporate structure of the Reorganized Debtors, (2) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts or unexpired leases that have been or shall be assumed pursuant to this Plan, (3) distributions from any insurance policies or proceeds of such policies, (4) the revesting of assets in the separate Reorganized Debtors pursuant to Article VIII of this Plan, or (5) guarantees that are required to be maintained post-Effective Date either: (a) in connection with Executory Contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or shall hereunder be, assumed or (b) pursuant to the express terms of this Plan. The consolidation proposed herein shall not affect each Debtor's obligation to File the necessary operating reports and pay any required fees pursuant to

28 U.S.C. § 1930(a)(6), which obligation shall continue until a Final Order is entered closing, dismissing, or converting each such Debtor's Chapter 11 Case.

## ARTICLE XI
## EFFECTIVENESS OF THE PLAN

### 11.01 **Conditions Precedent to Effectiveness**

The Plan shall not become effective unless and until the following have been satisfied, or waived in accordance with section 11.02 below:

a.      A Final Order directing the substantive consolidation of the Debtors' estates for purposes of Distributions shall have been entered and remain in full force and effect.

b.      The Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Plan Sponsor, shall have been entered by the Bankruptcy Court;

c.      There is no stay or injunction in effect with respect to the Confirmation Order; and

d.      14 days shall have passed since the Confirmation Order has been entered by the Bankruptcy Court.

### 11.02 **Waiver of Conditions Precedent**

Only the Debtors, with the approval of the Plan Sponsor, may waive the conditions listed in section 11.01 above, and such waiver may be without notice to parties in interest or the Bankruptcy Court and without a hearing.

### 11.03 **Effect of Non-Occurrence of Effective Date**

If the conditions to the occurrence of the Effective Date have not been timely satisfied or waived pursuant to section 11.02, and upon notification Filed by the Debtors with the Bankruptcy Court, the Confirmation Order shall be vacated and the Debtors and all parties in interest shall be restored to the *status quo ante*. If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect.

## ARTICLE XII
## RETENTION OF JURISDICTION

If permitted under applicable law, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      To determine pending applications for the assumption or rejection of Executory Contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

b.      To determine any and all adversary proceedings, applications, and contested matters;

c.      To determine any Claims Objections and Administrative Expense Claims;

d.      To approve settlements between the Reorganized Debtors and the holder of a Disputed Claim, if Bankruptcy Court approval is necessary under the terms of the Plan;

e.      To issue such orders in aid of execution and Consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

f.      To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

g.      To determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

h.      To determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

i.      To determine disputes arising in connection with the recovery of all assets of the Debtors and property of the Estate, wherever located;

j.      To determine matters concerning taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

k.      To determine any other matter not inconsistent with the Bankruptcy Code; and

l.      To enter a final decree closing the Chapter 11 Cases.

### ARTICLE XIII
### MISCELLANEOUS PROVISIONS

#### 13.01 **Aid in Implementation of Plan**

The Bankruptcy Court may direct the Reorganized Debtors, the Debtors, and any other Entity to execute or deliver or to join the execution or delivery of any instrument required to effectuate the Plan and to perform any other act necessary to consummate the Plan.

#### 13.02 **Amendment or Modification of the Plan**

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time before entry of the Confirmation Order, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be

altered, amended, or modified at any time after entry of the Confirmation Order and before sub-stantial Consummation, provided that the Plan as altered, amended, or modified satisfies the re-quirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifica-tions. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

### 13.03 **Severability**

If the Bankruptcy Court determines, before entry of the Confirmation Order, that any pro-vision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unen-forceable with respect to the holder or holders of such Claims or Interests as to which the provision is determined to be invalid, void, or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

### 13.04 **Revocation or Withdrawal of the Plan**

The Debtors shall have the right to revoke or withdraw the Plan before entry of the Con-firmation Order. If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

### 13.05 **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and Interests and their respective successors and assigns.

### 13.06 **Notices**

To be effective, all notices, requests, and demands to or upon the Debtors or the Reor-ganized Debtors shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when it arrives at the following mailing addresses or, in the case of notice by electronic mail, when the electronic mail is received by the following elec-tronic mail accounts:

> *If to the Debtors:*
> VeroBlue Farms USA, Inc.
> 401 Des Moines Street
> Webster City, IA 50595
> Attention:    Norman McCowan
> Chief Executive Officer
> Email:  norman.mccowan@verobluefarms.com
>
> Copies to:

33

Joseph A. Peiffer
Ag & Business Legal Strategies
P.O. Box 11425
Cedar Rapids, IA 52410-1425
Email:  joe@ablsonline.com

Dan Childers
Elderkin & Pirnie, PLC
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Email:  dchilders@elderkinpirnie.com

## 13.07 **Governing Law**

Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the state of Iowa without giving effect to the principles of conflicts of law of such jurisdiction.

## 13.08 **Allocation of Plan Distributions Between Principal and Interest**

If any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

Dated the date set forth above.

VEROBLUE FARMS USA, INC.
on behalf of itself and its substantively con-
solidated debtors

By:  /s/ Norman McCowan
       Norman McCowan
       Chief Executive Officer

ELDERKIN & PIRNIE, PLC

By:  /s/ Dan Childers
       Dan Childers
       Attorney for Debtor

AG & BUSINESS LEGAL STRATEGIES

By: /s/ Joseph A. Peiffer
      Joseph A. Peiffer
      Attorney for Debtor

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of March 2019, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system and served electronically on those participants that receive service through the CM/ECF System. The undersigned further certifies the foregoing document was sent to persons or representatives via electronic mail or U.S. Mail postage pre-paid as set forth below.

Signed: /s/ Hannah Hanser

| | |
|---|---|
| Phillip L. Sheets, Ltd.<br>c/o Phillip Sheets<br>7632 Jefferson Rd<br>Belleville, IL 62221 | William John Turk<br>5621 Valhalla Drive<br>North Richland Hills, TX 76180 |
| McDonald Supply/Hajoca Corp<br>c/o Alysia Hedrick<br>P.O. Box 708<br>Dubuque, IA 52004-0708 | Elizabeth M. Lally<br>17838 Burke Street, Suite 250<br>Omaha, NE 68118 |
| Laura M. Hyer<br>Bradley & Riley PC<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 | Joseph E. Schmall<br>Bradley & Riley<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 |
| Eric W. Lam<br>Simmons Perrine Moyer Bergman PLC<br>115 Third Street SE, Suite 1200<br>Cedar Rapids, IA 52401 | |

18978952