IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>VEROBLUE FARMS USA, INC.,<br>VBF OPERATIONS, INC.,<br>VBF TRANSPORT, INC.,<br>VBF IP, INC., and<br>IOWA'S FIRST, INC.<br><br>Debtors. | Chapter 11 Bankruptcy<br>Case No. 18-01297<br><br>**ORDER CONFIRMING PLAN** |

The matter before the Court is confirmation of the Debtors' Amended Joint Chapter 11 Plan of Reorganization filed on March 13, 2019 (Dkt #364), as further amended by certain technical amendments filed on April 15, 2019 (Dkt #464), and further modified pursuant to F.R.B.P. 3019 (filed April 18, 2019, Dkt #481) (hereinafter collectively referred to as "Plan"). Further changes to the modifications filed April 18, 2019 were announced on the record in open Court. Amended and restated modifications have been filed on May 3, 2019 consistent with the changes announced in Court. A copy of the Plan is attached hereto.

Two sets of parties objected to the Plan: FishDish, LLC ("FishDish"), which objected on several grounds addressed throughout this order (filed on April 12, 2019 at Dkt #460), and a more limited objection by Leslie Wulf, James Rea, John Rea, and Bruce Hall (collectively, the "Founders"), who asserted certain release language contained in the Plan was improper (filed on April 12, 2019 at Dkt #446). The Founders' objection was resolved through modifications to the Plan, as was a portion of the FishDish objection.

Trial on confirmation of the Plan was held on April 17 and April 18, 2019, and appearances were noted on the record. The Court received testimony and exhibits, as well as arguments from the parties. On April 22, 2019, the Court convened the parties by

telephone and rendered a bench ruling ("Ruling"), confirmed by a proceeding memo/docket entry (Dkt #495). The Court directed the Debtors and the Plan sponsor Alder Aqua, Ltd. ("Alder") to prepare a written Order, to be circulated to the various parties in interest for approval. Pursuant to F.R.B.P. 7052 and 9014, the Court sets forth the following Procedural History, Findings of Fact, Conclusions of Law and Order:

## PROCEDURAL HISTORY OF CHAPTER 11 CASES

After the Debtors filed their Chapter 11 Petitions in this Court on September 21, 2018, the Court held a "first day hearing" and considered the Debtors' request for entry of a Financing Order pursuant to 11 U.S.C. §364 ("DIP Order") (Dkt #73, filed October 17, 2018). At that first day hearing, the Debtors' Chief Restructuring Officer, Alex Moglia, provided testimony concerning Debtors' operations and corporate structure and the cash "burn rate" or "bleed rate," which necessitated the culling of fish inventory.

Subsequently, the Office of the United States Trustee appointed an official Unsecured Creditors Committee ("UCC"). The UCC, pursuant to the DIP Order, sought and obtained additional time to investigate the claims and liens asserted by Broadmoor Financial L.P. ("Broadmoor") pursuant to its pre-petition credit facility, in which Alder was a participant. On December 19, 2019, the UCC served a Challenge Notice on the Debtors, to which an unofficial Ad Hoc Committee of Equity Holders ("AHC") joined. On January 11, 2019, on the last day to do so, the UCC filed a Motion to Extend Time to File and Prosecute an Adversary Complaint Against Broadmoor Financial LP and Other Entities and Individuals (Dkt. #240) (the "Extension Motion"), to which the AHC joined on January 13, 2019. (Dkt. #246.)

At hearings in January and February 2019, the Court had opportunity to consider aspects of the Challenge Notice, as well as other issues such as the role of the AHC. On January 9, 2019, the AHC (Dkt. #237) and the UCC (Dkt. #238) filed their respective objections to the Disclosure Statement. At a January 16, 2019 hearing to approve the Disclosure Statement, the Debtors informed the Court that a modified Disclosure Statement would be filed (*see* Dkt. #258), which was submitted to Court on February 16, 2019 ("Modified Disclosure Statement"). (Dkt. #308.) The Modified Disclosure Statement was approved by Court order on February 20, 2019. (Dkt. #313.)

The Court initially deferred ruling on various issues, until and pending confirmation. (*See* Dkt. #293.) Deferral proved to be unworkable and, during various hearings between February and March 2019, the Court heard various issues and arguments, including discovery disputes.

One of these issues related to the AHC's Protective Motion for Standing to File and Prosecute Adversary Complaint Against Broadmoor, Amstar Group, LLC, Alder, Otto Happel, Jens Haarkoetter, Eva Happel Ebstein, Norman McCowan and Bjorn Thelander, dated February 3, 2019 ("Standing Motion") with the AHC seeking authority under the DIP Order to file, prosecute and settle claims relating to Broadmoor's claims and liens and assert other causes of action. (Dkt. #288.) Alder (Dkt. #291), Broadmoor (Dkt. #344), and the United States Trustee (Dkt. #358) each filed objections to the Standing Motion.

Meanwhile, the UCC, the Debtors and Alder reached a consensual arrangement, by which a consensual plan would be framed to incorporate the settlement terms between and among the UCC, the Debtors and Alder. A stipulation containing the key terms of this

3

consensual plan was filed on March 5, 2019 (Dkt. #338). Pursuant to the Stipulation, the UCC withdrew the Extension Motion.

On March 7, 2019, the Debtors filed a Motion to Bar AHC, pursuant to F.R.B.P. 2019 (Dkt. #349). Following an evidentiary hearing on March 13 and argument on March 18, 2019, the Court concluded that the AHC failed to comply with F.R.B.P. 2019 and barred the AHC from further participation. In the order granting the Debtors' motion to bar the AHC (Dkt. #386), the permitted individual or corporate shareholders to participate in the Debtors' bankruptcy cases "as is contemplated by the bankruptcy code and Federal Rules of Bankruptcy Procedure."

Further, on March 18, 2019, argument on the Standing Motion was heard and the Standing Motion was denied ("Standing Motion Order"). (Dkt. #421.) The Court held that, pursuant to the terms of the DIP Order:

> objections to the Broadmoor Secured Debt (as that term is defined in the [DIP Order]), as well as any and all claims held by Debtor, or derivative of Debtor's rights, for the recharacterization or equitable subordination of the Broadmoor Secured Debt, are barred, because no timely challenge was made pursuant to the DIP Order and for other reasons set forth on the record.

(*Id.*) The Court also ruled, based upon the reasoning and otherwise as set forth at the hearing, that "for all parties in interest, any further discovery relating to Plan Confirmation is barred, for reasons set forth on the record." (*Id.*)

Finally, on March 13, 2019, the consensual Plan and the Disclosure Statement were filed. On March 18, 2019, the Court approved the Disclosure Statement and set the timeline for balloting and the confirmation hearing. (Dkt. #391.)

FishDish, a preferred shareholder of Debtor VeroBlue Farms USA, Inc., did object to and did participate in the confirmation hearing. FishDish was represented by the same

counsel as the AHC and Kenneth Lockard, the chairman of the AHC, is a principal of FishDish and its managing member.

On April 12, 2019 FishDish filed: (a) a Motion to Initiate Limited Discovery in connection with Plan confirmation (Dkt. #459) ("FishDish Discovery Motion"); and (b) its Objection to Broadmoor Financial LP's Claims (Dkt. #458) ("FishDish Claim Objection"). On April 16, 2018, the Court held a telephonic hearing and denied the FishDish Discovery Motion and the FishDish Claim Objection for the same reasons it denied the Standing Motion and for reasons set forth on the record. (Dkts. #473, 483.)

The Court further notes the exclusivity period in 11 U.S.C. § 1121 expired in mid-March 2019.

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

Having heard the testimony from various witnesses and examined exhibits, the Court hereby makes the following Findings of Fact and Conclusions of Law:

A.    <u>Jurisdiction; Venue; Core Proceeding</u>. The Bankruptcy Court has jurisdiction over the Debtors' chapter 11 case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) over which the Bankruptcy Court has exclusive jurisdiction.

B.    <u>Adequacy and Sufficiency of Notices</u>. Solicitation packages (including the Plan, Disclosure Statement, the Court's order approving the Disclosure Statement and ballots) were served in compliance with the Disclosure Statement Order, and such service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and other deadlines and any extensions thereto and matters required to be noticed pursuant

19139960.7

to the Disclosure Statement Order was given in compliance with Bankruptcy Rules, the Disclosure Statement Order and other Orders of the Bankruptcy Court, and no other or further notice is or shall be required.

C.    <u>Adequacy of Solicitation Procedures</u>. All procedures used to distribute solicitation package to the creditors entitled to vote on the Plan and to tabulate the ballots returned by creditors were fair and were conducted in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules and the Disclosure Statement Order. Votes for acceptance or rejection of the Plan were solicited and cast in good faith and in compliance with 11 U.S.C. §§ 1125 and 1126 and Fed. R. Bankr. P. 3017 and 3018.

D.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Bankruptcy Court in this chapter 11 case, the Debtors and their respective directors, officers, employees, agents, accountants, attorneys and other representatives have acted in good faith within the meaning of 11 U.S.C. § 1125(e) in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances of the Plan and their participation in the activities described in 11 U.S.C. § 1125 and are entitled to the protections afforded by 11 U.S.C. § 1125(e).

E.    <u>Compliance with Fed. R. Bankr. P. 3016</u>. The Plan is dated and identifies the entity submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a). The filing of the Disclosure Statement with the Bankruptcy Court satisfies Fed. R. Bankr. P. 3016(b).

F.    <u>Compliance with Fed. R. Bankr. P. 3017</u>. The Debtors have given notice of the Confirmation Hearing as required by Fed. R. Bankr. P. 3017(d) and the Disclosure Statement Order. Solicitation packages prescribed by the Disclosure Statement Order were

19139960.7

transmitted to the creditors entitled to vote on the Plan in accordance with Fed. R. Bankr. P. 3017(d).  The requirements of Fed. R. Bankr. P. 3017(e) are inapplicable.

G.    <u>Compliance with Fed. R. Bankr. P. 3018</u>. The solicitation of votes to accept or reject the Plan satisfies Fed. R. Bankr. P. 3018. The Plan was transmitted to all creditors entitled to vote on the Plan, sufficient time was prescribed for such creditors to accept or reject the Plan, and the solicitation package used and solicitation procedures followed comply with 11 U.S.C. § 1126, thereby satisfying the requirements of Fed. R. Bankr. P. 3018.

H.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>. The principal purpose of Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933, and no governmental unit has objected to the confirmation of Plan on any such grounds. Plan therefore satisfies the requirements of 11 U.S.C. § 1129(d).

I.    <u>Plan Amendments and Modifications</u>. The technical amendments to the Plan filed on April 15, 2019, the further modifications filed on April 18, 2019, the further changes to the modifications read into the record at the Confirmation Hearing, and the amended and restated modifications filed on May 3, 2019 do not materially or adversely affect or change the treatment of any holder of a Claim who has not accepted in writing the modifications. Accordingly, pursuant to Fed. R. Bankr. P. 3019, such modifications do not require additional disclosure under 11 U.S.C. § 1125 or re-solicitation of acceptances or rejections under 11 U.S.C. § 1126, nor do they require that holders of claims be afforded an opportunity to change previously cast acceptances or rejections of Plan.

J.    <u>Burden of Proof</u>.  Debtors, as proponents of the Plan, have met their burden of proving the elements of 11 U.S.C. §§ 1129(a) (except § 1129(a)(8) and (b) by a

preponderance of the evidence, as set forth on the record. The overwhelming weight of the evidence warrants confirmation.

K. <u>Absence of Pecuniary Interest by FishDish.</u> The resolution of Broadmoor's claims and liens renders it almost impossible for FishDish as equity holder to contend their pecuniary interests were substantially adversely affected. This is so because the Debtors are so insolvent that shareholders, such as FishDish, are "out of the money." The Court finds that several of FishDish's Plan objections do not implicate a pecuniary interest in the relevant plan provision.

L. <u>Compliance of Plan and Bankruptcy Code</u>. The Plan complies with the applicable provisions of the Bankruptcy Code as required by 11 U.S.C. § 1129(a)(1). Among other things:

1. The Court notes that objections regarding the scope of release provisions were resolved during the hearing, as set forth on the record. The Court finds that the release provisions, as amended, are appropriate and concludes the release provisions are not in conflict with the provisions of the Bankruptcy Code.

2. The Plan complies with 11 U.S.C. § 1123(a)(4). Contrary to FishDish's contention, its equity interest under the Plan is treated the same as Alder's. They are both cancelled. Further rationale is provided in the discussion of 11 U.S.C. § 1129(b), below.

M. <u>Compliance of Plan Proponents with Bankruptcy Code</u>. The Plan proponents have complied with the applicable provisions of the Bankruptcy Code, as required by 11 U.S.C. § 1129(a)(2). Among other things, in compliance with 11 U.S.C. § 1125(b), the Debtors did not solicit acceptances of the Plan until after the Court had entered its order approving the Disclosure Statement. (See Dkt. #389, the "Disclosure Statement Order").

19139960.7

N.    Good Faith. The good faith requirement of § 1129(a)(3) has been satisfied, based on the totality of the circumstances. The Plan offers a result consistent with the purposes of Chapter 11. As further established by the evidence:

1.    FishDish's arguments and evidence that the Debtors committed wrongs or acted detrimentally, with respect to the issue of culling and killing of fish, are without merit and not supported. This Court finds the fish kill was supervised by a veterinarian and was proper. The Debtors' president, Norman McCowan, used appropriate procedures as proposed by a veterinarian. To the extent any federal law or regulation deals with the killing of fish with clove oil, testimony revealed those regulations only govern the so-called "numbing of fish, and do not prohibit the killing of fish." The culling was effectuated in totes, separate from the various tanks that contained other fish. Witness Mark Nelson testified and provided photographic evidence that he saw one tank with the presence of clove oil. That testimony only related to one tank. This Court does not find that water from that tank was re-circulated to other areas, or that fish killed with clove oil went into the market. The Debtors' attempts at culling were carefully conducted, were duly supervised by a veterinarian, and were not in bad faith. The Court finds that the culling was necessary to reduce the Debtors' cash "burn rate," and was appropriate. Indeed, the Court discussed culling and heard testimony from Alex Moglia, the Debtors' Chief Restructuring Officer, at the first day hearing and this Court expressly authorized this course of action.

3.    With respect to FishDish's arguments and evidence concerning investigation of allegations in the Challenge Notice and the possibility of pursuit by the Debtors of any lawsuit against Broadmoor, Alder, or others, this Court finds that the claims do not rise to the level of any "colorable claim" that would justify any further investigation

into or prosecution of any equitable subordination, re-characterization, lender liability, breach of fiduciary duty, or similar theories against Broadmoor's claims or liens or Alder or individuals identified in the Challenge Notice for reasons set forth on the record. Debtors engaged two law firms and conducted an internal investigation. Upon the conclusion of the internal investigation, the Debtors commenced litigation against the Founders, based upon allegations fundamentally at odds with those set forth in the Challenge Notice. The evidence adduced at the hearing shows the absence of any "colorable claim." With respect to all other arguments raised by FishDish, the arguments are not supported by any evidence in the record.  This Court finds there was no lack of good faith.

O.    <u>Payment of Fees</u>. The Plan provides that all fees and expenses of professionals for services rendered prior to the Effective Date remain subject to final review for reasonableness under Bankruptcy Code § 330. Accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(4).

P.    <u>Disclosures Regarding Management</u>. To the extent possible, the Plan discloses the identity and affiliations of any individual who, after confirmation, will serve as a director, officer, or voting trustee of the Debtor, any affiliate of the Debtor participating in a joint plan, or a successor to the Debtor. The service of such individuals is consistent with the interests of creditors and equity security holders and with public policy. As of the Effective Date, the Chief Executive Officer of the Reorganized Debtor shall be Norman McCowan. Accordingly, the Plan satisfies the requirements of Bankruptcy Code §1129(a)(5)(A).

Q.    <u>No Rate Regulation</u>. Bankruptcy Code §1129(a)(6) is inapplicable to the Plan.

19139960.7

R.      "Best Interests" Test. With respect to the inquiry of whether the unsecured creditors would have received more if these cases were liquidated under Chapter 7, this Court finds overwhelming evidence that there will be nothing or very little distribution to the unsecured creditors. With respect to the equity and interest holders, there will be no dividend or property to be distributed to them. In a Chapter 7 scenario, therefore, the equity holders will likewise receive nothing. Specifically, with respect to FishDish's argument that the Debtors erroneously valued at $0 claims asserted in the Challenge Notice and the lawsuit pending in the Northern District of Texas against the Founders, the Court accepts and finds credible testimony from the Debtors' Chief Restructuring Officer, Alex Moglia, to the effect that if this case were converted to Chapter 7, a Chapter 7 trustee likely will not pursue the lawsuit against the Founders because, among other reasons, there will be no money to fund the likely costly litigation. This testimony by Mr. Moglia supports the Court's finding that the so-called "best interest" test in § 1129(a)(7) is satisfied. Accordingly, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(7).

S.      Acceptance by all Classes. All classes of creditors accepted the Plan, voting in overwhelming margins, as established by the Ballot Report submitted by the Debtors. Only the equity class, which was statutorily deemed to reject the Plan under 11 U.S.C. § 1126(g), has not accepted. Accordingly, the Plan does not comply with the requirements of 11 U.S.C. § 1129(a)(8), but confirmation is alternatively available through 11 U.S.C. § 1129(b).

T.      Priority Claims. The Plan complies with the requirements of 11 U.S.C. § 1129(a)(9). Pursuant to the Plan, as modified, all payments of claims covered in 11 U.S.C. § 1129(a)(9) will be made on the Effective Date of the Plan or as soon thereafter as practicable.

19139960.7

U.   Impaired, Accepting Class of Creditors. At least one class of creditors accepted the Plan, not counting any acceptances by insiders. In particular, Classes, 2, 3(a), 3(b), 3(c) and 5 accepted the Plan without regard to acceptances by insiders. Accordingly, the requirements of 11 U.S.C. § 1129(a)(10) have been met.

V.   Feasibility. Confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Debtors, as required by 11 U.S.C. § 1129(A)(11). In particular:

1.   FishDish argues feasibility was not met, because of Alder's funding contingencies set forth in Exhibit C to the Disclosure Statement. On the first day of the confirmation hearing, Alder submitted Alder Exhibit 1, a letter commitment from Alder to the Debtors providing that a $13.5 million contribution will be made on the Effective Date. The Debtors further submitted plan modifications confirming that the funds will pay entirely all the payments towards claims that were provided for in the Plan. The Court finds this evidence to conclusively demonstrate Alder's intention and ability to fully fund the Plan. This intention and ability are further demonstrated through Alder's actions through the history of this Case and the events leading up to filing. The Court finds that the Plan is therefore feasible.

2.   With respect to FishDish's arguments relative to the water supply and waste water management funding contingencies contained in Exhibit C to the Disclosure Statement, the Court finds FishDish's arguments are not supported by the evidentiary record. For example, the attorney for Webster City testified by telephone that, while the Debtors had not filed an application for a wastewater permit with Webster City, the city had not determined and had not been told the amount of waste water that may flow from the

19139960.7

Debtors' continued business operation.  Indeed, there may be ongoing negotiations between and among the Debtors, the city, and the Department of Natural Resources that might address the concerns.  While testimony from Mark Nelson and from Norman McCowan demonstrated some concerns with the amount of water required and waste water management, Mr. McCowan further testified about emerging technology that might address the need for water and waste management, such that eventually these issues may be amicably and favorably resolved.

W.    U.S. Trustee Fees.  The Plan provides that the filing fees and the United States Trustee fees listed in 28 U.S.C. § 1930 will be paid in full on the Effective Date of the Plan.  Accordingly, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(12).

X.    Miscellaneous.  Bankruptcy Code §§ 1129(a)(13)-(16) are inapplicable to the Plan.

Y.    Cramdown on Equity Class.  While the Plan does not satisfy §1129(a)(8), the Plan does satisfy 11 U.S.C. §1129(b), because the Plan is fair and equitable, and does not discriminate unfairly with respect to Class 7 equity interests, in which Class FishDish's equity interest is classified.   Among other things:

1.    No class junior to FishDish will receive property under the Plan. As such, the Plan satisfies 11 U.S.C. §1129(b)(2)(C)(ii). The Plan provides all equity and shareholder interests will be cancelled, including the preferred shares held by FishDish and Alder. Thus, the Plan provides for equal treatment of FishDish and Alder. The Plan does not discriminate unfairly, because both FishDish and Alder Class 7 interests are treated exactly the same.

19139960.7

2.    While Alder will provide new value to the extent of at least $13.5 million, FishDish did not provide any new value.  The equity to be issued to Alder is on account of its equity contribution, not its existing equity shares.

3.    To the extent relevant, Alder did not in fact receive an "exclusive" right to invest in the reorganized Debtors.  In particular:

a.    The exclusive right to file a plan expired mid-March 2019 pursuant to 11 U.S.C. §1121(c).  Any party in interest willing to propose a plan providing for new equity was free to.  None did.  Indeed, had a competing plan been filed, this Court is confident it would have accommodated the proponent of any competing plan such that any competing plan would have been considered by this Court.

b.    With respect to the purported offer from InCity Farms, LLC ("InCity") through Mr. Glenn Ford, in an apparent amount of $14 million, the Court finds the purported proposal is subject to conditions, including successful resolution of the wastewater permitting issue with Webster City and further conditioned on satisfactory inspection of the Debtors' facilities.  The Court finds the InCity purported offer is not an actionable offer because of these contingencies.  At best, it is a promise, but it is not an investment commitment.  For example, there is no money being held in escrow, and there is no credible evidence the contingencies will be satisfied or lifted.  Further, Mr. Ford testified he was unaware one or more of the tanks at the Debtors' premises have already frozen.  Mr. Ford was of the view that a frozen tank was an important consideration, and he and InCity might not proceed forward if, indeed, one or more tanks were frozen and were not operational.  InCity's purported offer cannot be considered in a vacuum because the proposed $14 million injection was coupled with at best a vague notion of more capital

14

investment.  In contrast, Alder's $13.5 million cash injection pursuant to Alder Exhibit 1 is not subject to any contingency (other than Plan confirmation), a Plan enhancement from the Debtors and Alder possibly in response to FishDish's objection.

        c.     The Court further finds InCity's purported offer, tendered on day two of the confirmation hearing, is simply too late, is not appropriate, and is not enough to support the theory or argument that there may be additional equity availability in the market.  Simply put, the conditional and belated nature of InCity's purported offer is not enough to overcome confirmation.  In contrast, Alder's $13.5 million immediate injection is part of a larger plan of reorganization, whereas InCity's purported offer was not accompanied by any concrete plan to reorganize the Debtors' capital structure. Last but not least, Alder's $13.5 million will pay Broadmoor's negotiated claim in full on the Effective Date, another Plan enhancement from the Debtors and Alder possibly in response to FishDish's objection, whereas InCity's purported offer did not include that feature.

        d.     The UCC continues to support the Plan, even after the UCC was made aware of InCity's purported offer. The UCC did not ask to stop or slow down the proceeding.  The UCC also will likely pursue litigation, such as Part V recovery and a lawsuit against Mr. Sheriff, whereas Mr. Ford testified he was not interested in any further litigation.

        e.     While Mr. Ford's testimony was interesting and thoughtful, it is simply not enough.  It is a proverbial "could have, would have, should have" approach. Mark Nelson and Mr. Ford testified they were involved with an effort to potentially purchase Debtor assets circa December 2018 and January 2019, *i.e.* several months before the confirmation hearing, touring the facilities and discussing a purchase with Mr.

McCowan.  Nonetheless, as of the confirmation hearing, Mr. Ford did not have any money

in hand, and did not tender a purported offer from InCity until April 18, *i.e.* the second day

of confirmation hearing.   Other parties, such as Mark Nelson, also expressed purchase

interest, and met with Alder's consultants in Toronto in the Fall of 2018.   None of these

contacts resulted in any firm offer, until InCity's purported offer was tendered on April 18,

2019.

f.      Mr. Ford and InCity also purported to partner with FishDish,

but there was no evidence that FishDish actually committed to any such investment, and

there is no written agreement between FishDish and InCity or Ford.   There is no evidence

as to how the partnership between FishDish and InCity or Ford will work.   At best, InCity's

and FishDish's attempt was a "last ditch effort" to present competing ideas that fell short.

The Court disagrees with FishDish's argument that the Court can simply plug in a $14

million figure into the Plan, in place of Alder's commitment.

4.      With respect to the impact of the Supreme Court's decision in *Bank of

America National Trust and Savings Association v. 203 North LaSalle Street Partnership*, 526 U.S.

434 (1999), the Court finds that ruling is distinguishable.   First, exclusivity in *203 North

Lasalle* was intact and had not expired.   In this case, exclusivity expired in mid-March 2019.

There is and was nothing to prevent FishDish (or anyone else) from proposing a competing

plan.   No one did.   Second, in *203 North LaSalle* a class of creditors objected to the plan.

Here, all classes of creditors have accepted the Plan, even though the unsecured claimants

will not receive 100% dividend.   Last, but not least, no class below FishDish will receive any

property or distribution under the Plan.

16

Z.      This Plan satisfies 11 U.S.C. §1129(b)(2)(C)(ii).  FishDish has not supplied this Court with any precedent involving a situation similar to the one at bar, *viz.* FishDish has not cited to any decision in a case in which exclusivity has expired, in which all classes of creditors have accepted the plan, and in which no class junior to the objecting interest holder will receive any money or distribution, but yet concluding the Supreme Court's *203 North LaSalle* mandate was not followed. The Court therefore concludes *203 North LaSalle* is distinguishable and not applicable to the Plan.  The Plan does not discriminate unfairly and it is fair and equitable.

AA.     <u>Objections Overruled</u>.  All of FishDish's Plan objections are overruled and denied.

ORDER

WHEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Plan is confirmed.  The terms of the Plan are incorporated by reference into this Order as if fully set forth herein.

2.      The Debtors and the Reorganized Debtors are authorized to take or cause to be taken all actions necessary to implement and effectuate the provisions of the Plan.

3.      Pursuant to the Plan, on the Effective Date, all property, assets, and rights of the Debtor shall vest in the Reorganized Debtors (or the Creditor Trust, as applicable) and shall be free and clear of all claims and interests of creditors and equity security holders, except as expressly provided in the Plan.

4.      Pursuant to and subject to the terms of the Plan, on the Effective Date, all of the powers and duties of the Debtors shall vest in the Reorganized Debtors.

19139960.7

5.      Pursuant to Bankruptcy Code § 1146, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recoding of any instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.

6.      Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, interests and controversies resolved pursuant to the Plan or relating to the contractual, legal and subordination rights that a Holder of a Claim or interest may have with respect to any Claim or interest, or any Distribution to be made on account of such Claim or interest, which compromise and settlement is hereby approved.  The releases and exculpation provided in Sections 9.13, 9.14 and 9.15 of the Plan are enforceable according to their terms.

7.      The failure to reference or discuss any particular provision of the Plan herein shall have no effect on the validity, binding effect, and enforceability of such provision, and such provision is incorporated herein and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

8.      Notwithstanding the entry of this Order confirming the Plan, the Court shall retain jurisdiction of all matters arising out of and related to the Debtors' Chapter 11 case and the Plan, and as specifically set forth in Article X of the Plan, including, but not limited to, jurisdiction to determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan.

19139960.7

May 7, 2019

DATED AND ENTERED: _____.

_____
Thad J. Collins, Chief Bankruptcy Judge
U.S. Bankruptcy Court, Northern District of Iowa

*ORDER PREPARED BY:*
Dan Childers, LI0007535
Attorney for Debtors
and
Eric W. Lam, AT0004416
Attorney for Alder

19139960.7

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| In re:<br><br>VeroBlue Farms USA, Inc., *et. al.*,<br>EIN:<br><br>Debtors. | Case No. 18-01297<br><br>Chapter 11 |

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF VEROBLUE FARMS USA, INC. AND ITS AFFILIATED DEBTORS

Dated: March 13, 2019

Dan Childers
Elderkin & Pirnie, PLC
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Telephone: (319) 362-2137
Facsimile: (319) 362-1640
Email:  dchilders@elderkinpirnie.com

Joseph A. Peiffer
Ag & Business Legal Strategies
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

**Attorneys for the Debtors**

# TABLE OF CONTENTS

**Page**

ARTICLE I    INTRODUCTION ......................................................................................... 1

ARTICLE II    DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION
OF TIME .................................................................................... 1

    2.01    Definitions ............................................................................................ 1

    2.02    Rules of Interpretation ......................................................................... 8

    2.03    Computation of Time ........................................................................... 8

ARTICLE III    TREATMENT OF UNCLASSIFIED CLAIMS.............................. 8

    3.01    Administrative Expense Claims............................................................ 8

    3.02    DIP Facility Claim ............................................................................... 9

    3.03    Professional Fee Claims....................................................................... 9

    3.04    Post-Effective Date Professional Fees ................................................. 9

    3.05    Priority Tax Claims............................................................................... 9

    3.06    Statutory Fees ..................................................................................... 10

ARTICLE IV    DESIGNATION OF CLASSES ................................................... 10

    4.01    Classification...................................................................................... 10

ARTICLE V    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS................. 11

    5.01    Class 1: Priority Non-Tax Claims ...................................................... 11

    5.02    Class 2: Broadmoor Secured Claim ................................................... 11

    5.03    Class 3(a), (b) and (c):  Secured Tax Claims ..................................... 12

        5.03(a) Class 3(a): Secured Tax Claim—Hamilton County Treasurer (Ur-
ban Farm) ........................................................................................ 12

        5.03(b) Class 3(b): Secured Tax Claim—Hamilton County Treasurer
(Blairsburg Facility).......................................................................... 12

        5.03(c) Class 3(c): Secured Tax Claim—Hardin County Treasurer (Buck-
eye Facility) ...................................................................................... 12

    5.04    Class 4: Additional Secured Claim—Card Services........................... 13

    5.05    Class 5: General Unsecured Claims.................................................... 13

    5.06    Class 6: Intercompany Interests ......................................................... 13

    5.07    Class 7: Interests in VBF USA .......................................................... 14

    5.08    Cramdown .......................................................................................... 14

ARTICLE VI    PROVISIONS REGARDING RESOLUTION OF CLAIMS AND
DISTRIBUTIONS UNDER THE PLAN ...................................... 14

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 6.01 | Method of Distributions Under the Plan | 14 |
| 6.02 | Claims Objections | 15 |
| 6.03 | Disputed Claims | 15 |
| 6.04 | Claims Estimation | 16 |
| 6.05 | Claims Allowance | 16 |
| ARTICLE VII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 16 |
| 7.01 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 16 |
| 7.02 | Rejection Damages Claims | 16 |
| 7.03 | Assumed Contracts; Cure of Defaults | 17 |
| ARTICLE VIII | UNSECURED CREDITOR TRUST | 18 |
| 8.01 | Unsecured Creditor Trust Declaration | 18 |
| 8.02 | Unsecured Creditor Trustee | 18 |
| 8.03 | Vesting of Assets | 18 |
| 8.04 | Creditor Trust Asset Administration | 19 |
| 8.05 | Case Administration | 19 |
| 8.06 | Creditor Trustee's Professionals | 19 |
| 8.07 | Quarterly Reports | 19 |
| 8.08 | Representative of Estate | 20 |
| 8.09 | Cooperation Regarding Assigned Causes of Action | 20 |
| 8.10 | Compensation of Creditor Trustee and Professionals | 20 |
| 8.11 | Exculpation | 20 |
| ARTICLE IX | OTHER MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN | 21 |
| 9.01 | Term of Bankruptcy Injunction or Stays | 21 |
| 9.02 | Consummation of the Plan | 21 |
| 9.03 | Sources of Cash for Plan Distributions | 21 |
| 9.04 | Compromise of Controversies | 21 |
| 9.05 | Effect of Plan on Undersecured Creditors | 21 |
| 9.06 | Effect of Plan on Debtors | 22 |
| 9.07 | Issuance of the Plan Sponsor New Equity Interest | 23 |

## TABLE OF CONTENTS
(continued)

<b>Page</b>

| | | |
|---|---|---:|
| 9.08 | Plan Transactions | 24 |
| 9.09 | Cancellation of Unexercised and Unvested Interests | 24 |
| 9.10 | Preservation of Causes of Action | 25 |
| 9.11 | Powers and Duties of Reorganized Debtors | 25 |
| 9.12 | Default Remedies | 26 |
| 9.13 | Discharge | 26 |
| 9.14 | Debtor Releases | 27 |
| 9.15 | Releases by Holders of Claims and Interests | 28 |
| 9.16 | Exculpation | 29 |
| 9.17 | Injunction on Claims | 29 |
| ARTICLE X | SUBSTANTIVE CONSOLIDATION OF THE DEBTORS | 30 |
| ARTICLE XI | EFFECTIVENESS OF THE PLAN | 31 |
| 11.01 | Conditions Precedent to Effectiveness | 31 |
| 11.02 | Waiver of Conditions Precedent | 31 |
| 11.03 | Effect of Non-Occurrence of Effective Date | 31 |
| ARTICLE XII | RETENTION OF JURISDICTION | 31 |
| ARTICLE XIII | MISCELLANEOUS PROVISIONS | 32 |
| 13.01 | Aid in Implementation of Plan | 32 |
| 13.02 | Amendment or Modification of the Plan | 33 |
| 13.03 | Severability | 33 |
| 13.04 | Revocation or Withdrawal of the Plan | 33 |
| 13.05 | Binding Effect | 33 |
| 13.06 | Notices | 33 |
| 13.07 | Governing Law | 34 |
| 13.08 | Allocation of Plan Distributions Between Principal and Interest | 34 |

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF VEROBLUE FARMS USA, INC. AND ITS AFFILIATED DEBTORS

### ARTICLE I
### INTRODUCTION

Pursuant to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), VeroBlue Farms USA, Inc. ("**VBF USA**"), VBF Operations Inc., Iowa's First, Inc., VBF Transport, Inc., and VBF IP, Inc. (the "**Debtors**") propose the following Amended Joint Chapter 11 Plan of Reorganization (the "**Plan**"). This Plan revises the Plan filed on December 10, 2018 (Doc. 191). Holders of Claims and Interests should refer to the Disclosure Statement accompanying this Plan for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and liquidation analysis, as well as a summary and description of the Plan.[1]

### ARTICLE II
### DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

2.01 **Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"**Additional Secured Claim**" means any Secured Claim other than the Broadmoor Secured Claim, the Secured Claim held by the Plan Sponsor arising from the Broadmoor Loan, or a Secured Tax Claim.

"**Administrative Expense Claim**" means any right to payment constituting a cost or expense of the Chapter 11 Cases under sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business or liquidation of their assets, any Professional Fee Claim, and any fees or charges assessed against the Estate under section 1930 of Title 28 of the United States Code.

"**Allowed**" means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim (a) for which a Proof of Claim was timely Filed with the Bankruptcy Court, and as to which no Claims Objection is interposed; (b) for which no Proof of Claim thereof was Filed, to the extent that such Claim has been listed by the respective Debtor in its Schedules as liquidated in amount and not disputed or contingent as to liability, and as to which no Claims Objection is interposed; (c) which arises from the recovery of property under sections 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

---

[1]All capitalized terms shall have meaning set forth in Article II of this Plan.

"**Allowed Additional Secured Claim**" means an Additional Secured Claim that is Allowed.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is Allowed.

"**Allowed Claim"** means a Claim that is Allowed.

"**Allowed General Unsecured Claim**" means a General Unsecured Claim that is Allowed.

"**Allowed Interest**" means an Interest that is Allowed.

"**Allowed Priority Non-Tax Claim**" means a Priority Non-Tax Claim that is Allowed.

"**Allowed Priority Tax Claim**" means a Priority Tax Claim that is Allowed.

"**Allowed Professional Fee Claim**" means a Professional Fee Claim that is Allowed.

"**Allowed Secured Claim**" means a Secured Claim that is Allowed.

"**Allowed Secured Tax Claim**" means a Secured Tax Claim that is Allowed.

"**Assigned Consensus of Action**" has the meaning ascribed thereto in section 8.04(b) of the Plan

"**Assumed Contracts**" means those Executory Contracts and unexpired leases of the Debtors assumed pursuant to Article VII of this Plan.

"**Avoidance Claims**" means any and all rights, claims, Causes of Action, or rights to avoid any transfer or incurrence of debt that may be asserted or recovered by each Debtor in its capacity as debtor-in-possession pursuant to Chapter 5 of the Bankruptcy Code.

"**Bankruptcy Code**" shall have the meaning set forth in Article I of this Plan.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Iowa.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases.

"**Blairsburg Facility**" means the facility located at 2567 190th Street, Blairsburg, IA 50034, as described in more detail in Schedule A-1, attached to the Schedules Filed by Iowa's First, Inc.

"**Broadmoor**" means Broadmoor Financial, L.P., a Kansas limited partnership.

"**Broadmoor Deficiency Claim**" means Broadmoor's Allowed General Unsecured Claim equal, as of the Effective Date, to the amount the Debtors owe to Broadmoor pursuant to the

Broadmoor Loan, including any interest and fees accrued thereunder, less the amount of the Broadmoor Secured Claim.

"**Broadmoor Loan**" means the loan issued from Amstar Group, LLC and the Plan Sponsor to VBF Operations Inc. and Iowa's First, Inc., as borrowers, a portion of which was subsequently assigned from Amstar Group, LLC to Broadmoor, in the outstanding amount as of the Petition Date of $53,803,271.65.

"**Broadmoor Secured Claim**" means the Allowed Secured Claim held by Broadmoor in the amount of $11,025,000 arising from the Broadmoor Loan.

"**Buckeye Facility**" means the facility located in Radcliffe, Iowa, as described in more detail in Schedule A-2, attached to the Schedules filed by Iowa's First, Inc.

"**Business Day**" means any day other than a Saturday, Sunday, or any legal holiday under federal law or the State of Iowa.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, in law, equity, or otherwise.

"**Chapter 11 Case(s)**" or "**Case(s)**" means the substantively consolidated chapter 11 cases commenced by the Debtors and jointly administered under case number 18-01297 in the Bankruptcy Court.

"**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Claims Objection**" means any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim) or Interest.

"**Claims Register**" means the official register of Claims against and Interests in the Debtors.

"**Class**" means a class of Claims or Interests as classified under this Plan.

"**Collateral**" means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"**Confirmation**" means entry of the Confirmation Order by the Bankruptcy Court.

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases on [DATE], which appointment was amended on January 7, 2019.

"**Confirmation Hearing**" means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, including any continuances thereof.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"**Consummation**" means the occurrence of the Effective Date.

"**Creditor**" has the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

"**Debtor Releasees**" means each of the other Debtors, the Estate, the Reorganized Debtors, the Plan Sponsor, and each of the foregoing Entities' respective current and former officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, insurance providers, and other professionals and representatives, and each of their direct and indirect shareholders' and owners' respective officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, and other professionals and representatives, including, without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, Anders Wester and Norman McCowan.  Notwithstanding the immediately preceding sentence, Debtor Releasees does not include Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth A. Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman or any affiliate of the foregoing.

"**Debtors**" shall have the meaning set forth in Article I of this Plan.

"**DIP Credit Agreement**" means that certain Debtor-in-Possession Credit Agreement, dated as of September 21, 2018 by and among the Debtors and the Plan Sponsor, and all exhibits, amendments, and supplements thereto.

"**DIP Facility**" means the debtor-in-possession financing provided to the Debtors during the Chapter 11 Cases pursuant to the DIP Credit Agreement.

"**DIP Facility Claims**" means all Claims held by the Plan Sponsor, or its successor or assignee, arising under or relating to the DIP Facilities, whether pursuant to the DIP Credit Agreement, the Final DIP Order, or otherwise.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or in part, by a Final Order; (b) has been withdrawn by agreement between the Debtors and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent, or unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order; (e) has been

4

reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expunge-
ment, subordination, or estimation results in a reduction in the Filed amount of any Proof of Claim;
or (f) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be
Filed under applicable law or order of the Bankruptcy Court, or which is required to be Filed by
order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly
Filed. In each case a Disallowed Claim is disallowed only to the extent of disallowance, with-
drawal, reclassification, expungement, subordination, or estimation.

"**Disallowed Claim**" means a Claim that is Disallowed.

"**Disclosure Statement**" means the disclosure statement for the Plan, as it may be
amended, supplemented, or modified from time to time, that is prepared and distributed in accord-
ance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code or Bankruptcy Rule 3018.

"**Disputed Claim**" means any Claim as to which a Claims Objection is pending, Filed, or
contemplated by the Debtors or the Reorganized Debtors, as applicable.

"**Distribution**" means any payment of Cash or issuances of ownership interests in any
Reorganized Debtor called for under the Plan.

"**Effective Date**" means the first day after the conditions to effectiveness of the Plan pro-
vided in Section 10.01 hereof have been satisfied.

"**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

"**Estate**" means the substantively consolidated estates of each Debtor created in the Chap-
ter 11 Cases pursuant to section 541 of the Bankruptcy Code and a Final Order.

"**Exculpated Party**" means the Debtors, the Plan Sponsor, Broadmoor, the Committee,
and any of their respective members, partners, officers, directors, employees, advisors, attorneys,
professionals, insurance providers, or agents and advisors of any of the foregoing, including, with-
out limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, and
Anders Wester.

"**Executory Contract**" means a contract to which one or more of the Debtors are party
that is considered an executory contract under the Bankruptcy Code and applicable case law.

"**Federal Judgment Rate**" means the interest rate provided for in 28 U.S.C. § 1961(a).

"**File**" or "**Filed**" means file or filed on the Claims Register or the docket of the Bankruptcy
Court or its authorized designee in the Chapter 11 Cases.

"**Final DIP Order**" means the Final Order approving the DIP Facility.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal,
petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal,
petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or as
to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been

waived in writing, in form and substance, satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

"**General Unsecured Claim**" means any unsecured Claim other than a Priority Tax Claim, Priority Non-Tax Claim, or Administrative Expense Claim.

"**Impaired**" means impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Claim**" means a Claim that is Impaired.

"**Impaired Class**" means a Class containing Claims or Interests that are Impaired.

"**Intercompany Claims**" means any Claim held by one of the Debtors against any other Debtor, including (a) any account reflecting intercompany book entries by a Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor or Debtors, and (c) any Claim derivatively asserted or assertible by or on behalf of a Debtor against any other Debtor or Debtors.

"**Intercompany Interests**" means any Interest held by one of the Debtors in any other Debtor.

"**Interest**" means any equity or ownership interests in and with respect to the Debtors, including any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

"**Lists of Holders of Interests**" means the lists of equity security holders and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Petition Date**" means September 21, 2018.

"**Plan**" means this Chapter 11 plan, either in its present form or as the same may be altered, amended, or modified from time to time, and including the Plan Supplement.

"**Plan Released Parties**" means each of the Debtors, the Plan Sponsor, and any of their respective members, partners, officers, directors, employees, advisors, attorneys, professionals, or agents and advisors of any of the foregoing, including, without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, Anders Wester and Norman McCowan. For clarity and notwithstanding the foregoing sentence, Plan Released Parties do not include Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve

6

Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquacultur, Inc., William Turk, Robert Goodman or any affiliate of the foregoing.

"**Plan Sponsor**" means Alder Aqua, Ltd. or its successor or assignee.

"**Plan Sponsor New Equity Interest**" means 100% of the new equity interests of the Reorganized VBF USA issued to the Plan Sponsor pursuant to Section 8.06(a).

"**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to be Filed on or before 14 days prior to the deadline for the holders of Claims and Interests to vote on the Plan that supplements the Plan.

"**Post-Petition Interest**" means simple interest per annum at the Federal Judgment Rate, based on a 360-day year for the period from the Petition Date to, but excluding, the Effective Date.

"**Priority Non-Tax Claim**" means any Claim entitled to priority under section 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim for Professional Fees.

"**Professional Fees**" shall have the meaning set forth in Section 3.03 of this Plan.

"**Professionals**" means the professionals retained by the Debtors under Bankruptcy Code sections 327 or 1103 and to be compensated pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503(b)(2), (4), or (5).

"**Proof of Claim**" means a proof of claim Filed in connection with any of the Chapter 11 Cases.

"**Reorganized Debtors**" means the Debtors as reorganized as of the Effective Date.

"**Reorganized Debtors' Constituent Documents**" means on or after the Effective Date, the governing document of each Reorganized Debtor, each in form and substance satisfactory to the Debtors and the Plan Sponsor.

"**Reorganized VBF USA**" means VBF USA as reorganized as of the Effective Date.

"**Schedules**" means, collectively, the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs.

"**Schedules of Assets and Liabilities**" means the schedules of assets and liabilities and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Secured Claim**" means a Claim that is secured by a Lien on property in which the Debtors' Estate has an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code,

but only to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"**Secured Tax Claim**" means any Claim of a governmental unit for taxes owed by any of the Debtors that is secured by Lien.

"**Securities Exchange Act**" means the Securities and Exchange Act of 1934, as amended, codified at 15 U.S.C. § 78a *et seq.*

"**Statements of Financial Affairs**" means the statement of finical affairs and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Unimpaired**" means a Claim, Interest, or Class thereof that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Urban Farm**" means the facility located at 401 Des Moines Street, Webster City, IA 50595, as described in more detail in Schedule A-3, attached to the Schedules Filed by Iowa's First, Inc.

"**U.S. Trustee**" means the Office of the United States Trustee for Region XII.

## 2.02 **Rules of Interpretation**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## 2.03 **Computation of Time**

In computing any period of time prescribed or Allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

### 3.01 **Administrative Expense Claims**

Any party who claims to hold an Administrative Expense Claim (other than a Claim for Professional Fees) must File a motion seeking allowance of such Administrative Expense Claim

on or before the date that is 28 days after the Effective Date, regardless of whether or not such party has previously asserted an Administrative Expense Claim in a Proof of Claim. Except to the extent any Entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Claim for Professional Fees) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim by the later of either (i) the Effective Date or as soon thereafter as is reasonably practicable, or (ii) the date that is 14 days after the Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

Notwithstanding the foregoing Section 3.01, upon the Effective Date, the Plan Sponsor's Allowed Administrative Expense Claim, other than the DIP Facility Claim, shall be fully satisfied by the Distribution of the Plan Sponsor New Equity Interest.

### 3.02 **DIP Facility Claim**

On the Effective Date, the DIP Facility Claim shall be deemed to be an Allowed Claim and, at the election of the Plan Sponsor, fully and finally satisfied by the Distribution of the Plan Sponsor New Equity Interest.  If the Plan Sponsor does not so elect, the DIP Facility Claim shall be paid in full in Cash on the Effective Date.

### 3.03 **Professional Fee Claims**

All Professionals seeking payment of Professional Fees or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code ("**Professional Fees**") must File their respective final applications on or before the date that is 45 days after the Effective Date. Except to the extent that the holder of a Professional Fee Claim agrees to different treatment, each holder of an Allowed Professional Fee Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Claim as soon as practicable after such Claim is Allowed by the Bankruptcy Court.

### 3.04 **Post-Effective Date Professional Fees**

From and after the Effective Date, the Reorganized Debtors shall pay in Cash the reasonable fees and expenses incurred by the Reorganized Debtors' respective professionals, if any, without any further notice to or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, following the Effective Date, any requirement that a Professional comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered to the Debtors after such date shall terminate.

### 3.05 **Priority Tax Claims**

Except to the extent a holder of an Allowed Priority Tax Claim agrees to different treatment, the holder of such Claim shall receive, in full and final satisfaction of such Claim, a Distribution equal to the amount of the Allowed Priority Tax Claim as of the Effective Date either (i) in Cash on the Effective Date or (ii) in installment payments over a period of time not to exceed 5 years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

3.06 **Statutory Fees**

On the Effective Date, the Debtors shall make all payments required to be paid to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code. All fees payable pursuant to section 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Reorganized Debtors on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

**ARTICLE IV**
**DESIGNATION OF CLASSES**

4.01 **Classification**

Claims and Interests are classified for all purposes, including voting, Confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| 1 | Priority Non-Tax Claim | Yes | Yes |
| 2 | Broadmoor Secured Claim | Yes | Yes |
| 3(a) | Secured Tax Claims—Hamilton County Treasurer (Urban Farm) | Yes | Yes |
| 3(b) | Secured Tax Claims—Hamilton County Treasurer (Blairsburg Facility) | Yes | Yes |
| 3(c) | Secured Tax Claims—Hardin County Treasurer (Buckeye Facility) | Yes | Yes |
| 4 | Additional Secured Claim—Card Services | Yes | Yes |
| 5 | General Unsecured Claims | Yes | Yes |
| 6 | Intercompany Interests | No | No |

10

| 7 | Interests in VBF USA | Yes | No |

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 5.01 **Class 1: Priority Non-Tax Claims**

(i)  *Treatment*: Unless the holder agrees otherwise, commencing on or as soon as practicable after the Effective Date or the date its Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, 4 quarterly payments totaling a value equal to the amount of such Allowed Priority Non-Tax Claim as of the Effective Date plus Post-Petition Interest where required under applicable law.

(ii)  *Voting*: The Claims in Class 1 are Impaired.  The holders of Allowed Priority Non-Tax Claim are entitled to vote to accept or reject this Plan.

### 5.02 **Class 2: Broadmoor Secured Claim**

(i)  *Treatment*:  The Broadmoor Secured Claim shall be treated as follows:

Restructured Note.  On the Effective Date, the Reorganized Debtors shall deliver to Broadmoor a note in the principal amount of $11,025,000, with interest accruing at the rate of 3% per annum.  The Reorganized Debtors shall make monthly payments of interest only until the first anniversary of the Effective Date.  On the first anniversary of the Effective Date, a principal payment of $6,000,000 shall be due.  Thereafter, the remaining balance shall be amortized in equal quarterly payments for 3 years, with final maturity on the fourth anniversary of the Effective Date.  The Reorganized Debtors shall have the right to pre-pay the note in whole or in part.

Lien.  Broadmoor shall retain its Lien on the Collateral to secure the principal and interest due and payable pursuant to the note described in the preceding paragraph, with such Lien attaching to the Collateral in the same priority as prior to the Petition Date.  Upon payment of the principal and interest under the note described in the preceding paragraph, Broadmoor shall release its Liens.

Participation.  The sum of $5,025,000, representing the portion of the Broadmoor Loan allocated to the Collateral in which the Plan Sponsor, as participant, holds a first security interest, shall be payable to the Plan Sponsor on terms to be agreed upon by the Plan Sponsor and Broadmoor.

Restated Loan Documents.  In the Plan Supplement, the Debtors may submit an amended and restated note and security documents, acceptable to Broadmoor, regarding the Broadmoor Secured Claim.

Broadmoor Deficiency Claim.  The Broadmoor Deficiency Claim shall be a Class 5 General Unsecured Claim.

11

(ii)    *Voting*:  The Claim in Class 2 is Impaired.  Broadmoor, as the holder of the Broadmoor Secured Claim, is entitled to vote to accept or reject the Plan.

### 5.03 **Class 3(a), (b) and (c):  Secured Tax Claims**

### 5.03(a) **Class 3(a): Secured Tax Claim—Hamilton County Treasurer (Urban Farm)**

(i)    *Treatment*: Unless the Hamilton County Treasurer agrees otherwise, as relates to its Claim secured by an interest in the Urban Farm, commencing on or as soon as practicable after the Effective Date or the date the aforementioned Secured Tax Claim becomes an Allowed Secured Tax Claim, the Hamilton County Treasurer, in full and final satisfaction of such Claim, shall (i) retain its Lien on the Urban Farm in an amount equal to the value of such Claim, with the Lien attaching to the Urban Farm in the same relative priority as existed immediately prior to the Petition Date, and (ii) 4 quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)    *Voting*: The Claim in Class 3(a) is Impaired. Hamilton County Treasurer is entitled to vote to accept or reject the Plan.

### 5.03(b) **Class 3(b): Secured Tax Claim—Hamilton County Treasurer (Blairsburg Facility)**

(i)    *Treatment*: Unless Hamilton County Treasurer agrees otherwise, as relates to its Claim secured by an interest in the Blairsburg Facility, commencing on or as soon as practicable after the Effective Date or the date the aforementioned Secured Tax Claim becomes an Allowed Secured Tax Claim, Hamilton County Treasurer, in full and final satisfaction of such Claim, shall (i) retain its Lien on the Blairsburg Facility in an amount equal to the value of such Claim, with the Lien attaching to the Blairsburg Facility in the same relative priority as existed immediately prior to the Petition Date, and (ii) 4 quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)    *Voting*: The Claim in Class 3(b) is Impaired. Hamilton County Treasurer is entitled to vote to accept or reject the Plan.

### 5.03(c) **Class 3(c): Secured Tax Claim—Hardin County Treasurer (Buckeye Facility)**

(i)    *Treatment*: Unless Hardin County Treasurer agrees otherwise, commencing on or as soon as practicable after the Effective Date or the date its Additional Secured Claim becomes an Allowed Additional Secured Claim, Hardin County Treasurer, in full and final satisfaction of such Claim, shall (i) retain its Lien on the Collateral in an amount equal to the value of such Claim, with the Lien attaching to the Collateral in the same relative priority as existed immediately prior to the Petition Date, and (ii) receive 4 quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii) *Voting*: The Claim in Class 3(c) is Impaired. Hardin County Treasurer is entitled to vote to accept or reject the Plan.

5.04 **Class 4: Additional Secured Claim—Card Services**

(i) *Treatment*: Unless Card Services agrees otherwise, on the Effective Date, in full and final satisfaction of its Additional Secured Claim, it will be entitled to offset the amount of its the Allowed Additional Secured Claim as of the Effective Date, plus Post-Petition Interest where required under applicable law, against the balance of the Certificate of Deposit at UMB Kansas City, Missouri, Cert. No. 21853261020. The balance of the Certificate of Deposit not offset, shall be returned to the Debtor without penalty for early surrender.

(ii) *Voting*: The Claim in Class 4(b) is Impaired. Card services is entitled to vote to accept or reject the Plan.

5.05 **Class 5: General Unsecured Claims**

(i) *Treatment*: Allowed Class 5 Claims shall be paid pro rata in accordance with this Plan and the Creditor Trust Agreement. In accordance with the Creditor Trust Agreement, the Creditor Trust assets shall be deposited in the Creditor Trust on the Effective Date. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds from time to time on dates determined by the Creditor Trustee within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to (i) make a pro rata distribution on account of Disputed Class 5 Claims that become Allowed Class 5 Claims; and (ii) pay the Creditor Trustee's Expenses in full.

Provided that no challenge has been initiated to the Broadmoor Secured Claim, or the liens securing it, and no action has been brought against Broadmoor as of the Effective Date, and further provided that Class 5 votes to accept the Plan and the Effective Date occur on or before May 5, 2019, Broadmoor shall be deemed to waive Distribution on account of the Broadmoor Deficiency Claim. Broadmoor retains its right to vote the Broadmoor Deficiency Claim as a Class 5 General Unsecured Claim and all other rights.

(ii) *Voting*: The Claims in Class 5 are Impaired. The holders of Allowed General Unsecured Claims against any of the Debtors, including the Broadmoor Deficiency Claim, are entitled to vote to accept or reject this Plan.

5.06 **Class 6: Intercompany Interests**

(i) *Treatment*: Intercompany Interests shall be cancelled or reinstated, as determined by the Debtors with the consent of the Plan Sponsor.

(ii) *Voting*: Interests in Class 6 are Unimpaired. The holders of Intercompany Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

5.07 **Class 7: Interests in VBF USA**

(i)    *Treatment*: All Interests in VBF USA shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests.

(ii)    *Voting*: Interests in Class 7 are Impaired. The holders of these Interests are conclusively deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

5.08 **Cramdown**

If any Class fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that is Impaired and votes not to accept the Plan.

## ARTICLE VI
## PROVISIONS REGARDING RESOLUTION OF CLAIMS
## AND DISTRIBUTIONS UNDER THE PLAN

6.01 **Method of Distributions Under the Plan**

a.    In General

Subject to Bankruptcy Rule 9010, all Distributions under the Plan shall be made to the holders of each Allowed Claim at the address of such holder as listed on the Schedules or Proof of Claim, as applicable.

b.    Distributions of Cash

Any Distributions made after the Effective Date under the Plan shall be made by the Reorganized Debtors or the Creditor Trustee (as to Class 5 Claims). Such Distributions shall be made by check unless a different method of payment is agreed upon between the individual Creditors and the Reorganized Debtors or the Creditor Trustee (as applicable). All checks for Distribution shall be negotiated within 120 days of the date of such check, after which such check shall be void. The holder of an Allowed Claim or Interest that does not negotiate payment within the 120-day period shall have 1 year after the check becomes void to assert payment on account of its Claim pursuant to this Plan, after which time its Claim shall be reduced to zero. At such time, the Reorganized Debtors or the Creditor Trustee (as applicable), shall no longer be obligated to reserve for such Claim or make any further Distributions in respect of such Claim.

Notwithstanding any other provision of this Plan, the Debtors, Reorganized Debtors, or the Creditor Trustee shall not be required to, but may in their discretion, make Distributions to any holder of a Claim in an amount less than $25. In addition, the Debtors, Reorganized Debtors, or the Creditor Trustee shall not be required to, but may in their discretion, make any payment on account of any Claim if the costs of making such payment exceeds the amount of such payment.

14

     c.     <u>Timing of Distributions</u>

Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

     d.     <u>Tax Withholding</u>

Distributions to holders of Allowed Claims and Interests shall be net of amounts required to be withheld pursuant to applicable state and federal wage or backup withholding requirements. In order to receive a Distribution, a holder of an Allowed Claim must provide the Debtors or Reorganized Debtors or the Creditor Trustee, as applicable, with a completed Department of Treasury Internal Revenue Service Form W-9.

### 6.02 **Claims Objections**

     a.     After the Effective Date, Claims Objections may be made, and Claims Objections made previous thereto shall be pursued, only by the Reorganized Debtors (or, as to Class 5 Claims only, by the Unsecured Creditor Trustee). The deadline for the Reorganized Debtors to File Claims Objections shall be 180 days after the Effective Date, subject to extension by motion to the Bankruptcy Court. After the Effective Date, the Reorganized Debtors shall, without further order of the Bankruptcy Court, have the right to retain and compensate counsel or other professionals to assist with Claims Objections or any other duties of the Reorganized Debtors under the Plan.

     b.     After the Effective Date, the Reorganized Debtors (or Unsecured Creditor Trustee as applicable) may settle any Disputed Claims where the proposed Allowed Claim is to be less than $25,000 without notice and a hearing and without an order of the Bankruptcy Court. All other settlements shall be subject to notice and a hearing pursuant to section 102(1) of the Bankruptcy Code and Bankruptcy Rule 9019.

### 6.03 **Disputed Claims**

     (a)     Claims other than Class 5 Claims.

If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim. If any Distribution is made while there is an extant Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Disputed Claim is Allowed or Disallowed. If the Claim is Allowed, the holder of the Allowed Claim shall receive its withheld Distribution. If the Claim is Disallowed, then any Distribution that was withheld with respect to such Claim shall be released to the Reorganized Debtors.

     (b)     Class 5 Claims

If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim.  In the event a Distribution is made while there is a Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Claim is Allowed or Disallowed.  If the Claim is Allowed, the Holder of the Allowed Claim will receive its withheld Distribution

6.04 **Claims Estimation**

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Claims Objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any Claims Objection, including during the pendency of any appeal relating to any such Claims Objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Allowed Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism pursuant to this Plan or approved by the Bankruptcy Court.

6.05 **Claims Allowance**

Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors shall have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date. All Claims of any Entity, subject to section 502(d) of the Bankruptcy Code, shall be deemed Disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes the Debtors.

### ARTICLE VII
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01 **Assumption or Rejection of Executory Contracts and Unexpired Leases**

Any Executory Contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that (i) the Debtors have not assumed, assigned, or rejected with the approval of the Bankruptcy Court, (ii) is not identified as an Assumed Contract, and (iii) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtors, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

7.02 **Rejection Damages Claims**

With respect to Claims arising from the rejection of Executory Contracts or unexpired leases pursuant to Section 7.01 of this Plan, the bar date to File Proofs of Claim in these Cases shall be reopened for a period of 28 days after the Effective Date, and all such Proofs of Claim must be Filed with the Bankruptcy Court during that time. Any such Claim that is Allowed by the Bankruptcy Court shall be treated as a Class 5 General Unsecured Claim. Any Claim arising from the rejection of an Executory Contract or unexpired lease pursuant to Section 7.01 of this Plan for which a Proof of Claim is not timely Filed within that time period shall be a Disallowed Claim and shall further forever be barred from assertion against the Estate, the Debtors, the Reorganized

Debtors, their successors and assigns, or their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

### 7.03 **Assumed Contracts; Cure of Defaults**

Any monetary amounts by which each Executory Contract or unexpired lease to be assumed is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Assumed Contract may otherwise agree. The Plan Supplement shall include the list of Assumed Contracts to be assumed by the Reorganized Debtors pursuant to the Plan. The Plan Supplement shall identify the Executory Contracts and unexpired contracts sought to be assumed, the counterparties thereto, and the proposed cure payments as of the projected Effective Date, and upon filing shall be served upon any affected counterparty in accordance with the Bankruptcy Rules. The Debtors reserve the right to remove Executory Contracts or unexpired leases from such list or to modify the cure amounts executed in connection therewith at any time prior to the Confirmation Hearing.

Any objection to (a) the amount of any cure payments for the Assumed Contracts, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or lease to be assumed, or (c) any other matter pertaining to assumption, shall be Filed and served on the Debtors on or before the deadline established by the Bankruptcy Court for filing objections to the Plan. If an objection is Filed, the Debtors shall attempt to resolve such objection prior to the Confirmation Hearing. If the parties are unable to consensually resolve such objection prior to the Confirmation Hearing, such objection and any cure amounts to be paid shall be determined at the Confirmation Hearing or as otherwise agreed to by the parties or ordered by the Bankruptcy Court.

If a dispute remains unresolved as of the Effective Date regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such dispute, the Executory Contract at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. However, any such "deemed" assumption shall not affect any counterparty's rights or remedies under section 365 of the Bankruptcy Code or otherwise, which shall be preserved pending final resolution notwithstanding the "deemed" assumption.

### ARTICLE VIII
### CREDITOR TRUST

### 8.01 **Creditor Trust Declaration**

The Creditor Trust will be formed as of the Effective Date and shall be governed by the Creditor Trust Declaration, substantially in the form filed herewith as **Exhibit 2**.

8.02 **Creditor Trustee**

[Mark Iammarto of Development Specialists, Inc.] shall be appointed as Creditor Trustee.

8.03 **Vesting of Assets**

On the Effective Date, the Creditor Trustee assets shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. The Creditor Trust Assets include:

a.    Cash in the amount of $620,000;

b.    all Avoidance Claims, except any claims arising against any of the following persons or entities:

(i)    Debtor Released Parties;

(ii)    Plan Released Parties;

(iii)    any professional retained by the Debtors pursuant to section 327 of the Bankruptcy Code or as an ordinary course professional;

(iv)    the persons or entities expressly identified in section 9.10 of the Plan; or

(v)    Pranger Industries, Inc., and such others to be agreed upon with the Creditor Trustee.

c.    all Causes of Action held by the Debtors' estates against Rick Sheriff, or any of his affiliates, provided, however, that the Reorganized Debtors shall be entitled to 33 1/3% of Cash recoveries received by the Creditor Trust on account of such Causes of Action (net of attorneys' fees, expert fees and other out-of-pocket costs) (with the Causes of Action described in (b) and (c) collectively defined as the "*Assigned Causes of Action*"). For the avoidance of doubt, all Creditor Trust Assets shall be held by the Creditor Trust solely in trust for the Holders of Allowed Class 5 Claims and shall not be deemed property of the Debtors (except the Reorganized Debtors' right to participate in the recoveries of the Rick Sheriff Causes of Action). The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust, subject to oversight from the Creditor Trustee, as applicable.

8.04 **Creditor Trust Asset Administration**

The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date. As more fully set forth in the Creditor Trust Agreement, the Creditor Trustee shall be responsible for, *inter alia*, liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Assigned Causes of Action, making distributions of the Net Proceeds to the Beneficiaries of the Creditor Trust, maintaining and administering reserves for Disputed Claims and Claims of Creditors that may be the subject of Avoidance Claims,

18

paying Trustee's Expenses, preparing and filing post-Effective Date operating reports, and all other activities typically related to trust administration.

### 8.05 **Case Administration**

From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Chapter 11 Cases.  In addition to the foregoing, for all matters arising in, arising under or related to the Chapter 11 Cases, the Creditor Trustee shall: (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, including, but not limited to, adversary proceedings; (ii) be entitled to notice and opportunity for hearing; (iii) have exclusive standing (including derivative standing on behalf of the Debtors) to commence and prosecute the Assigned Causes of Action; and (iv) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases.

### 8.06 **Creditor Trustee's Professionals**

Upon the acceptance by the Creditor Trustee or his or her appointment in accordance with this Plan and the Creditor Trust Agreement, the Creditor Trustee may, without the need for Bankruptcy Court approval, retain such law firms, accounting firms, experts, advisors, consultants, investigators or other Professionals as it may deem necessary, in accordance with the Creditor Trust Agreement, to aid in the performance of his or her responsibilities pursuant to the terms of the Plan, including, without limitation, the liquidation and distribution of the Creditor Trust Assets.  The Professionals retained by the Creditor trustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in this Case, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity.

### 8.07 **Quarterly Reports**

The Creditor Trustee shall prepare and file with the Bankruptcy Court a report within thirty (30) days after the conclusion of every calendar quarter setting forth: (i) all distributions in Class 5 Creditors during the calendar year; (ii) a summary of the Creditor Trust deposits and disbursements during the calendar quarter; and (iii) a summary of the Creditor Trust Assets.  As used in this section, "calendar quarter" shall mean a three-month period of time, and the first calendar quarter shall commence on the first day of the first quarter immediately following the occurrence of the Effective Date. To the extent the Effective Date does not fall on the first day of a calendar quarter, the first quarterly report shall include the period from (x) the Effective Date through the conclusion of the calendar quarter in which it falls; plus in which it falls; plus (y) the succeeding calendar quarter.

8.08 **Representative of Estate**

For purposes of the Assigned Causes of Action, the Creditor Trustee shall be deemed the representative of the estate pursuant to section 1123(b)(3)(B) and may not further transfer any of the Assigned Causes of Action.

8.09 **Cooperation Regarding Assigned Causes of Action**

With respect to the Assigned Causes of Action, the Reorganized Debtors shall, upon reasonable terms and reasonable notice, (i) respond to the Unsecured Creditor Trustee's reasonable requests for non-privileged documents related to claims or defenses asserted therein; and (ii) make representatives of the Reorganized Debtors reasonably available for interview and deposition; provided, however, that the Reorganized Debtors shall not be required to incur out-of-pocket costs or maintain personnel on staff in order to satisfy obligations under this section. Following the Effective Date, the Unsecured Creditor Trustee shall have sole authority and discretion to investigate, commence, prosecute and resolve the Assigned Causes of Action. It is further understood that this provision does not impose obligations upon the Plan Sponsor.

8.10 **Compensation of Creditor Trustee and Professionals.**

The Creditor Trustee and any professionals retained by the Creditor Trustee are entitled to reasonable compensation at their standard rates. When seeking payment, the Creditor Trustee or the relevant professional shall provide a copy of the statement to reorganized Debtors. If no written objection to the payment request is received within 10 days, then the sum requested shall be promptly paid. Any objection shall specify the amount objected to and reasons. If an objection is made, the undisputed amount shall be promptly paid. If the parties are unable to resolve any remaining disputes, the Bankruptcy Court shall resolve the dispute upon notice and a hearing.

8.11 **Exculpation**

Neither the Creditor Trustee nor its designees, retained professionals or any duly designated agent or representative shall be liable for anything other than such Person's own acts as shall constitute willful misconduct or gross negligence in the performance (or nonperformance) of its duties, or acts contrary to the express terms of this Plan. The Creditor Trustee may, in connection with the performance of its functions, consult with counsel, accountants and its agents, and may reasonably rely upon advice or opinions received in the course of such consultation. If the Creditor Trustee determines not to consult with counsel, accountants or its agents, such determination shall not in itself be deemed to impose any liability on the Creditor Trustee, or its members and/or its designees. The Creditor Trustee shall indemnify the Creditor Trustee for any and all damages, fees and expenses incurred in connection with these Cases or this Plan; except that the Creditor Trustee shall not be indemnified from damages, fees or expenses arising from its gross negligence or willful misconduct.

## ARTICLE IX
## OTHER MEANS FOR IMPLEMENTATION AND
## EFFECT OF CONFIRMATION OF PLAN

### 9.01 Term of Bankruptcy Injunction or Stays

Except as otherwise expressly provided in the Plan, all injunctions or stays provided for in these Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the date of entry of the Confirmation Order, shall remain in full force and effect until the closing of these Chapter 11 Cases.

### 9.02 Consummation of the Plan

This Plan implements a comprehensive restructuring of the Debtors through the capital infusion from the Plan Sponsor as provided in Section 8.06. Conditions to Consummation of the Plan are:

a.   Entry of an order confirming this Plan in form and substance acceptable to Plan Sponsor; and

b.   The order confirming the Plan is not subject to a stay and has not been reversed or modified on appeal.

### 9.03 Sources of Cash for Plan Distributions

Except as otherwise provided for in this Plan or the Confirmation Order, all Cash required for Distributions shall come from the equity contribution as provided in Section 8.06.

### 9.04 Compromise of Controversies

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, releases, and other benefits provided under this Plan, upon the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and settlement of Claims and Interests and controversies resolved pursuant to this Plan. Distributions made to holders of Allowed Claims in any Class are intended to be final.

### 9.05 Effect of Plan on Undersecured Creditors

Wastewater Technologies claims a mechanic's lien on the Urban Farms located in Webster City, Hamilton County, Iowa posted on April 23, 2018 as MNLR#015380-0. Midwest Manure Management, Inc. filed a mechanic's lien on the Buckeye Facility, located in Rural Radcliffe, Hardin County, Iowa posted on March 22, 2018 as MNLR#015124-0. Broadmoor's claim is secured by a first mortgage lien on all the bankruptcy estate's real estate, specifically including the real estate owned by Iowa's First, Inc. and scheduled on schedule A-3 and A-2 as the Urban Farms and the Buckeye Facility respectively. Copies of Schedules A-2 and A-3 are attached to this Plan as Exhibit "1" for clarity. The undisputed debt owed to Broadmoor is in excess of $53,000,000.00. Therefore, pursuant to 11 U.S.C. § 506(a)(1) the mechanic's liens of Wastewater Technologies and Midwest Manure Management, Inc. shall be void upon the confirmation of the Plan.

21

9.06 **Effect of Plan on Debtors**

a.      Interests in Reorganized Debtors and Continued Existence

Except as otherwise provided in this Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entities with all of the powers available to such legal entity under applicable law and pursuant to the Reorganized Debtors' Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law, and such Reorganized Debtor's Constituent Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter; or (v) the reincorporation of a Reorganized Debtor under the law of a jurisdiction other than the law under which the Debtor currently is incorporated.

On the Effective Date, the ownership interests in VBF USA shall be cancelled. After giving effect to such cancellation, the Plan Sponsor shall be issued 100% of the ownership interests in Reorganized VBF USA. The ownership interests in the foregoing Reorganized Debtors shall have the rights, privileges, limitations, and restrictions set forth in the Reorganized Debtors' Constituent Documents of each respective Reorganized Debtor, as set forth in the Plan Supplement.

b.      Governance and Corporate Action

On and after the Effective Date, the Reorganized Debtors shall be managed by and under the direction of their respective boards of directors, as such boards of directors may be constituted from time to time under the Reorganized Debtors' Constituent Documents and applicable non-bankruptcy law. The Plan Sponsor shall have the right to appoint the board of directors of the Reorganized Debtors. The identities and affiliations of the initial officers and directors of the Reorganized Debtors shall be set forth in the Plan Supplement.

On and after the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and directed in all respects, including: (i) selection of the directors and officers of the Reorganized Debtors; (ii) the issuance of the Plan Sponsor New Equity Interests; and (iii) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date) and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the members, directors, or officers of the Debtors or the Reorganized Debtors or otherwise. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized

Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Reorganized Debtors, including the Plan Sponsor New Equity Interests and any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this Section 8.06 shall be effective notwithstanding any requirements under non-bankruptcy law.

    c.    <u>Vesting of Assets</u>

Except as otherwise provided in this Plan, on and after the Effective Date, all assets of the Estate, including all claims, rights, and Causes of Action, and any property acquired by the Debtors under or in connection with this Plan, shall vest in each respective Reorganized Debtor (or the Creditor Trust as it relates to the Creditor Trust Assets) free and clear of all Claims, Liens, charges, other encumbrances, and interests. Subject to the terms of this Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or, subject to Section 6.02(b), settle any Claims, including any Administrative Expense Claims, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

    9.07 **<u>Issuance of the Plan Sponsor New Equity Interest</u>**

    a.    The Plan is to be funded through an equity contribution by the Plan Sponsor.  As set forth in the Disclosure Statement, the equity contribution is intended to be an amount up to $29,930,000 as follows:

| | |
|---|---|
| i. $2,000,000 | This amount shall be used to pay for Chapter 11 Case costs and shall be advanced during the Chapter 11 Cases under the DIP Facility.  This amount is based on the 13-week cash flow projections, and is intended to cover, among other things, operations and advisor costs during that time. |
| ii. $350,000 | This amount shall be used to fund Distributions to holders of Allowed General Unsecured Claims. The amount is subject to adjustment. |
| iii. $6,180,000 | This amount shall be used to pay for interest and principal payments to Broadmoor.  The interest is calculated for a 12-month period. |
| iv. $21,400,000 | This amount shall be used to pay for capital investments for the Debtors' retrofit and additional working capital. |

    b.    In exchange for the Plan Sponsor's investment of equity necessary to make the payments required on the Effective Date of the Plan, the Plan Sponsor shall receive the Plan Sponsor New Equity Interest. The Plan Sponsor New Equity Interest shall be authorized under the Reorganized Debtors' Constituent Documents and issued to the Plan Sponsor on the Effective Date.

The Plan Sponsor New Equity Interest issuable in accordance with this Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of the Plan Sponsor New Equity Interest is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Interest.

The Reorganized Debtors shall not be reporting companies under the Securities Exchange Act, and the Reorganized Debtors shall not be required to, and shall not, File reports with the SEC or any other governmental entity after the Effective Date. To prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the Reorganized Debtors' Constituent Documents may impose certain trading restrictions, and the Plan Sponsor New Equity Interest shall be subject to certain transfer and other restrictions pursuant to the Reorganized Debtors' Constituent Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.

9.08 **Plan Transactions**

On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors (as applicable), are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the terms of this Plan, including, without limitation: (i) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (iii) rejection or assumption, as applicable, of Executory Contracts or unexpired lease; (iv) the filing or execution of appropriate certificates or articles of incorporation or organization, reincorporation, merger, consolidation, conversion, or dissolution, and bylaws; (v) execution of the Creditor Trust Agreement and any other documents reasonably necessary to effectuate the transfer of the Creditor Trust Assets to the Creditor Trust; and (vi) all other actions that the Debtors or Reorganized Debtors determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

9.09 **Cancellation of Unexercised and Unvested Interests**

On the Effective Date, any contingent or unexercised option, warrant, or right, contractual or otherwise, to acquire or be awarded any Interest shall be cancelled without the exchange of any similar interest in any Debtor or Reorganized Debtor, or other form of consideration. Any Proof of Claim Filed on account of Interests cancelled by this Section 8.09 shall be Disallowed and the Claims Register shall be adjusted to reflect such disallowance.

9.10 **Preservation of Causes of Action**

(a) Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a release, waiver, or relinquishment of any Causes of Action. Avoidance Claims shall be preserved for the benefit of the Unsecured Creditors Trust, to the extent that they constitute Assigned Causes of Action. All other Avoidance

Claims against a person or entity not released under the terms of the Plan shall be preserved and may be asserted by the Reorganized Debtors as representative of the estates as provided in section 1123(b)(3)(B). The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Causes of Action that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, including all causes of action set forth in their schedules filed as Docs. 47 through 52 as well as the amendments to those schedules filed as Docs. 299 & 300, another amendment to be filed after the date hereof and all the Reorganized Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Assigned Causes of Action may be asserted on behalf of the Unsecured Creditor Trust.

(b) Without limiting the foregoing, all Avoidance Claims and Causes of Action against the following persons or entities are preserved, not assigned to the Creditor Trust, and may be asserted by the Reorganized Debtors: Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth A. Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman or any affiliate of any of the foregoing. Avoidance Claims and Causes of Action preserved include Causes of Action asserted (or which could be asserted) by VBF USA in the case captioned *VeroBlue Farms USA, Inc. v. Wulf, et al*, Case No. 3:18:03047 (N.D. Iowa).

### 9.11 **Powers and Duties of Reorganized Debtors**

In addition to any other powers described in the Plan, the powers and duties of the Reorganized Debtors consist of the following:

a.  To take control of, preserve, and operate property of the Estate, subject to the terms of the Plan;

b.  To investigate and prosecute, settle or abandon all Causes of Action belonging to or assertible by the Estate;

c.  To review, object to, seek equitable subordination of, or seek any other remedy with respect to Claims Filed against the Debtors;

d.  To abandon, discontinue, dismiss, amend, settle, compromise, negotiate, or otherwise resolve all disputes, including all Causes of Action and Claims Objections Filed by the Debtors;

e.  To make Distributions on account of all Allowed Claims and Interests consistent with the terms of this Plan;

f.  To retain Entities and professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

g.  To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

h.  To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including Professional Fees incurred after the Effective Date;

i.  To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

j.  To effectuate any of the provisions in this Plan;

k.  To ask the Bankruptcy Court to enter the final decree; and

l.  To execute all documents appropriate to convey assets of the Estate consistent with the terms of this Plan.

## 9.12 **Default Remedies**

If the Reorganized Debtors fail to comply with any of their obligations under the Plan, Creditors, or Interest holders, as applicable, shall move for relief in the Bankruptcy Court to enforce the terms of the Plan; provided, however, the creditors holding Class 2, 3 or 4 Allowed Secured Claims may enforce their rights in the event of default under applicable law without prior relief in the Bankruptcy Court.

## 9.13 **Discharge**

Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, of Claims, Interests, and Causes of Action of any nature whatsoever by any Entity, including any interest accrued on any Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors, the Estate, or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of any Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan, effective as of the Effective Date. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, the Confirmation Order shall be a judicial determination of the complete and full discharge of all Claims and Interests by any Entity, subject to the Effective Date occurring. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all property of the Estate shall vest in the Reorganized Debtors, free and clear of all Claims and Interests of any Entity and with the full and complete discharge of any and all Claims, Interests, or Causes of Action of any Entity.

9.14 **Debtor Releases**

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CON-
TRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHOR-
IZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE
ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR RELEASEES ARE
DEEMED RELEASED AND DISCHARGED BY EACH OF THE DEBTORS, EACH OF
THE REORGANIZED DEBTORS, THE ESTATE, AND ANY ENTITY SEEKING TO EX-
ERCISE THE RIGHTS OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE
ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS,
DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SET-
OFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT,
CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOID-
ANCE CLAIMS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT
COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY ON BE-
HALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE,
WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MA-
TURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN,
EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND
ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE
BEEN ASSERTED ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS,
OR THE ESTATE (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BE-
HALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER EN-
TITY, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING
FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS,
OR THE ESTATE, THE CONDUCT OF THE DEBTORS' BUSINESSES, THE IN-COURT
OR OUT-OF-COURT EFFORTS TO RESTRUCTURE OR LIQUIDATE THE DEBTORS,
THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGO-
TIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN (INCLUDING
THE PLAN SUPPLEMENT) OR ANY CONTRACT, INSTRUMENT, RELEASE, OR
OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNEC-
TION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, OR THE PLAN
(INCLUDING THE PLAN SUPPLEMENT), THE FILING AND PROSECUTION OF THE
CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CON-
SUMMATION, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS
GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS
PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE
DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, ON THE ONE HAND,
AND ANY DEBTOR RELEASEE, ON THE OTHER HAND, PREPETITION CON-
TRACTS AND AGREEMENTS WITH ANY DEBTOR, OR ANY OTHER ACT OR OMIS-
SION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING
PLACE BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THE
FOREGOING PROVISIONS OF THE DEBTOR RELEASES SHALL NOT OPERATE TO
WAIVE OR RELEASE (1) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS
NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER
OR ANY OTHER COURT OF COMPETENT JURISDICTION; (2) ANY CAUSES OF AC-
TION EXPRESSLY SET FORTH IN AND PRESERVED BY THIS PLAN OR THE PLAN

SUPPLEMENT; OR (3) THE RIGHT OF THE DEBTORS OR REORGANIZED DEBT-
ORS TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RE-
LEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN
CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR AS-
SUMED PURSUANT TO A FINAL ORDER.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANK-
RUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE
RELEASES SET FORTH IN THIS SECTION 8.14, WHICH INCLUDES BY REFERENCE
EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN,
AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING
THAT SUCH RELEASES ARE: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE
CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES; (2) A GOOD FAITH
SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THIS SEC-
TION 8.14; (3) IN THE BEST INTERESTS OF THE DEBTORS AND THE ESTATE; (4)
FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NO-
TICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO ANY ENTITY AS-
SERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THIS SECTION 8.14.

9.15 <u>Releases by Holders of Claims and Interests</u>

UPON THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERA-
TION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE
HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS THAT RE-
CEIVES A PAYMENT OR DISTRIBUTION UNDER THE PLAN, AND EACH OF SUCH
HOLDERS' PREDECESSORS, SUCCESSORS, ASSIGNS, AND EACH OF THEIR PRE-
SENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, AND
AGENTS (ACTING IN SUCH CAPACITY) SHALL BE DEEMED TO HAVE WAIVED,
RELEASED VOIDED, AND DISCHARGED THE PLAN RELEASED PARTIES FROM
ANY AND ALL CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS,
SUITS, JUDGMENTS, OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE
THE PLAN RELEASED PARTIES' OBLIGATIONS UNDER THIS PLAN) WHETHER
LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UN-
MATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXIST-
ING, OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ARE
BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION,
EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFEC-
TIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES,
THE DISCLOSURE STATEMENT, (INCLUDING, WITHOUT LIMITATION, THE SO-
LICITATION OF VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY
THE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, IN THEIR
INDIVIDUAL CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVA-
TIVELY) OF THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTORS, EACH
OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS, AND EACH OF THEIR PRE-
SENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, AND
AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NO-
TICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER

**APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, OR AUTHORIZATION OR APPROVAL OF ANY ENTITY. NOTWITHSTANDING ANYTHING IN THIS SECTION 8.15 THAT COULD BE CONSTRUED TO THE CONTRARY, BROADMOOR RETAINS ALL CLAIMS AND RIGHTS AGAINST ALDER AQUA, LTD AND ALDER AQUA, LTD RETAINS ALL CLAIMS AND RIGHTS AGAINST BROADMOOR PURSUANT TO THE PARTIES' PARTICIPATION AGREEMENT.**

9.16 **Exculpation**

**None of the Exculpated Parties shall have or incur any liability to any Entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, solicitation of votes, Confirmation, or approval of the Plan or any compromises or settlements contained therein, the administration of the Plan or Distributions under the Plan, the Disclosure Statement, and any ancillary documents related thereto or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, the foregoing provisions of this Section 8.16 shall not affect the liability of any Exculpated Party that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct, and in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.**

9.17 **Injunction on Claims**

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any other order of the Bankruptcy Court that may be applicable, all holders of Claims or other debt or liability that is treated under the Plan or Interest or other right of interest that is terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (1) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan against the Debtors, the Estate, or the Reorganized Debtors or any properties or interest in properties of the Debtors or the Reorganized Debtors; (2) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Estate, or the Reorganized Debtors or any properties or interest in properties of the Debtors or the Reorganized Debtors; (3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Estate, or the Reorganized Debtors or any properties or interest in properties of the Debtors or Reorganized Debtors; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Estate, or the Reorganized Debtors, or any properties or interest in properties of the Debtors or the Reorganized Debtors; (5) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan; and (6) taking any actions to interfere with the implementation or Consummation of the Plan, with respect to any such Claim or other debt or liability that is discharged or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan.

## ARTICLE X
## <u>SUBSTANTIVE CONSOLIDATION OF THE DEBTORS</u>

For purposes of voting on, Confirmation of, and Distributions to be made to holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to Confirmation of this Plan, that the Bankruptcy Court enter an order providing for the consolidation of the estates of the Debtors into a single estate for purposes of this Plan, the Confirmation hereof, and Distributions hereunder.

Pursuant to the Confirmation Order (1) all assets and liabilities of the consolidated Debtors shall be deemed to be merged solely for purposes of Distributions to be made hereunder, (2) the obligations of each Debtor shall be deemed to be the obligation of the consolidated Debtors solely for purposes of Distributions hereunder, (3) any Claims Filed or to be Filed in connection with any such obligations shall be deemed Claims against the consolidated Debtors, (4) each Claim Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the assets and liabilities of the Debtors, (5) all transfers, disbursements, and Distributions made by any Debtor hereunder shall be deemed to be made by the consolidated Debtors, and (6) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Intercompany Interests shall be treated as provided in Class 6 of this Plan.

Notwithstanding the foregoing, such limited consolidation shall not affect (1) the legal and corporate structure of the Reorganized Debtors, (2) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts or unexpired leases that have been or shall be assumed pursuant to this Plan, (3) distributions from any insurance policies or proceeds of such policies, (4) the revesting of assets in the separate Reorganized Debtors pursuant to Article VIII of this Plan, or (5) guarantees that are required to be maintained post-Effective Date (a) in connection with Executory Contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or shall hereunder be, assumed or (b) pursuant to the express terms of this Plan. The consolidation proposed herein shall not affect each Debtor's obligation to File the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6), which obligation shall continue until a Final Order is entered closing, dismissing, or converting each such Debtor's Chapter 11 Case.

## ARTICLE XI
## <u>EFFECTIVENESS OF THE PLAN</u>

### 11.01 <u>Conditions Precedent to Effectiveness</u>

The Plan shall not become effective unless and until the following have been satisfied, or waived in accordance with Section 11.02 below:

a.      A Final Order directing the substantive consolidation of the Debtors' estates for purposes of Distributions shall have been entered and remain in full force and effect.

b.      The Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Plan Sponsor, shall have been entered by the Bankruptcy Court;

c.      There is no stay or injunction in effect with respect to the Confirmation Order; and

d.      14 days shall have passed since the Confirmation Order has been entered by the Bankruptcy Court.

### 11.02 **Waiver of Conditions Precedent**

Only the Debtors, with the approval of the Plan Sponsor, may waive the conditions listed in Section 11.01 above, and such waiver may be without notice to parties in interest or the Bankruptcy Court and without a hearing.

### 11.03 **Effect of Non-Occurrence of Effective Date**

If the conditions to the occurrence of the Effective Date have not been timely satisfied or waived pursuant to Section 10.02, and upon notification Filed by the Debtors with the Bankruptcy Court, the Confirmation Order shall be vacated and the Debtors and all parties in interest shall be restored to the *status quo ante*. If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; (2) prejudice in any manner the rights of the Debtors or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect.

## ARTICLE XII
## RETENTION OF JURISDICTION

If permitted under applicable law, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      To determine pending applications for the assumption or rejection of Executory Contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

b.      To determine any and all adversary proceedings, applications, and contested matters;

c.      To determine any Claims Objections and Administrative Expense Claims;

d.      To approve settlements between the Reorganized Debtors and the holder of a Disputed Claim, if Bankruptcy Court approval is necessary under the terms of the Plan;

e.     To issue such orders in aid of execution and Consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

f.     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

g.     To determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

h.     To determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

i.     To determine disputes arising in connection with the recovery of all assets of the Debtors and property of the Estate, wherever located;

j.     To determine matters concerning taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

k.     To determine any other matter not inconsistent with the Bankruptcy Code; and

l.     To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.01 Aid in Implementation of Plan

The Bankruptcy Court may direct the Reorganized Debtors, the Debtors, and any other Entity to execute or deliver or to join the execution or delivery of any instrument required to effectuate the Plan, and to perform any other act necessary to consummate the Plan.

### 13.02 Amendment or Modification of the Plan

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time before entry of the Confirmation Order, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after entry of the Confirmation Order and before substantial Consummation, provided that the Plan as altered, amended, or modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

32

### 13.03 __Severability__

If the Bankruptcy Court determines, before entry of the Confirmation Order, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the holder or holders of such Claims or Interests as to which the provision is determined to be invalid, void, or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

### 13.04 __Revocation or Withdrawal of the Plan__

The Debtors shall have the right to revoke or withdraw the Plan before entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

### 13.05 __Binding Effect__

The Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and Interests and their respective successors and assigns.

### 13.06 __Notices__

To be effective, all notices, requests, and demands to or upon the Debtors or the Reorganized Debtors shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when it arrives at the following mailing addresses or, in the case of notice by electronic mail, when the electronic mail is received by the following electronic mail accounts:

> *If to the Debtors:*
> VeroBlue Farms USA, Inc.
> 401 Des Moines Street
> Webster City, IA 50595
> Attention:    Norman McCowan
>                      Chief Executive Officer
> Email:  norman.mccowan@verobluefarms.com
>
> Copies to:
>
> Joseph A. Peiffer
> Ag & Business Legal Strategies
> P.O. Box 11425
> Cedar Rapids, IA 52410-1425
> Email:  joe@ablsonline.com
>
> Dan Childers

Elderkin & Pirnie, PLC
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Email:  dchilders@elderkinpirnie.com

### 13.07 **Governing Law**

Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Iowa without giving effect to the principles of conflicts of law of such jurisdiction.

### 13.08 **Allocation of Plan Distributions Between Principal and Interest**

If any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

Dated the date set forth above.

VEROBLUE FARMS USA, INC.
on behalf of itself and its substantively consolidated debtors

By: /s/ Norman McCowan_____
        Norman McCowan
        Chief Executive Officer

ELDERKIN & PIRNIE, PLC

By:  /s/ Dan Childers_____
        Dan Childers
        Attorney for Debtor

AG & BUSINESS LEGAL STRATEGIES

By:  /s/ Joseph A. Peiffer_____
        Joseph A. Peiffer

        Attorney for Debtor

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of March 2019, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system and served electronically on those participants that receive service through the CM/ECF System. The undersigned further certifies the foregoing document was sent to persons or representatives via electronic mail or U.S. Mail postage pre-paid as set forth below.

Signed:  /s/ Joseph A. Peiffer

| | |
|---|---|
| Phillip L. Sheets, Ltd.<br>c/o Phillip Sheets<br>7632 Jefferson Rd<br>Belleville, IL 62221 | William John Turk<br>5621 Valhalla Drive<br>North Richland Hills, TX 76180 |
| McDonald Supply/Hajoca Corp<br>c/o Alysia Hedrick<br>P.O. Box 708<br>Dubuque, IA 52004-0708 | Elizabeth M. Lally<br>17838 Burke Street, Suite 250<br>Omaha, NE 68118 |
| Laura M. Hyer<br>Bradley & Riley PC<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 | Joseph E. Schmall<br>Bradley & Riley<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 |
| Eric W. Lam<br>Simmons Perrine Moyer Bergman PLC<br>115 Third Street SE, Suite 1200<br>Cedar Rapids, IA 52401 | |

18978952

**Buckeye Legal Description: (12282 200th Street, Radcliffe, Hardin County, Iowa):**

PARCEL "C" IN THE NORTHWEST FRACTIONAL QUARTER (NW FR. 1/4) OF SECTION THIRTY (30), TOWNSHIP EIGHTY-EIGHT (88) NORTH, RANGE TWENTY-TWO (22) WEST OF THE 5TH P.M., HARDIN COUNTY, IOWA AS DESCRIBED AND DEPICTED IN PLAT OF SURVEY DATED JULY 16, 2015, AND FILED JULY 16, 2015, AS DOCUMENT NO. 2015-1691, IN THE OFFICE OF THE HARDIN COUNTY, IOWA RECORDER AND FURTHER DESCRIBED AS: COMMENCING AT THE NORTH ONE-QUARTER CORNER OF SECTION THIRTY (30), TOWNSHIP EIGHTY-EIGHT (88) NORTH, RANGE TWENTY-TWO (22) WEST OF THE 5TH P.M., HARDIN COUNTY, IOWA; THENCE N 89°43'30" W 641.55 FEET ALONG THE NORTH LINE OF THE FR. NW1/4 OF SAID SECTION 30 TO THE POINT OF BEGINNING; THENCE CONTINUING N 89°43'30"W 708.35 FEET ALONG THE NORTH LINE OF THE FR. NW1/4 OF SAID SECTION 30; THENCE S 00°00'00"E 1378.20 FEET; THENCE N 90°00'00"E 708.35 FEET; THENCE N 00°00'00"W 1374.80 FEET TO THE POINT OF BEGINNING, SUBJECT TO 200TH STREET RIGHT OF WAY.  NOTE: THE NORTH LINE OF THE FR. NW l/4 OF SECTION 30-88-22 IS ASSUMED TO BEAR N 89°43'30" W FOR THE PURPOSE OF THIS DESCRIPTION.

Legal description to Urban Farms operations owned by Iowa's First, Inc. located at 401 Des Moines Street, Webster City, IA 50595

Warehouse Site:

Lots 1 and 2, except the South 26 thereof, Block 7, Jones and Smith's Addition to Webster City, Iowa; and Lot 5, except the South 26 feet thereof and except the East 40 feet thereof; and Lot 6, except the South 26 thereof; Lot 1 and North 6 feet of Lot 7, all in Block 7, Odell & Willson's Addition to Webster City, Iowa; and the South 26 feet of Lot 1 and 2; all of Lots 3 and 4, all in Block 7, Jones and Smith's Addition to Webster City, Iowa; and Lots 1, 2, 3 and 4, all in Block 8, Jones and Smith's Addition to Webster City, Iowa; and Lots 2, 3, 4, the East 40 feet of Lot 5, the South 26 feet of Lot 5, except the East 40 feet of said Lot 5, the South 26 feet of Lot 6, Lot 7, except the North 6 feet thereof, and all of Lots 8, 9, 10, 11, 12, 13, 14; all in Block 7, Odell & Willson's Addition to Webster City, Iowa; and Lots 1, 2, 3, 4 and 5, all in Block 8, Odell & Willson's Addition to Webster City, Iowa; and Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, all in Reserve lying West of Block 8, Odell & Willson's Addition to Webster City, Iowa.

All that part of vacated Merritt Street lying between the West line of Des Moines Street and the East Line of Prospect Street in Webster City, Iowa, as platted in Odell & Willson's Addition to Webster City, Iowa, August 4, 1869, and in Jones and Smith's Addition to Webster City, Iowa, February 4, 1872.

All that part of vacated Stockdale Street lying between the West line of Des Moines Street and the East line of Prospect Street in Webster City, Iowa, as platted in Odell & Willson's Addition to Webster City, Iowa, August 4, 1869, and in Jones and Smith's Addition to Webster City, Iowa, February 4, 1872.

Parking Site:

The South 52.9 feet of Lot 7 and the North 9.6 feet of Lot 13 and all that part of the vacated alley between Lots 7 and 13, in Block 4, Odell and Willson's Addition to Webster City, Iowa; and Lots 1 and 7, Block 3, Odell and Willson's Addition to Webster City, Iowa; and the South 56.4 feet of Lot 13 and the North 9.9 feet of Lot 14, in Block 4, Odell and Willson's Addition to Webster City, Iowa; and Lot 1 and the North 13.1 feet of Lot 7, in Block 4, Odell and Willson's Addition to Webster City, Iowa; and the South 56.1 feet of Lot 14, Block 4, Odell and Willson's Addition to Webster City, Iowa.

Lots 1 and 2, except the South 67 feet thereof, Block 3, Jones and Smith's

Addition to Webster City, Iowa; and the South 67 feet of Lots 1 and 2, Block 3, Jones and Smith's Addition to Webster City, Iowa; and Lot 11 and the South Half of that part of the vacated alley adjoining the same on the North, in Block 4, Odell & Willson's Addition to Webster City, Iowa; and Lot 8, Block 4, Odell & Willson's Addition to Webster City, Iowa, and the vacated alley abutting said Lot along the North boundary thereof; the East 40 feet of Lot 2 and all that part of the vacated alley adjoining the same on the South, Block 4, Odell & Willson's Addition to Webster City, Iowa; and the West 50 feet of Lot 3, Block 3, Odell & Willson's Addition to Webster City, Iowa; and Lot 2 and the East 10 feet of Lot 3, Block 3, Odell & Willson's Addition to Webster City, Iowa; and Lot 6, Block 3, Odell and Willson's Addition to Webster City, Iowa; and all of Lot 3 and all of Lot 2 except the East 40 feet of said Lot 2, Block 4, Odell and Willson's Addition to Webster City, Iowa and that part of the vacated alley which adjoins that part of Lot 2 as described above on the South, and the North Half of that part of the vacated alley adjoining said Lot 3 on the South; and Lots 3 and 4, except the North 60 feet thereof, Block 4, Jones and Smith's Addition to Webster City, Iowa; the South 54 feet of Lots 1 and 2, Block 4, Jones and Smith's Addition to Webster City, Iowa; and Lot 6, Block 4, Odell & Willson's Addition to Webster City, Iowa and the North Half of that part of the vacated alley adjoining same on the South side of said Lot 6; and Lots 1 and 2, except the South 54 feet thereof, Block 4, Jones and Smith's Addition to Webster City, Iowa; and Lots 4 and 5, Block 3, Odell & Willson's Addition to Webster City, Iowa; and the North 60 feet of Lots 3 and 4, Block 4, Jones and Smith's Addition to Webster City, Iowa; and Lot 12, Block 4, Odell & Willson's Addition to Webster City, Iowa; and Lots 9 and 10, and the South Half of that part of the vacated alley adjoining same on the North, all in Block 4, Odell & Willson's Addition to Webster City, Iowa; and Lots 4 and 5 and the North Half of that part of the vacated alley adjoining the same on the South, all in Block 4, Odell & Willson's Addition to Webster City, Iowa.

All that part of vacated Lucas Street lying between the West line of Des Moines Street and the East line of Prospect Street in Webster City, Iowa, as platted in Odell & Willson's Addition to Webster City, Iowa, August 4, 1869, and in Jones and Smith's Addition to Webster City, Iowa, February 4, 1872.

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

|  |  |
|---|---|
| In re: | |
| VeroBlue Farms USA, Inc., *et. al.*, | Case No. 18-01297 |
|  | Chapter 11 |
| Debtors. | |

## VBF CREDITOR TRUST AGREEMENT

Dated:  [_____] [__], 2019

**GOLDSTEIN & MCCLINTOCK LLLP**

Thomas R. Fawkes, Esq.
111 W. Washington St., Suite 1221
Chicago, Illinois 60602
Telephone:  (312) 337-7700
Email:  tomf@goldmclaw.com

*Counsel to the Official Committee of
Unsecured Creditors*

**[MARK IAMMARTINO]**

c/o Development Specialists, Inc.
70 W. Madison St., Suite 2300
Chicago, Illinois  60602
Telephone:  (312) 263-4141
Email:  miammartino@dsi.biz

*Not Individually, but Solely as Initial Creditor
Trustee*

**ELDERKIN & PIRNIE, PLC**

Dan Childers, Esq.
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Telephone: (319) 362-2137
Facsimile: (319) 362-1640
Email:  dchilders@elderkinpirnie.com

**AG & BUSINESS LEGAL STRATEGIES**

Joseph A. Peiffer, Esq.
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

*Counsel to VeroBlue Farms USA, Inc. and Its
Affiliated Debtors*

12306082
19003453

# VBF CREDITOR TRUST AGREEMENT

## PREAMBLE

This Creditor Trust Agreement (the "*Creditor Trust Agreement*") is made this [___] day of [_____], 2019, by and among VeroBlue Farms USA, Inc., VBF Operations Inc., Iowa's First, Inc., VBF Transport, Inc. and VBF IP, Inc. (collectively, the "*Debtors*"), the Official Committee of Unsecured Creditors (the "*Committee*"), [Mark Iammartino], not individually, but solely as trustee ("*Creditor Trustee*" and, collectively with the Debtors and the Committee, the "*Parties*") of the trust (the "*Creditor Trust*") established by this Creditor Trust Agreement in accordance with the Amended Joint Chapter 11 Plan of Reorganization of VeroBlue Farms USA, Inc. and Its Affiliated Debtors dated March 12, 2019 [Docket No. ___] (attached hereto as <u>Exhibit A</u> and including any modifications set forth and/or incorporated into the Confirmation Order, the "*Plan*").[1]

## RECITALS

(A)   On September 21, 2018, the Debtors each filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Iowa (the "*Bankruptcy Court*") and commenced their chapter 11 cases;

(B)   On [_____] [___], 2019, the Bankruptcy Court entered an order confirming the Plan (the "*Confirmation Order*") [Docket No. ___];

(C)   The Plan and the Confirmation Order generally provide for, among other things, the Creditor Trust to take possession of all of the Creditor Trust Assets.  The Creditor Trust and Creditor Trustee will be tasked with distributing the Creditor Trust Assets in accordance with the terms of this Agreement and the Plan;

(C)   The Creditor Trust is created pursuant to, and to effectuate, the Plan and the Confirmation Order;

(D)   The powers, authority, responsibilities and duties of Creditor Trustee shall be governed by this Creditor Trust Agreement, the Plan, applicable orders issued by the Bankruptcy Court (including the Confirmation Order), and general fiduciary obligations of trustees under Iowa law;

(E)   Pursuant to the terms and conditions of the Plan, the Confirmation Order and this Creditor Trust Agreement, Creditor Trustee shall administer the Creditor Trust Assets;

---

[1]   Capitalized terms used, but not defined herein, shall have the meanings ascribed to such terms in the Plan.

19003453

(F)    This Creditor Trust Agreement is intended to supplement and complement the Plan and the Confirmation Order; provided, however, that if any of the terms and/or provisions of this Creditor Trust Agreement conflict with the terms and/or provisions of the Plan or the Confirmation Order, the Plan and the Confirmation Order shall govern; and

(G)    The Creditor Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan and the Confirmation Order, the Parties agree as follows:

## DECLARATION OF TRUST

The Debtors hereby absolutely assign to the Creditor Trust, and to its successors in trust and its successors and assigns, all right, title, and interest of Debtor in and to the Creditor Trust Assets;

TO HAVE AND TO HOLD in trust unto the Creditor Trust and its successors and assigns forever;

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the Beneficiaries, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Creditor Trust in accordance with Article XI hereof, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Creditor Trust Assets are to be held and applied by Creditor Trustee upon the further covenants and terms and subject to the conditions herein set forth.

## ARTICLE I

## ESTABLISHMENT OF CREDITOR TRUST AND
## APPOINTMENT OF CREDITOR TRUSTEE

1.1    Establishment of Creditor Trust.

Pursuant to the Plan, Debtors and Creditor Trustee hereby establish the Creditor Trust on behalf of, and for the sole benefit of, the Beneficiaries.  The name of the Creditor Trust shall be the "VBF Creditor Trust."  The parties to this Agreement and the Beneficiaries intend for the Creditor Trust to be treated as a "liquidating trust" under the Internal Revenue Code of 1986 and the regulations promulgated thereunder, specifically Treas. Reg. § 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes under Internal Revenue Code Section 671 with the Beneficiaries treated as the grantors and owners of the Creditor Trust Assets.

3

1.2     Purpose of the Creditor Trust.

The Creditor Trust shall be established for the purpose of receiving the Creditor Trust Assets and, as appropriate, investigating, prosecuting, settling, selling, disposing and otherwise resolving the same, and distributing such funds to Beneficiaries in accordance with the Plan, the Creditor Trust Agreement, and pursuant to Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

1.3     Transfer of Property and Rights to the Creditor Trust.

As of the Effective Date of the Plan, and in accordance with the Confirmation Order, the Debtors and their Estates hereby transfer, assign, and delivers to the Creditor Trust, any and all right, title, and interest in any and all of the Creditor Trust Assets.  The Creditor Trustee agrees to accept and hold the Creditor Trust Assets in trust for the benefit of the Beneficiaries, subject to the terms of this Agreement and the Plan, and to sell and liquidate, and distribute the cash proceeds of, such Creditor Trust Assets to the Beneficiaries as provided in the Plan.  At any time and from time to time after the Effective Date, the Debtors, at the request of Creditor Trustee, shall execute and deliver any instruments or documents, and to take, or cause to be taken, all such further action as Creditor Trustee may reasonably request in order to evidence or effectuate the transfer of the Creditor Trust Assets to the Creditor Trust and consummation of the transactions contemplated hereby and by the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan.

1.4     Title to Creditor Trust Assets.

(a)     The Confirmation Order provides for, causes and orders, upon the Effective Date and the full execution of the Agreement, the transfer, assignment, and delivery from the Debtors and the Estates to the Creditor Trust, for the benefit of the Beneficiaries, of all of the Estates' right, title, and interest in the Creditor Trust Assets, as provided for in this Agreement and the Plan,  all of which assets shall vest in the Creditor Trust on the Effective Date free and clear of all Claims, encumbrances, and interests to the maximum extent permissible under the Bankruptcy Code, but subject to the rights of Beneficiaries to obtain the distributions as provided for in this Agreement and the Plan.  In this regard, the Creditor Trust Assets will be treated for tax purposes as being transferred by the Debtors and the Estates to the Beneficiaries, and then by the Beneficiaries to the Creditor Trust in exchange for their Creditor Trust Interests for the benefit of such Beneficiaries in accordance with the Plan.  Upon the transfer of the Creditor Trust Assets, the Creditor Trustee shall succeed to all of the Estates' right, title and interest in such assets, and the Estate shall have no further interest in or with respect to the Creditor Trust Assets or the Creditor Trust (except the Participation Interest in the Sheriff Causes of Action).  Each of the Creditor Trust and Creditor Trustee shall be considered for all purposes in respect of the disposition of the Creditor Trust Assets as separate and distinct from, and independent of, the Debtors, their Estates, and the Reorganized Debtors.

(b)     The Creditor Trust shall be treated as a "liquidating trust" within the meaning of section 301.770 1-4(d) of the Treasury Regulations.  For all federal and state income tax purposes, the transfer of the Creditor Trust Assets to the Creditor Trust shall be treated as a transfer to the Beneficiaries of the Creditor Trust for all purposes of the Internal Revenue Code

4

(*e.g.*, sections 61(a)(12), 483, 1001, 1012, and 1274) followed by a deemed transfer by such Beneficiaries to the Creditor Trust. The Creditor Trust shall be considered a "grantor" trust, and the Beneficiaries shall be treated as the grantors and deemed owners of the Creditor Trust. The Creditor Trust shall not be deemed a successor of the Debtors. To the extent valuation of the Creditor Trust Assets to the Creditor Trust is required under applicable law, Creditor Trustee shall value the transferred property and notify in writing the Beneficiaries of such valuations. The assets transferred to the Creditor Trust shall be valued consistently by Creditor Trustee and the Beneficiaries, and these valuations will be used for all federal income tax purposes.

1.5   Appointment of Creditor Trustee.

[NAME] is hereby appointed to serve as the initial Creditor Trustee under the Plan and hereby accepts this appointment and agrees to serve in such capacity, effective upon the date of this Creditor Trust Agreement. A successor Creditor Trustee shall be appointed as set forth in Section 4.6 in the event Creditor Trustee is removed or resigns pursuant to this Creditor Trust Agreement or if Creditor Trustee otherwise vacates the position. The Creditor Trust shall be administered by Creditor Trustee in accordance with the provisions of Article IX of this Agreement and the Plan and Creditor Trustee shall have the duties and powers set forth in Article III of this Agreement.

1.6   Claims Against the Creditor Trust Assets.

The Creditor Trust Assets shall be subject to the claims of the Creditor Trustee, and his or her Professionals and Non-Professionals, and other Trustee's Expenses (as defined in the Plan). The Creditor Trustee shall be entitled to reimburse persons or entities for Trustee's Expenses out of any available cash in the Creditor Trust, for reasonable compensation and actual reasonable out-of-pocket expenses, including any insurance policies the Creditor Trustee deems appropriate, and against and from any and all loss, liability, expense, or damage which each such may sustain in good faith and without willful misconduct, gross negligence, fraud, or, solely in the case of Creditor Trustee, breach of fiduciary duty other than negligence, in the exercise and performance of any of the powers and duties of Creditor Trustee.

1.7   Funding of the Creditor Trust.

(a)   On the Effective Date, the Debtors and the Estates shall be deemed to have transferred and/or assigned as of the Effective Date any and all assets of Debtor and the Estate constituting Creditor Trust Assets under the Plan including, without limitation: (i) Cash in the amount of $620,000; (ii) all Avoidance Actions not otherwise released or preserved by the Debtors or Reorganized Debtors under the Plan; and (iii) all Causes of Action against Rick Sheriff (subject to the Participation Interest). All transferred assets shall be held by the Creditor Trust free and clear of all Claims, Liens, and contractually imposed restrictions, except for the rights to Distribution afforded to Beneficiaries and any orders of the Bankruptcy Court.

(b)   The Distributions to be made to Beneficiaries pursuant to the Plan will be derived from any payments to be received by Creditor Trustee from the liquidation of Creditor Trust Assets, including the prosecution and enforcement of Assigned Causes of Action, and other funds available after the Effective Date.

5

1.8     <u>Assigned Causes of Action</u>.

Except as otherwise provided in the Plan, all claims, rights, defenses, offsets, recoupments, causes of action, actions in equity or otherwise, whether arising under the Bankruptcy Code or federal, state or common law, which constitute Assigned Causes of Action (as defined in the Plan), are part of the Creditor Trust Assets transferred and assigned to the Creditor Trust as of the Effective Date in accordance with section 1123(b) of the Bankruptcy Code. Prosecution and settlement of such claims, rights, defenses, and Causes of Action shall be the responsibility of Creditor Trustee, and Creditor Trustee shall pursue those claims, rights, defenses, and Causes of Action, as appropriate, in accordance with Creditor Trustee's sole judgment of what is in the best interests, and for the benefit of, the Beneficiaries of the Creditor Trust.

*Participation Interest in Sheriff Litigation*. The Reorganized Debtors shall retain a participation interest (the "*Participation Interest*") in any proceeds of the Rick Sheriff Causes of Action (as discussed in section 8.03 of the Plan). Upon receiving any Cash recoveries (whether as a result of a pre- or post-filing settlement, a judgment or otherwise) from the Rick Sheriff Causes of Action, the Creditor Trustee shall promptly remit to the Reorganized Debtors thirty-three and one-third percent (33 1/3%) of such Cash recoveries, after payment in full of all reasonable attorneys' fees, expert fees, and other out-of-pocket costs incurred by the Creditor Trustee in the Rick Sheriff Causes of Action.

1.9     <u>Securities Laws</u>.

Under section 1145 of the Bankruptcy Code, the issuance of Creditor Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities. If Creditor Trustee determines, with the advice of counsel, that the Creditor Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then Creditor Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

## ARTICLE II
## CREDITOR TRUST INTERESTS

2.1     <u>Identification of Holders of Creditor Trust Interests</u>.

The names of the record holders of Creditor Trust interests ("*Creditor Trust Interests*"), and the amount of Creditor Trust Interests held by such record holders, shall be recorded and set forth in a register maintained by Creditor Trustee (or his designee) expressly for such purpose. The Creditor Trustee hereby establishes the close of business on the Effective Date of the Plan as the record date for purposes of establishing the official registry of holders of the Creditor Trust Interests. The distribution of Creditor Trust Interests to the Beneficiaries shall be accomplished as set forth in the Plan and in this Agreement. No certificates evidencing the Creditor Trust Interests will be issued to any record or beneficial holder of such interests.

6

2.2 <u>Transferability of Creditor Trust Interests</u>.

The Beneficiaries shall have beneficial interests in the Creditor Trust Assets as provided in the Plan. Any Beneficiary's proportionate share as thus determined shall be transferable, subject, as applicable, to Bankruptcy Rule 3001(e) and any other provision of law, but shall not be binding on the Creditor Trustee unless and until the transfer has been accepted by the Creditor Trustee.

2.3 <u>Interests Beneficial Only</u>.

The ownership of a beneficial interest hereunder shall not entitle any Beneficiary to any title in or to the Creditor Trust Assets as such (which title shall be vested in Creditor Trustee) or to any right to call for a partition or division of the Creditor Trust Assets or to require an accounting.

## ARTICLE III
## DUTIES AND POWERS OF THE CREDITOR TRUSTEE

3.1 <u>Generally</u>.

The Creditor Trustee shall be responsible for administering the Creditor Trust Assets and taking actions on behalf of, and representing, the Creditor Trust. The Creditor Trustee shall have the authority to bind the Creditor Trust within the limitations set forth herein, but shall for all purposes hereunder be acting in the capacity of Creditor Trustee and not individually.

3.2 <u>Scope of Authority</u>.

Within the limitations set forth herein, the responsibilities and authority of Creditor Trustee shall include, without limitation: (a) liquidating, selling or abandoning the Creditor Trust Assets; (b) facilitating the prosecution or settlement of objections to or estimations of general unsecured Claims in accordance with, but subject to the limitations set forth in, the Plan; (c) calculating and implementing all distributions of Net Proceeds in accordance with the Plan and the Confirmation Order; (d) maintaining and administering reserves for Disputed Claims and Claims of Creditors that may be the subject of Avoidance Actions; (e) paying all obligations on behalf of the Creditor Trust from funds held by the Creditor Trust (including Trustee's Expenses and fees and expenses of Professionals and Non-Professionals); (f) providing any required periodic reports (including, without limitation, filing Quarterly Reports pursuant to Section 8.07 of the Plan) to the Bankruptcy Court and other parties-in-interest on the status of distributions on Allowed Claims, and the financial status of the Creditor Trust; (g) pursuing Assigned Causes of Action as set forth in the Plan; and (h) carrying out such other responsibilities not specifically set forth herein as may be vested in the Creditor Trustee pursuant to the Plan, this Creditor Trust Agreement, any Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan and the Confirmation Order.

7

3.3    <u>Taxes and Other Required Filings</u>.

     (a)    <u>Federal Income Tax</u>. The Creditor Trustee shall treat the Creditor Trust as a grantor trust and shall report items of income, deduction, and credit attributable to the Creditor Trust in accordance with and pursuant to Treasury Regulations Section 1.671-4(a).

     (b)    <u>Taxes</u>. The Creditor Trust shall be responsible for payments of any taxes imposed on the Creditor Trust. The Creditor Trustee may request an expedited determination of taxes of the Creditor Trust under section 505(b) of the Bankruptcy Code for all returns filed by, for, or on behalf of, the Creditor Trust for all taxable periods through the dissolution of the Creditor Trust.

     (c)    <u>Other</u>. The Creditor Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Creditor Trust that are required by any governmental authority.

3.4    <u>Fiduciary Obligations to Creditor Trust and Beneficiaries</u>.

     The Creditor Trustee's actions as Creditor Trustee will be held to the same standard as the trustee of a trust under Chapter 633A of the Iowa Code, as amended. His or her fiduciary obligations to the Creditor Trust and its Beneficiaries are the same fiduciary obligations that the trustee of a trust owes to that trust and its beneficiaries under Iowa law.

3.5    <u>Powers</u>.

     In connection with the administration of the Creditor Trust, except as otherwise set forth in this Creditor Trust Agreement, the Plan, or the Confirmation Order, the Creditor Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Creditor Trust, without further authorization from the Bankruptcy Court. Without limiting, but subject to, the foregoing, Creditor Trustee is expressly authorized, unless otherwise provided in this Creditor Trust Agreement and subject to the limitations contained herein, in the Plan, and in the Confirmation Order to:

     (1)    hold legal title (on behalf of the Creditor Trust as Creditor Trustee, but not individually) to the Creditor Trust Assets;

     (2)    protect and enforce the rights to the Creditor Trust Assets vested in the Creditor Trust by the Plan and the Confirmation Order by any method deemed appropriate in his or her sole discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law, and general principles of equity;

     (3)    open and maintain bank accounts on behalf of or in the name of the Creditor Trust;

     (4)    invest funds (in the manner set forth in Section 3.9 of this Agreement), make distributions, and pay taxes and other obligations owed by the Creditor Trust

8

from funds held by Creditor Trustee and/or the Creditor Trust in accordance with the Plan and the Confirmation Order;

(5)     prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle, in accordance with the terms set forth herein and in the Plan and Confirmation Order, Claims in favor of or against the Creditor Trust as Creditor Trustee, in his sole discretion, shall deem necessary, subject to the limitations of the Plan, the Confirmation Order, and this Creditor Trust Agreement;

(6)     prosecute, defend, compromise, adjust, arbitrate, abandon, or otherwise deal with and settle, in accordance with the terms set forth herein and in the Plan and Confirmation Order, all Assigned Causes of Action;

(7)     determine and satisfy any and all liabilities created, incurred, or assumed by the Creditor Trust;

(8)     file, if necessary, any and all tax and information returns with respect to the Creditor Trust and pay taxes properly payable by the Creditor Trust, if any;

(9)     make distributions to Beneficiaries as provided for in this Creditor Trust Agreement, the Plan and the Confirmation Order;

(10)     pay expenses and make disbursements necessary to preserve, liquidate, and enhance the Creditor Trust Assets, including Trustee's Expenses;

(11)     purchase such insurance or trustee bond coverage as Creditor Trustee deems necessary and appropriate with respect to the liabilities and obligations of the Creditor Trust and Creditor Trustee (in the form of an errors and omissions policy, fiduciary policy, or otherwise);

(12)     purchase such insurance coverage as Creditor Trustee, in his sole discretion, deems necessary and appropriate with respect to real and personal property which may be or may become Creditor Trust Assets;

(13)     retain and pay Professionals as provided for in Article X of this Creditor Trust Agreement as Creditor Trustee may deem necessary or appropriate to assist the Creditor Trust and/or Creditor Trustee in carrying out his powers and duties under this Agreement to the extent permitted by this Creditor Trust Agreement, the Plan, and the Confirmation Order. Subject to Article X, Creditor Trustee may commit the Creditor Trust to, and the Creditor Trust shall, pay Professionals reasonable compensation for services rendered thereto, and reasonable expenses incurred, as well as commit the Creditor Trust to indemnify any such parties in connection with the performance of services from the Creditor Trust Assets;

(14)     retain and pay such Non-Professional third parties as provided for in Article X of this Creditor Trust Agreement as Creditor Trustee may deem necessary or appropriate to assist the Creditor Trust and/Creditor Trustee in carrying out his powers and duties under this Agreement to the extent permitted by this Creditor Trust Agreement, the Plan, and the Confirmation Order. Subject to Article X, Creditor Trustee may commit the Creditor Trust to,

19003453

and the Creditor Trust shall, pay all such Non-Professionals reasonable compensation for services rendered thereto, and reasonable expenses incurred, as well as commit the Creditor Trust to indemnify any such parties in connection with the performance of services from the Creditor Trust Assets;

(15)     settle, in his sole discretion, or litigate objections to, any and all Disputed Class 5 Claims in accordance with, but subject to the limitations set forth in, the Plan and Section 7.1 of this Agreement;

(16)     distribute Cash as set forth in this Creditor Trust Agreement, the Plan, and the Confirmation Order;

(17)     within the limitations of the authority provided to Creditor Trustee in this Creditor Trust Agreement, the Plan, and the Confirmation Order, take any appropriate action with respect to the prosecution, settlement, or other resolution of Claims against the Creditor Trust Assets;

(18)     terminate and dissolve the Creditor Trust pursuant to and in accordance with the terms of the Plan, the Confirmation Order and this Creditor Trust Agreement; and

(19)     assume such other powers as may be vested in or assumed by the Creditor Trust pursuant to the Plan or Bankruptcy Court order, or as may be reasonably necessary and proper to carry out the provisions of the Plan, the Confirmation Order, or this Creditor Trust Agreement.

3.6     General Authority of Creditor Trustee.

Unless specifically stated otherwise herein, the Creditor Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction authorized in this Creditor Trust Agreement or specifically contemplated in the Plan and the Confirmation Order and except as otherwise set forth herein, the Creditor Trustee is not required to submit a proposed settlement to the Bankruptcy Court or such other court of competent jurisdiction on any matter for approval; provided, however, that the Creditor Trustee may, in his sole discretion, seek Bankruptcy Court approval for certain actions upon motion, and the Bankruptcy Court shall retain jurisdiction to consider such motions.

10

3.7     Limitation of Creditor Trustee's Authority.

(1)     Notwithstanding anything herein to the contrary, the Creditor Trustee shall not be authorized to engage in any trade or business.  Notwithstanding any other authority granted in Sections 3.2 and 3.5 herein, the Creditor Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Creditor Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d).

(2)     The Creditor Trust shall not hold 50% or more of the stock (in either voting power or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest consists of the Creditor Trust Assets, was obtained pursuant to rights under the Creditor Trust Assets or was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Creditor Trust Assets.

(3)     The Creditor Trust shall not incur secure or unsecured indebtedness (other than ordinary-course credit from providers of services or goods to the Creditor Trust) absent approval by the Court.

(4)     The Creditor Trustee shall not commingle Creditor Trust Assets, including Cash and deposit accounts, with non-Creditor Trust assets.

(5)     The Creditor Trustee shall promptly pay any proceeds of the Participation interest to Reorganized Debtors and may not use or distribute the proceeds for any other purpose.

3.8     Other Activities of Creditor Trustee.

The Creditor Trustee shall be entitled to be employed by third parties or engage in non-conflicting activities while serving as Creditor Trustee for the Creditor Trust.

3.9     Investment and Safekeeping of Creditor Trust Assets.

All monies and other assets received by the Creditor Trust shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries, but need not be segregated from other Creditor Trust Assets.  Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable Creditor Trustee to determine Cash, reserves, and amounts to be paid to parties in interest. The Creditor Trustee shall promptly invest any such monies in the manner set forth in this Section 3.9, but shall otherwise be under no liability for interest or income on any monies received by the Creditor Trust hereunder and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Creditor Trustee. Investment of any monies held by the Creditor Trust shall be administered in accordance with Creditor Trustee's general duties and obligations hereunder and in view of the Creditor Trustee's general fiduciary duties under Iowa law.  The right and power of the Creditor Trustee to invest the Creditor Trust Assets transferred to the Creditor Trust, the proceeds thereof, or any income earned by the Creditor Trust, shall be limited to the right and power to (i) invest such Creditor

11

Trust Assets (pending distributions in accordance with the Plan and the Confirmation Order) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America or (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000.00 (collectively, the "*Permissible Investments*") _provided, however_, that the scope of any such Permissible Investments shall be limited to include only those investments that a trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

3.10    Authorization to Expend Creditor Trust Assets.

The Creditor Trustee may expend assets of the Creditor Trust to the extent necessary (i) to meet liabilities and to maintain the value of the Creditor Trust Assets during the existence of the Creditor Trust, up and until all creditors are paid in full, (ii) to pay Trustee's Expenses (including, but not limited to, any taxes imposed on the Creditor Trust or fees and expenses in connection with litigation), (iii) to satisfy other liabilities incurred or assumed by the Creditor Trust (or to which the Creditor Trust Assets are otherwise subject) in accordance with this Creditor Trust Agreement, the Plan, or the Confirmation Order; and (iv) to make distributions to Beneficiaries on account of their Allowed Claims in accordance with this Creditor Trust Agreement, the Plan and Confirmation Order.

**ARTICLE IV**
**CREDITOR TRUSTEE**

4.1    Compensation of Creditor Trustee.

(a)    The Creditor Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Creditor Trust.  The Creditor Trustee's current hourly rate is $[AMOUNT].  The Creditor Trustee may assign certain projects related to this engagement to other Professionals associated with or retained by [FIRM] consistent with the nature of the projects and experience of the other Professionals.  The hourly rates for such other professionals are estimated to range from [AMOUNT] based on their level of experience.  These rates may be adjusted periodically to reflect market and other conditions.  All travel time of the Creditor Trustee and other Professionals associated with [FIRM] shall be billed at half of their standard hourly rate.

(b)    All compensation and other amounts payable to the Creditor Trustee shall be paid pursuant to the terms of this Creditor Trust Agreement and the Plan.  The Creditor Trust shall receive its initial funding from the Debtors' Cash contribution set forth under the Plan to fund the costs of administration of the Creditor Trust, as well as ongoing receipts post-confirmation, until all assets have been liquidated or disposed of otherwise.

(c)    The Creditor Trust shall reimburse the Creditor Trustee for his actual reasonable out-of-pocket expenses incurred including, without limitation, necessary travel,

12

19003453

lodging, postage, telephone, and facsimile charges upon receipt of periodic billings. All reimbursement for expenses payable to the Creditor Trustee shall be paid from the Creditor Trust Assets in priority over any distributions to Beneficiaries to be made under the Plan. If the Creditor Trust Assets are insufficient to fully satisfy the amounts payable to, or other obligations owing to, the Creditor Trustee, the Creditor Trustee may, in his or her sole and complete discretion, withhold distributions of proceeds of the Creditor Trust Assets from the Beneficiaries until the earlier of: (i) appropriate reserves have been created by the Creditor Trustee that would be sufficient to pay in full all fees, costs, and expenses rendered by the Creditor Trustee for and on behalf of the Beneficiaries (including, without limitation, for the pursuit of Assigned Causes of Action); or (ii) all such amounts have been fully paid and all such obligations have been fully satisfied. This Section shall be construed consistent with the provisions of Rev. Proc. 94-45, at ¶ 10.

(d)     If the Creditor Trustee is removed pursuant to Section 4.4 hereof or the Creditor Trustee dies or becomes disabled, then such former Creditor Trustee (or his employer, estate, successor, or assigns) shall be entitled to any remaining unpaid compensation and reimbursement due hereunder.

4.2     Termination.

The duties, responsibilities and powers of the Creditor Trustee will terminate on the date the Creditor Trust is terminated in accordance with Article XI of this Agreement.

4.3     No Bond Required, But Optional.

The Creditor Trustee shall not be required to obtain a trustee or similar surety bond but may obtain one, in his or her sole discretion, to the extent he deems necessary, with the costs of such bond to be payable by the Creditor Trust as a Trustee's Expense.

4.4     Removal.

The Creditor Trustee may only be removed for cause by order of the Bankruptcy Court, after notice and a hearing. The members of the former Committee, for and on behalf of the Creditor Trust, shall designate a successor Creditor Trustee ("*Successor Creditor Trustee*") as soon as practicable following entry of an order removing the Creditor Trustee for cause. "Cause" shall include, without limitation, fraud, defalcation, gross mismanagement, breaches of fiduciary duty other than negligence, the undue prolongation of the duration of the Creditor Trust and of distributions of the Creditor Trust Assets to the Beneficiaries, and the inability of the Creditor Trustee to adequately discharge his or her duties under this Agreement. If a Successor Creditor Trustee is not appointed or does not accept his or her appointment within thirty (30) days after the removal, the former Committee members or the Bankruptcy Court (or another court of competent jurisdiction), upon its own motion, shall appoint a Successor Creditor Trustee.

4.5     Resignation of Creditor Trustee.

The Creditor Trustee may resign by giving not less than thirty (30) days prior written notice thereof to the former Committee members or shall be deemed to have resigned due

13

to death or incapacity. Such resignation shall become effective on the later to occur of: (i) the day specified in such notice or date of death or determination of incapacity; or (ii) the appointment of a Successor Creditor Trustee by the former Committee members and the acceptance by such Successor Creditor Trustee of such appointment. If a Successor Creditor Trustee is not appointed or does not accept his or her appointment within thirty (30) days following delivery of a notice of resignation of Creditor Trustee, the former Committee members may petition any court of competent jurisdiction for the appointment of a Successor Creditor Trustee.

      4.6   <u>Appointment of Successor Creditor Trustee upon Removal, Resignation, Death, or Incapacity</u>.

      If Creditor Trustee is removed pursuant to Section 4.4 hereof, resigns pursuant to Section 4.5 hereof, or otherwise is incapable of serving as Creditor Trustee, a Successor Creditor Trustee shall be appointed by the former Committee members; *provided*, *however*, that no past or present holder of a Claim or Interest in Debtor or any representative thereof shall serve as Successor Creditor Trustee. No Successor Creditor Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.

      4.7   <u>Acceptance of Appointment by Successor Creditor Trustee</u>.

      Every Successor Creditor Trustee shall execute, acknowledge, and file with the Court an instrument in writing accepting such appointment hereunder, and thereupon such Successor Creditor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor with like effect as if originally named herein; *provided*, *however*, that a removed, incapacitated, or resigning Creditor Trustee shall, nevertheless, when requested in writing by the Successor Creditor Trustee, execute and deliver an instrument or instruments conveying and transferring to such Successor Creditor Trustee under the Creditor Trust all the rights, powers, duties, and obligations of Creditor Trustee.

      4.8   <u>Creditor Trust Continuance</u>

      The resignation of removal of the Creditor Trustee will not terminate the Creditor Trust or revoke any existing agency created pursuant to this Creditor Trust Agreement or invalidate any action theretofore taken by the Creditor Trustee.

### ARTICLE V
### PROVISIONS REGARDING DISTRIBUTIONS

      5.1   <u>Timing and Methods of Distributions</u>.

      (a)   <u>Generally</u>. The Creditor Trustee, on behalf of the Creditor Trust, or such other entity as may be designated by the Creditor Trustee, on behalf of the Creditor Trust, will make all distributions to the Beneficiaries as set forth in, and as required by, this Creditor Trust Agreement, the Plan and the Confirmation Order.

14

(b)      <u>Initial Distribution</u>.  The Creditor Trustee shall use his reasonable efforts to make an initial distribution under the Plan as soon as reasonably possible after the Effective Date.  Initial distributions made to Holders of Class 5 Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

(c)      <u>Subsequent Distributions.</u>  Subsequent distributions may be made from time to time in the sole discretion of the Creditor Trustee.

(d)      <u>Method of Distributions to Holders of Claims</u>.  Distributions made pursuant to the Plan shall be in U.S. dollars and, at the option and in the sole discretion of the Creditor Trustee, be made by (a) checks drawn on or (b) wire transfers from a domestic bank selected by the Creditor Trustee.

(e)      <u>Priority of Distributions</u>.  The Creditor Trustee in his good faith judgment and based on available Creditor Trust Assets, shall make distributions (other than the Participation Interest, which proceeds shall by paid to the Reorganized Debtors upon receipt)  in the following order of priorities: (i) first, to place sufficient funds in the Creditor Trust's account to pay accrued and projected Trustee's Expenses (including, but not limited to, Creditor Trustee's compensation and fees and expenses of Professionals and Non-Professionals); and (ii) *second,* to holders of Allowed Class 5 Claims.  The Creditor Trustee has no obligation to make distributions to any other creditor of the Debtors.

(f)      <u>Withholding</u>.   The Creditor Trustee may withhold from amounts distributable to any entity any and all amounts, determined in Creditor Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive, or other government equivalent of the United States or of any political subdivision thereof.

(g)      <u>Reserves</u>.  The Creditor Trustee shall cause the Creditor Trust to retain an amount of Net Proceeds as set forth in and to effectuate the provisions of the Plan and the Confirmation Order, or to meet Claims and contingent liabilities.

5.2      <u>Delivery of Distributions</u>.

Subject to the provisions of Rule 2002(g) of the Bankruptcy Rules and any other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any order of the Bankruptcy Court, and except as otherwise provided herein, distributions and deliveries to Holders of Allowed 5 Claims shall be made at the address (the "*Distribution Address*") of each such Holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by the address set forth on a timely filed proof(s) of claim or some other writing filed with the Bankruptcy Court and served upon the Creditor Trust.

5.3      <u>Tax Identification Numbers and OFAC Certifications</u>.

Notwithstanding anything in the Plan to the contrary, prior to making Distributions hereunder, the Creditor Trustee shall require all Holders of Allowed Class 5 Claims to furnish to him or her: (a) its Employer or Taxpayer Identification Number as assigned by the Internal Revenue Service on a Form W-9; and (b) a certification that the Holder is not a person

15

or entity with whom it is illegal for a U.S. person to do business under Office of Foreign Assets Control ("*OFAC*") sanctions regulations and/or the list of Specially Designated Nationals and Blocked Persons (collectively, the "*Pre-Distribution Certifications*"). Pre-Distribution Certification forms will be mailed to the Distribution Address for each Holder prior to Distributions being made, and Holders shall have forty-five (45) days from the date of mailing to return the executed Pre-Distribution Certifications. Any Holder that fails to return the executed Pre-Distribution Certifications within such forty-five (45) day period shall be deemed to have forfeited its right to receive Distributions and shall be forever barred and enjoined from asserting any right to Distributions made prior to the Creditor Trustee receiving its executed Pre-Distribution Certifications (such a Holder would only be entitled to a Pro-Rata Share of remaining future Distributions, if any); provided, however, that the Creditor Trustee may extend the deadline to return executed Pre-Distribution Certifications in his or her sole discretion. Any Distributions that are forfeited pursuant to this provision will be returned to the Creditor Trustee and become property of the Creditor Trust.

 5.4 <u>Undeliverable Distributions</u>.

  (a) <u>Holding of Undeliverable Distributions</u>.

   If any Distribution to any Holder of an Allowed Claim is returned to the Creditor Trustee as undeliverable, no further Distributions shall be made to such Holder unless and until the Creditor Trustee is notified by such Holder, in writing, of such Holder's then-current address. Upon such an occurrence, the appropriate Distribution shall be made as soon as reasonably practicable after such Distribution has become deliverable. All Creditors ultimately receiving previously undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Creditor Trustee is not required to attempt to locate any Holder of an Allowed Claim. The Creditor Trustee may, but is under no obligation to, research any new address of a Holder and forward any Distribution to such new address.

  (b) <u>Failure to Claim Undeliverable Distributions</u>.

   Any Holder of an Allowed Class 5 Claim entitled to an undeliverable or unclaimed Distribution that does not provide notice of such Holder's correct address to Creditor Trustee within one-hundred twenty (120) days after the date of the initial Distribution made by Creditor Trustee to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution against Debtor, its Estate or the Creditor Trust. If, after one-hundred twenty (120) days, Distributions remain unclaimed, unclaimed Distributions will become Forfeited Distributions and such amounts shall be made available for distribution to other Beneficiaries or for Trustee's Expenses. With respect to a final Distribution, in the event that the aggregate amount of the Forfeited Distributions is not sufficient for the Creditor Trustee to make an economically justifiable supplemental final Distribution (for example, a Distribution would result in De Minimis Distributions after cost) the Forfeited Distributions may be donated to the Iowa Agriculture Literacy Foundation (or substantially similar charitable organization).

 5.5 <u>Withholding and Reporting Requirements</u>.

16

In connection with the Plan and all Distributions thereunder, the Creditor Trustee shall comply with all tax withholding and reporting requirements imposed by any U.S. federal, state or local or non-U.S. taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Creditor Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan: (a) each Holder of an Allowed Class 5 Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution; and (b) the Creditor Trustee reserves the option, in his discretion, to not make a Distribution to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Creditor Trustee for the payment and satisfaction of such tax obligations or has, to Creditor Trustee's satisfaction, established an exemption therefrom.

5.6    Time Bar to Cash Payments.

Checks issued by the Creditor Trustee on account of Allowed Class 5 Claims shall be null and void if not negotiated within one-hundred twenty (120) days from and after the date of issuance thereof. Requests for reissuance of any check that has become null and void shall be made directly to the Creditor Trustee by the Holder of the Allowed Claim within one (1) year of the check becoming null and void. After such one (1) year period has elapsed, all Claims relating to such voided checks shall be discharged and forever barred. In the case of checks issued on account of Allowed Claims but not negotiated within one-hundred twenty (120) days of issuance and for which no request for reissuance is made before one (1) year after issuance, the amounts at issue shall be considered to be a Forfeited Distribution. Any creditor or claimant that fails to negotiate its check and seek reissuance shall be entitled to no further distributions on any Class 5 Claim.

5.7    *De Minimis* Distributions.

The Creditor Trustee will not make any De Minimis Distributions, and reserves the right to reserve such De Minimis Distributions until such time as the Holder of such Claims is entitled to a Distribution of at least twenty-five dollars ($25.00).

5.8    Interest.

Unless otherwise required by applicable bankruptcy law, or specifically provided for herein, post-petition interest shall not accrue or be paid on any Class 5 Claims, and no holder of a Claim shall be entitled to interest or fees accruing on or after the Petition Date on any Claim.

In accordance with Section 502(b)(2) of the Bankruptcy Code, the amount of all prepetition Unsecured Claims against the Debtors shall be calculated as of the Petition Date. Except as otherwise explicitly provided in the Plan, in section 506(b) of the Bankruptcy Code, or by Final Order, no Holder of a prepetition Class 5 Claim shall be entitled to or receive interest or fees relating to such Claim.

5.9    Setoffs.

19003453

Consistent with the Plan, sections 502(d) or 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Creditor Trustee may, but shall not be required to, set off against any Allowed Class 5 Claim and the Distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim), the claims, rights and causes of action of any nature that Debtors, their Estates, or the Creditor Trustee may hold against the Holder of such Allowed Class 5 Claim; provided, however, that neither the failure to effect such a set off nor the allowance of any claim hereunder shall constitute a waiver or release by Debtors, their Estate, or the Creditor Trustee of any such claims, rights, and Causes of Action that Debtors, their Estates, the Creditor Trust, or the Creditor Trustee may possess against such Holder.

5.10    Preservation of Debtors' Subordination Rights.

All subordination rights and claims relating to the subordination by Debtors or their Estates of the Allowed Class 5 Claims of any creditor shall remain valid and enforceable by the Creditor Trust, unimpaired in accordance with section 510 of the Bankruptcy Code or otherwise, and may be asserted by the Creditor Trustee as necessary or appropriate.

## ARTICLE VI
## PROCEDURES FOR RESOLUTION OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS

6.1    Objections to Claims; Prosecution of Disputed Claims.

(a)    After the Effective Date (and as otherwise provided in the Plan), the Creditor Trustee shall object (and shall take over, and continue prosecuting, any outstanding claims objections initiated by the Debtors or the Committee) to the allowance of any Disputed Unsecured Claims as the Creditor Trustee determines is reasonable, even if such claims were scheduled by Debtors as undisputed, liquidated and non-contingent. All objections shall be pursued to settlement or to Final Order; *provided*, *however*, that no Bankruptcy Court approval shall be required in order for Creditor Trustee to settle, withdraw and/or compromise any Claim or objection to Claim where the proposed Allowed Claim is to be less than $25,000.

(b)    Any objections to general unsecured Claims shall be resolved or litigated by the Creditor Trustee, in his or her sole discretion. The Creditor Trustee shall have sole and complete discretion to not review and/or object to proofs of Claim, including, without limitation, to not object to claims to the extent the Creditor Trustee believes that such review and/or objection would be uneconomical.

6.2    Estimation of Claims.

The Creditor Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Class 5 Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether Debtors, Committee, or the Creditor Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Class 5 Claim at any time during litigation concerning any objection to any Class 5 Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section

502(j) of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or Disputed Claim, the amount so estimated shall constitute the maximum allowable amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Creditor Trustee may pursue supplementary proceedings to object to the allowance of such Claim. The aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

      6.3    <u>Payments and Distributions on Disputed Unsecured Claims</u>.

      No interest shall be paid on Disputed Claims that later become Allowed Claims or with respect to any distribution to such Holder. No distribution shall be made with respect to all or any portion of any Claim, a portion of which or all of which is a Disputed Claim, pending the entire resolution thereof.

**ARTICLE VII**
**LIABILITY AND EXCULPATION PROVISIONS**

      7.1    <u>Standard of Liability</u>.

      In no event shall the Creditor Trustee or the Creditor Trust, or their respective Professionals, Non-Professionals, or representatives be held liable for any claim asserted against the Creditor Trust or the Creditor Trustee, or any of their Professional, Non-Professionals, or representatives. Specifically, the Creditor Trustee, the Creditor Trust and their respective Professionals, Non-Professionals, or representatives shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith, to the fullest extent permitted by law (including applicable rules of professional conduct). Notwithstanding the foregoing, the Creditor Trust or the Creditor Trustee, or any of their Professionals, Non-Professionals, or representatives may be held liable to the extent that the action taken or omitted to be taken by each of the same or their respective Professionals, Non-Professionals or representatives is determined by a Final Order to be due to their own respective gross negligence, willful misconduct, fraud, or, solely in the case of the Creditor Trustee, breach of fiduciary duty other than negligence. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct or breach of fiduciary duty, unless such Bankruptcy Court approval was obtained as the result of gross negligence, willful misconduct, or fraud.

      7.2    <u>Reliance by Creditor Trustee</u>.

      (a)    The Creditor Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document reasonably believed by him to be genuine and to have been signed or presented by the proper party or parties except as otherwise provided in the Plan or the Confirmation Order.

19

(b)     The Creditor Trustee shall not be liable for any action reasonably taken or not taken in accordance with the advice of a Professional retained pursuant to Article X; and Persons dealing with the Creditor Trustee shall look only to the Creditor Trust Assets to satisfy any liability incurred by the Creditor Trustee to such Person in carrying out the terms of this Creditor Trust Agreement, and the Creditor Trustee shall have no personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Creditor Trustee are determined by a Final Order to be solely due to Creditor Trustee's own gross negligence, willful misconduct, fraud, or solely due to a breach of fiduciary duty, other than negligence.

7.3     <u>Exculpation.</u>

(a)     From and after the Effective Date, the Creditor Trustee and his or her Professionals, Non-Professionals, and representatives (collectively, "Exculpated Parties") shall be and hereby are exculpated by all Persons, including, without limitation, Holders of Class 5 Claims, other parties in interest and any Successor Creditor Trustee, from any and all claims, causes of action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Creditor Trust Agreement, the Plan, the Confirmation Order, any order of the Bankruptcy Court or applicable law; provided, however, that no Exculpated Party shall be exculpated for gross negligence, willful misconduct, or fraud, as determined by a final order of a court of competent jurisdiction (but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Creditor Trust Agreement).

(b)     No Holder of a Claim, other party-in-interest or any Successor Creditor Trustee will have or be permitted to pursue any claim or cause of action against Creditor Trustee or his Professionals, Non-Professionals, or representatives for making payments in accordance with the Plan or the Confirmation Order or for implementing the provisions of the Plan or the Confirmation Order.  Any act taken or not taken by Creditor Trustee with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence, willful misconduct, or, solely in the case of Creditor Trustee, a breach of fiduciary duty other than negligence, unless such Bankruptcy Court approval was obtained as the result of gross negligence, willful misconduct, or fraud.

7.4     <u>Indemnification.</u>

The Creditor Trust shall indemnify, defend, and hold harmless the Creditor Trustee and his or her respective Professionals, Non-Professionals, and representatives from and against any and all claims, causes of action, liabilities, obligations, losses, damages, or expenses (including attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, or breach of fiduciary duty other than negligence, to the fullest extent permitted by applicable law.

20

## ARTICLE VIII
## ADMINISTRATION

8.1     <u>Books and Records</u>.

The Creditor Trustee shall maintain, with respect to the Creditor Trust and the Beneficiaries, books and records relating to the assets and income of the Creditor Trust and the payment of expenses of and liabilities of, claims against or assumed by, the Creditor Trust in such detail and for such period of time as the Creditor Trustee determines, in his or her sole discretion, may be necessary to make full and proper accounting in respect thereof in order to comply with applicable provisions of law.  Except as otherwise provided herein, in the Plan, or in the Confirmation Order, nothing in this Agreement requires the Creditor Trust to file any accounting or seek approval of any court with respect to the administration of the Creditor Trust, or as a condition for making any payment or distribution out of the Creditor Trust Assets. Subject to all applicable privileges, the Beneficiaries shall, at their sole cost and expense, have the right, in addition to any other rights they may have pursuant to this Creditor Trust Agreement, under the Plan and the Confirmation Order, or otherwise, upon thirty (30) days prior written notice delivered to the Creditor Trustee, to request a reasonable inspection (as determined by the Creditor Trustee) of such books and records, <u>*provided that*</u>, if so requested, such Beneficiary shall (a) have entered into a confidentiality agreement satisfactory in form and substance to Creditor Trustee and (b) make such other arrangements as requested by Creditor Trustee.

8.2     <u>Security Interests</u>.

The Creditor Trustee and his or her respective Professionals and Non-Professionals are hereby granted a first-priority lien on, and security interest in, the Creditor Trust Assets to secure the payment of all amounts owed to, accrued or reserved on account of, to be retained by, or otherwise due hereunder or under the Plan to each of the above; it being understood that the Participation Interest or its proceeds shall not be subject to a lien or security interest).  The Creditor Trustee shall cause the Creditor Trust to take such actions and execute such documents as Creditor Trustee and his respective Professionals and Non-Professionals deem appropriate to perfect the security interests granted hereunder.  The Creditor Trustee is authorized to execute and deliver all documents on behalf of the Creditor Trust to accomplish the purposes of this Creditor Trust Agreement, the Plan, and the Confirmation Order.

8.3     <u>Compliance with Laws</u>.

Any and all distributions of Creditor Trust Assets shall comply with all applicable laws and regulations.

## ARTICLE IX
## PROFESSIONALS AND NON-PROFESSIONALS

9.1     <u>Retention of Professionals and Non-Professionals</u>.

(a)     The Creditor Trustee shall have the right to retain his or her own Professionals without any further approval by the Bankruptcy Court including, without

21

limitation, claims, disbursing and transfer agents, legal counsel, accountants, experts and other agents or advisors as the Creditor Trustee deems appropriate. Such Professionals shall be compensated in accordance with Section 9.2 hereof. The Professionals so retained may be "interested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in Debtors' chapter 11 cases.

(b)     The Creditor Trustee shall have the right to retain non-professionals without any further approval by any court or otherwise including, without limitation, employees, independent contractors, or other agents, including agents retained to make Distributions on Creditor Trustee's behalf (the "*Non-Professionals*") as Creditor Trustee deems appropriate. Such Non-Professionals shall be compensated in accordance with Section 9.2 hereof. The Non-Professionals so retained may be "interested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors, and agents of Debtor or Committee.

(c)     The Creditor Trustee has agreed to retain Goldstein & McClintock LLLP as his lead counsel and Nyemaster Goode, P.C. as his Iowa counsel. Such retention is made pursuant to this Article without any further approval by any Court.

10.2    <u>Compensation of Professionals and Non-Professionals.</u>

*Professionals and Non-Professionals.* Each Professional and Non-Professional retained by the Creditor Trustee shall submit monthly invoices to the Creditor Trustee, for their fees and expenses incurred in connection with services requested by, and provided to, Creditor Trustee. The Creditor Trustee is authorized to pay such monthly invoices after 10 days of receipt without Court approval, subject only to any reserve set by Creditor Trustee in his sole discretion in accordance with this Creditor Trust Agreement, unless the Creditor Trustee objects to some or all of the fees and expenses requested; but the Creditor Trustee shall be permitted to pay him or herself any uncontested fees and expenses. To the extent that the Creditor Trustee identifies an objection to a monthly invoice, he shall provide the affected Professional or Non-Professional with written notice of the objection, setting forth the reasons for the objection and the amounts to which he objects. The Creditor Trustee and the affected Professional or Non-Professional shall cooperate in good faith to resolve any such objections informally. If, after 30 days of written notice of the objection, the objection has not been consensually resolved, either party may file a motion with the Bankruptcy Court for an adjudication of the objection.

*Creditor Trustee.* The Creditor Trustee shall submit monthly invoices to the Reorganized Debtors for his or her fees and expenses incurred in connection with the discharge of his or her duties under this Creditor Trust Agreement. If an objection is not received by the Reorganized Debtors within 10 days of receipt, the Creditor Trustee shall be authorized to pay him or herself all requested fees and expenses. To the extent that the Reorganized Debtors identify an objection to a monthly invoice, they shall provide the Creditor Trustee with written notice of the objection, setting forth the reasons for the objection and the amounts to which they object; but the Creditor Trustee shall be permitted to pay him or herself any uncontested fees and expenses. The Creditor Trustee and the Reorganized Debtors shall cooperate in good faith to resolve any such objections informally. If, after 30 days of written notice of the objection, the objection has not

been consensually resolved, either party may file a motion with the Bankruptcy Court for an adjudication of the objection.

# ARTICLE X
## TERMINATION OF CREDITOR TRUST

10.1    <u>Termination of Creditor Trust</u>.

The Creditor Trustee shall be discharged of his duties, and the Creditor Trust shall be dissolved and terminated on the date on which both (i) the Creditor Trust Assets have been liquidated and (ii) all distributions required to be made by Creditor Trustee to Beneficiaries under this Agreement have been made.

10.2    <u>Five Year Term</u>.

If, after five (5) years from the Effective Date of the Plan, the dissolution and termination of the Creditor Trust has not occurred pursuant to Section 10.1, and the Creditor Trustee determines that the facts and circumstances necessitate an extension of the duration of the Creditor Trust in order to effectuate its purpose, the Creditor Trust may be extended for a period of twelve (12) months. The Creditor Trustee may, upon the expiration of the extended term, seek additional extensions of twelve (12) months if warranted by the facts and circumstances. Any extension of the duration of the Creditor Trust, as provided for herein, shall be subject to approval by the Bankruptcy Court, provided, however, that prior to requesting such extension, the Creditor Trustee must retain an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Creditor Trust as a Grantor Trust for Federal income tax purposes. The Creditor Trustee shall seek approval of any such extension within sixty (60) days of the expiration of the initial five (5) year term or any extension thereof.

10.3    <u>Diligent Administration</u>.

The Creditor Trustee shall: (a) not unduly prolong the duration of the Creditor Trust; (b) at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Creditor Trust Assets; (c) effect the distribution of the Creditor Trust Assets to the Beneficiaries in accordance with the terms hereof; and (d) endeavor to terminate the Creditor Trust as soon as practicable.

# ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    <u>Preservation of Privilege</u>.

In connection with the rights, Claims, and Assigned Causes of Action that constitute the Creditor Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Creditor Trust shall vest in the Creditor Trust and its representatives, and Creditor Trustee is authorized to take all necessary actions to effectuate the transfer of such

privileges.  For the avoidance of doubt, neither the Creditor Trustee nor the Creditor Trust shall be treated as a successor for any purpose to Debtors or their estate.

    11.2   <u>Cooperation</u>.

    With respect to the Assigned Causes of Action, the Reorganized Debtors shall, upon reasonable terms and reasonable notice, (i) respond to the Creditor Trustee's reasonable requests for non-privileged documents related to claims or defenses asserted therein; and (ii) make representatives of the Reorganized Debtors reasonably available for interview and deposition; provided, however, that the Reorganized Debtors shall not be required to incur out-of-pocket costs or maintain personnel on staff in order to satisfy obligations under this section.  It is further understood that this provision does not impose obligations upon the Plan Sponsor, Alder Aqua, Ltd.

    11.3   <u>Implied Authority of Creditor Trustee</u>.

    No person dealing with the Creditor Trust shall be obligated to inquire into the authority of Creditor Trustee in connection with the protection, conservation, or disposition of Creditor Trust Assets.

    11.4   <u>Confidentiality</u>.

    The Creditor Trustee, his employees, any Professionals, and any Non-Professionals hired by such parties (each a "*Confidential Party*" and collectively the "*Confidential Parties*") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any entity to which any of the Creditor Trust Assets relates; *provided, however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, (b) was available to the Confidential Parties on a non-confidential basis prior to its disclosure to the Confidential Parties pursuant to this Agreement, (c) becomes available to the Confidential Parties on a non-confidential basis from a source other than their work in connection with Debtors or the Creditor Trust, *provided that* the source is not also bound by a confidentiality agreement with Debtors or the Creditor Trust or (d) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (d), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Creditor Trustee to allow the Creditor Trustee sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Creditor Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of the Creditor Trustee's objection to such disclosure.

    11.5   <u>Governing Law</u>.

    This Creditor Trust Agreement shall be governed by and construed in accordance with the laws of the State of Iowa, without giving effect to rules governing the conflict of law.

19003453

### 11.6 Jurisdiction.

The Bankruptcy Court shall have exclusive jurisdiction to implement and enforce the terms and provisions of this Agreement.

### 11.7 Severability.

If any provision of this Creditor Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Creditor Trust Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

### 11.8 Notices.

Except as otherwise provided in the Plan, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered via personal delivery, facsimile or e-mail to the address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**Creditor Trustee:**

[CONTACT]

with a copy to:

GOLDSTEIN & MCCLINTOCK LLLP
111 W. Washington St., Suite 1221
Chicago, IL  60602
Phone: (312) 337-7700
Fax: (312) 277-2305
Email: tomf@goldmclaw.com
Attn:  Thomas R. Fawkes, Esq.

### 11.9 Notices if to a Beneficiary.

Except as otherwise provided in the Plan, any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on such Beneficiary's proof of claim or such other notice filed with the Bankruptcy Court and the Creditor Trust, or if none of the above has been filed, to the address set forth in Debtors' Schedules.

### 11.10 Headings.

19003453

The Article headings contained in the Creditor Trust Agreement are solely for the convenience of reference and shall not affect the meaning or interpretation of this Creditor Trust Agreement or of any term or provision hereof.

26

11.11   <u>Amendment or Waiver</u>.

Any substantive provision of this Creditor Trust Agreement may be materially amended or waived with the approval of the Bankruptcy Court; *provided, however,* that no change may be made to this Creditor Trust Agreement that would adversely affect the federal income tax status of the Creditor Trust as a "grantor trust" (in accordance with Section 1.1 hereof), if applicable. Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary, to clarify this Creditor Trust Agreement or to enable the Creditor Trust to effectuate the terms of this Creditor Trust Agreement, with the consent of Creditor Trustee. Notwithstanding this Section 11.11, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Creditor Trust to liquidate in a reasonable and orderly manner the Creditor Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d) and the Plan.

11.12   <u>Counterparts</u>.

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

11.13   <u>Waiver</u>.

No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

11.14   <u>Entire Agreement</u>.

This Agreement and the Plan, as approved by the Confirmation Order, constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations with respect to the subject matter hereof except as set forth herein or therein. This Agreement, together with the Plan and Confirmation Order, supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to such subject matter. Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person other than the parties hereto, and the Beneficiaries any rights or remedies under or by reason of this Agreement.

19003453

11.15   <u>Relationship to the Plan</u>.

The principal purpose of this Agreement is to aid in the implementation of the Plan, and therefore the Plan is hereby incorporated into this Agreement.  To that end, Creditor Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and the Confirmation Order, and to seek any orders from the Court in furtherance of implementation of the Plan and this Agreement.  If any provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control.

11.16   <u>Effective Date</u>.

This Agreement shall become effective as of the Plan Effective Date.

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged this Creditor Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**CREDITOR TRUSTEE**

By:_____

Name:_____

**VEROBLUE FARMS USA, INC., VBF OPERATIONS INC., IOWA'S FIRST, INC., VBF TRANSPORT, INC. AND VBF IP, INC.**

By:_____

Name:_____

Its:_____

28

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

In re:

VeroBlue Farms USA, Inc., *et. al.*,
EIN:

Debtors.

Case No. 18-01297

Chapter 11

## TECHNICAL AMENDMENTS TO JOINT CHAPTER 11 PLAN OF REORGANIZATION OF VEROBLUE FARMS USA, INC. (Doc. 364) and ITS AFFILIATED DEBTORS

### Dated: April 11, 2019

Come now the Debtors in the above cases and hereby makes the following technical amendments to its Joint Chapter 11 Plan (Doc. 364), with a redline copy of the Plan[1] showing these technical amendments as follows:

1. On page 5[2], the fourth use of the word "Plan" in the fourth line of Article 1 is now "plan."

2. On page 6, in the definitions the term "Assigned Consensus of Action" is now titled "Assigned Causes of Action."

3. On page 6, in the definition of Assigned Causes of Action reference to section "8.04(b)" is changed to "8.03(c)."

4. On page 7, the definition of "Buckeye Facility" the word "filed" in the second line of that definition is changed to "Filed."

5. On page 7, in the definition of the word "Business Day" the word "State" in the second line is changed to "state."

6. On page 8, in the definition of "Committee" the [DATE] is now supplemented to read October 24, 2018 (Doc. 88).

7. On page 8, after the definition "Creditor" the following definition is inserted:
   **"Creditor Trust"** means the creditor trust established in the Creditor Trust Agreement attached to the Plan as Exhibit "2."

---

[1] The redline of the Plan including these amendments is attached as Exhibit "A."

[2] All references in this document to the word "page" refer to the pages in Document 364.

8. On page 8, after the inserted definition of **"Creditor Trust"** the following definition is inserted:

> **"Creditor Trust Agreement"** means the agreement attached to this Plan as Exhibit "2."

9. On page 8, after the inserted definition of **"Creditor Trust Agreement"** the following definition is inserted:

> **"Creditor Trust Assets"** means the assets transferred to the Creditor Trust as is set forth in Section 8.03 of this Plan.

10. On page 8, after the inserted definition of **"Creditor Trust Assets"** the following definition is inserted:

> **"Creditor Trustee"** means the trustee named in the Creditor Trust Agreement attached to this Plan as Exhibit "2."

11. On page 8, after the inserted definition of **"Creditor Trustee"** the following definition is inserted:

> **"Creditor Trustee Expenses"** means the expenses incurred by the Creditor Trustee to administer the Creditor Trust consistent with the Creditor Trust Agreement and the provisions of this Plan.

12. On page 8, in the definition of "Debtor Releasees" a comma is inserted after the name, Anders Wester in the eighth line.

13. On page 8, in the definition of "Debtor Releasees" a comma is inserted after the name Robert Goodman, in the last line.

14. On page 9, in the definition of "Effective Date" reference to "Section 10.01" in the second line is changed to "section 11.01."

15. On page 11, in the definition of "Plan Released Parties" in the top line the word "Aquacultur" is changed to "Aquaculture."

16. On page 11, in the definition "Plan Sponsor New Equity Interest" reference to "Section 8.06(a)" is changed to "section 9.06(a)."

17. On page 11, the definition of "Plan Supplement" is deleted in its entirety.

18. On page 11, in the definition of "Professional Fees" the word "Section" is replaced with the word "section".

19. On page 11, in the definition of "Reorganized Debtors' Constituent Documents" the word "document" in the second line is changed to "documents."

20. On page 11, in the definition of "Reorganized VBF USA" the name "VeroBlue Farms USA, Inc." in place of "VBF USA."

21. On page 12, in Paragraph 2.02 in the fourth and fifth lines the words "Section," "Article," "Schedule," and "Exhibit" now are lower case words as they are not defined terms.

22. On page 13, in the full paragraph just above Paragraph 3.02 the word "Section" in the first line is now worded "section" as it is not a defined term.

23. On page 13, in Paragraph 3.04 a comma is inserted after the word "order" in the third line.

24. On page 15, in Paragraph 5.01(i) the number "4" in the fourth line is changed to "four."

25. On page 15, in Paragraph 5.02(1) in the paragraph titled "Restructured Note" the number "3" in the sixth line is changed to "three."

26. On page 16, a comma is inserted after "(b)" in the title to Paragraph 5.03.

27. On page 16, a colon is inserted after the word "shall" in the fifth line of Paragraph 5.03(a)(i).

28. On page 16, "(A)" is inserted in place of "(i)" immediately after the colon referred to in the preceding paragraph.

29. On page 16, "(B)" is inserted in place of "(ii)" in the seventh line of Paragraph 5.03(a)(i).

30. On page 16, the word "four" replaces the numeral "4" immediately after the inserted (B) in the preceding paragraph.

31. On page 16, a colon is inserted after the word "shall" in the fifth line of Paragraph 5.03(b)(i).

32. On page 16, "(A)" is inserted in place of "(i)" immediately after the colon referred to in the preceding paragraph.

33. On page 16, "(B)" is inserted in place of "(ii)" in the seventh line of Paragraph 5.03(b)(i).

34. On page 16, the word "four" replaces the numeral "4" immediately after the inserted (B) in the preceding paragraph.

35. On page 16, a colon is inserted after the word "shall" in the fifth line of Paragraph 5.03(c)(i).

36. On page 16, "(A)" is inserted in place of "(i)" immediately after the colon referred to in the preceding paragraph.

37. On page 16, "(B)" is inserted in place of "(ii)" in the seventh line of Paragraph 5.03(c)(i).

38. On page 16, the word "four" replaces the numeral "4" immediately after the inserted (B) in the preceding paragraph.

39. On page 17, in paragraph 5.05(i) a colon is inserted after the word "to" in the seventh line.

40. On page 17, "(A)" is inserted in place of "(i)" immediately after the colon referred to in the preceding paragraph.

41. On page 17, "(B)" is inserted in place of "(ii)" in the ninth line of Paragraph 5.05(i).

42. On page 17, in paragraph 5.06(ii) the word "Unimpaired" is replaced with "Unimpaired if reinstated and Impaired if cancelled".

43. On page 17, in paragraph 5.06(ii) the phrase "accepted this Plan" is replaced with "accepted this Plan if such Interests are reinstated and to have rejected this Plan if such Interests are cancelled".

44. On page 18, in paragraph 5.07(i) the comma after the word "Date" is deleted.

45. On page 19, in paragraph 6.02 b. the word "Unsecured" in the first line is deleted.

46. On page 19, in paragraph 6.03, subparagraphs "(a)" and "(b)" are relabeled as "a." and "b."

47. On page 20, in paragraph 7.01, a colon is inserted after the word "that" in the second line.

48. On page 20, in paragraph 7.01, subparagraph designations "(i), "(ii) and "(iii)" are replaced with "(a)", "(b)", and "(c)".

49. On page 20, in paragraph 7.02, the word "Section" found in the second and sixth lines is replaced with "section".

50. On page 21, in paragraph 7.03, a colon is inserted after the word "to" in the first line of the second paragraph.

51. On page 21, in paragraph 7.03, a colon is inserted after the word "regarding" in the first line of the third paragraph.

52. On page 21, in paragraph 8.01 the words "Creditor Trust Declaration" are replaced with the words "Creditor Trust Agreement" wherever they appear.

53. On page 22, paragraph 8.03 the word "assets" is replaced with the word "Assets."

54. On page 22, in paragraph 8.03 b.(iv) "9.10" is replaced with "8.11".

55. On page 22, in paragraph 8.03 c. a comma is placed after the word "fees" in the fourth line.

56. On page 22, in paragraph 8.03 c. the word "Holders" in the sixth line is replaced with the word "holders".

57. On page 22, in paragraph 8.04 the words "Net Proceeds" is replaced with the words "net proceeds" in the sixth line.

58. On page 22, in paragraph 8.04 the word "Beneficiaries" is replaced with the word "beneficiaries" in the sixth line.

59. On page 23, in paragraph 8.05 a comma is inserted after the word "under" in the fourth and fifth lines.

60. On page 23, in paragraph 8.05 subparagraph notations "(i)", "(ii)", "(iii)", and "(iv)" are now designated as "(a)", "(b)", "(c)", and "(d)".

61. On page 23, in paragraph 8.06 a comma is inserted after the word "investigators" in the fourth line.

62. On page 23, in paragraph 8.06 the words "or her" are deleted after the word "his" in the fifth line.

63. On page 23, in paragraph 8.06 the word "trustee" is replaced with the word "Trustee" in the seventh line.

64. On page 23, in paragraph 8.07 the word "thirty" is deleted at the beginning of the second line.

65. On page 23, in paragraph 8.07 the subparagraph notations "(i)", "(ii)", and "(iii)" are replaced with "(a)", "(b)" and "(c)".

66. On page 23, in paragraph 8.07 the words "plus in which it falls;" are deleted.

67. On page 24, in paragraph 8.08 the word "estate" is replaced with the word "Estate".

68. On page 24, in paragraph 8.09 the word "shall" is inserted after the word "notice" in the second line and then followed by a colon.

69. On page 24, in paragraph 8.09 the subparagraph notations "(i)" and "(ii)" are replaced with the notations "(a)" and "(b)".

70. On page 24, in paragraph 8.09 the word "shall" is deleted from the first line.

71. On page 24, in paragraph 8.09 the word "Unsecured" is deleted from the second line and seventh line.

72. On page 24, in paragraph 8.11 the word "Persons" is replaced with the word "persons".

73. On page 24, in paragraph 8.11 a comma is inserted after the word "accountants" in the fifth and seventh lines.

74. On page 24, in paragraph 8.11 the words "or its members and" are deleted in the eighth line.

75. On page 24, in paragraph 8.11 a comma is inserted after the word "fees" in the tenth and eleventh lines.

76. On page 24, in paragraph 8.11 the word "its" is replaced with the word "his".

77. On page 24, in paragraph 9.09 in the second to last line "Section 8.09" is replaced with "section 9.09".

78. On page 25, in paragraph 9.02 reference to "Section 8.06" is replaced with "section 9.07."

79. On page 25, in paragraph 9.02 a. the word "order" is replaced with "Final Order."

80. On page 25, in paragraph 9.03 the reference to "Section 8.06" is replaced with "section 9.07."

81. On page 27, in paragraph 9.06 b. the reference to "Section 8.06" is replaced with "section 9.06".

82. On page 27, in paragraph 9.06 c. the reference to "Section 8.06" is replaced with "section 9.06".

83. On page 27, in paragraph 9.07 a. the number "$29,930,000" is replaced with "$30,200,000."

84. On page 27, in paragraph 9.07 a. ii. the number "$350,000" is replaced with "$620,000."

85. On page 28, in the last full paragraph above paragraph 9.08, the word "File" is replaced with the word "file" in the second line.

86. On page 28, in paragraph 9.08 the subparagraph notations "(i)", "(ii)", "(iii)", "(iv)", "(v)" and "(vi)" are" replaced with notations "(a)", "(b)", "(c)", "(d)", "(e)" and "(f)".

87. On page 28, in paragraph 9.09 reference to Section "8.09" is changed to "9.09".

88. On page 29, in paragraph 9.10 the word "estates" in the second line is replaced with the word "Estates."

89. On page 29, in paragraph 9.10 the words "causes of action" in the fifth line are replaced with the words "Causes of Action".

90. On page 29, in paragraph 9.10 the words "schedules filed" in the fifth and sixth lines are replaced with the words "Schedules Filed".

91. On page 29, in paragraph 9.10 the word "filed" in the seventh line is replaced with the word "Filed".

92. On page 29, in paragraph 9.11 b. a comma is inserted after the word "settle" in the first line.

93. On page 29, in paragraph 9.11 f. the word "professionals" is replaced with the word "Professionals."

94. On page 30, in paragraph 9.12, the comma is deleted after the word "Creditors" in the second line and added after the number "3" in the third line.

95. On page 30, in paragraph 9.13, the comma is deleted after the word "release" in the third line and after the word "in" in the sixth line.

96. On page 30, in paragraph 9.13, the subparagraph notations "(1)", "(2)" and "(3)" are replaced with notations "(a)", "(b)" and "(c)".

97. On page 30, in paragraph 11.01 reference to "Section" in the second line is replaced with "section".

98. On page 31, in paragraph 9.14 the word "AND" is inserted after the comma after the word "OFF" in the tenth line.

99. On page 31, in paragraph 9.14 the comma is deleted after the word "RIGHTS" in the tenth line.

100. On page 31, the word "OR" is inserted after the word "LAWS" in the eleventh line.

101. On page 31, a comma is inserted after the word "ASSERTED" twelfth line.

102. On page 31 and on the top of page 32, in paragraph 9.14 the subparagraph notations "(1)", "(2)" and "(3)" are replaced with "(a)", "(b)" and "(c)".

103. On page 32, in the first full paragraph reference to Section "8.14" is replaced with "9.14" each place it appears.

104. On page 32, in the first full paragraph the subparagraph notations "(1)", "(2)", "(3)", "(4)", "(5)" and "(6)" are replaced with "(a)", "(b)", "(c)", "(d)", "(e)" and "(f)".

105. On page 32, in paragraph 9.15 a comma is inserted after the word "RELEASED" in the eighth line.

106. On page 32, in paragraph 9.15 a comma is deleted after the word "EXISTING" in the thirteenth line.

107. On page 33, in the first line a comma is inserted after the word "RULE".

108. On page 33, in the third line reference to SECTION "8.15" is replaced with "9.15."

109. On page 33, in paragraph 9.16 a comma is inserted after the word "Plan" in the fourth line.

110. On page 33, in paragraph 9.16 reference to "Section 8.16" is replaced with "section 9.16."

111. On page 33, in paragraph 9.17 subparagraph notations "(1)", "(2)", "(3)", "(4)", "(5)" and "(6)" are replaced with "(a)", "(b)", "(c)", "(d)", "(e)" and "(f)".

112. On page 33, in paragraph 9.17 the word "or" is deleted in the tenth line.

113. On page 33, in paragraph 9.17 a comma is inserted after the second use of the word "Debtors" in the tenth line.

114. On page 33, in paragraph 9.17 the word "or" is deleted in the twelfth line.

115. On page 33, in paragraph 9.17 a comma is inserted after the second use of the word "Debtors" in the twelfth line.

116. On page 33, in paragraph 9.17 the word "or" is deleted after the word "Estate" in the fifteenth line.

117. On page 34, in the second paragraph of ARTICLE X a colon is inserted after the word "Order" in the first line.

118. On page 34, in the first line of the third paragraph of ARTICLE X a colon is inserted after the word "affect" in the first line.

119. On page 34, in the seventh line of the third paragraph "either:" is inserted after the word "Date".

120. On page 35, in paragraph 11.02 reference to "Section" in the second line is replaced with "section".

121. On page 35, in paragraph 11.03 reference to "Section 10.02" is replaced with "section 11.02".

122. On page 35, in paragraph 11.03 the subparagraph notations "(1)", "(2)" and "(3)" are replaced with "(a)", "(b)" and "(c)".

123. On page 36, the word "to" is inserted after the word "or" in ARTICLE XII
subparagraph f.

124. On page 36, the comma after the word "Plan" in the third line of paragraph
13.01 is deleted.

125. On page 38, in paragraph 13.07 the word "State" in the fourth line is
replaced with the word "state".

ELDERKIN & PIRNIE, PLC


By:  /s/ Dan Childers
      Dan Childers
      316 Second Street SE, Suite 124
      P.O. Box 1968
      Cedar Rapids, IA  52401
      Telephone: (319) 362-2137
      Facsimile: (319) 362-1640
      Email: dchilders@elderkinpirnie.com
      ATTORNEY FOR DEBTOR


AG & BUSINESS LEGAL STRATEGIES


By:  /s/ Joseph A. Peiffer
      Joseph A. Peiffer
      P.O. Box 11425
      Cedar Rapids, IA 52410-1425
      1350 Boyson Road, Suite A-1
      Hiawatha, IA 52233-2211
      Telephone: (319) 363-1641
      Facsimile: (319) 200-2059
      Email:  joe@ablsonline.com
      ATTORNEY FOR DEBTOR

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of April 2019, a copy of the foregoing document was filed with the Clerk of Court for the United States Bankruptcy Court for the Northern District of Iowa using the CM/ECF system and served electronically on those participants that receive service through the CM/ECF System. The undersigned further certifies the foregoing document was sent to persons or representatives via electronic mail or U.S. Mail postage pre-paid as set forth below.

Signed:  /s/ Hannah Hanser

| | |
|---|---|
| Phillip L. Sheets, Ltd.<br>c/o Phillip Sheets<br>7632 Jefferson Rd<br>Belleville, IL 62221 | William John Turk<br>5621 Valhalla Drive<br>North Richland Hills, TX 76180 |
| McDonald Supply/Hajoca Corp<br>c/o Alysia Hedrick<br>P.O. Box 708<br>Dubuque, IA 52004-0708 | Elizabeth M. Lally<br>17838 Burke Street, Suite 250<br>Omaha, NE 68118 |
| Laura M. Hyer<br>Bradley & Riley PC<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 | Joseph E. Schmall<br>Bradley & Riley<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 |
| Eric W. Lam<br>Simmons Perrine Moyer Bergman PLC<br>115 Third Street SE, Suite 1200<br>Cedar Rapids, IA 52401 | |

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

In re:

VeroBlue Farms USA, Inc., *et. al.*,
EIN:

Debtors.

Case No. 18-01297

Chapter 11

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF VEROBLUE FARMS USA, INC. AND ITS AFFILIATED DEBTORS

Dated: March 13, 2019

Dan Childers
Elderkin & Pirnie, PLC
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Telephone: (319) 362-2137
Facsimile: (319) 362-1640
Email:  dchilders@elderkinpirnie.com

Joseph A. Peiffer
Ag & Business Legal Strategies
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

**Attorneys for the Debtors**

Exhibit "A"

# TABLE OF CONTENTS

**Page**

ARTICLE I        INTRODUCTION ..................................................................... 1

ARTICLE II       DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION
                 OF TIME.............................................................................. 1

2.01   Definitions............................................................................ 1

2.02   Rules of Interpretation ......................................................... 8

2.03   Computation of Time ........................................................... 8

ARTICLE III      TREATMENT OF UNCLASSIFIED CLAIMS........................... 8

3.01   Administrative Expense Claims............................................ 8

3.02   DIP Facility Claim ............................................................... 9

3.03   Professional Fee Claims....................................................... 9

3.04   Post-Effective Date Professional Fees ................................. 9

3.05   Priority Tax Claims.............................................................. 9

3.06   Statutory Fees...................................................................... 10

ARTICLE IV       DESIGNATION OF CLASSES ............................................. 10

4.01   Classification...................................................................... 10

ARTICLE V        TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS................. 11

5.01   Class 1: Priority Non-Tax Claims ....................................... 11

5.02   Class 2: Broadmoor Secured Claim .................................... 11

5.03   Class 3(a), (b) and (c):  Secured Tax Claims ...................... 12

       5.03(a) Class 3(a): Secured Tax Claim—Hamilton County Treasurer (Ur-
               ban Farm) ................................................................. 12

       5.03(b) Class 3(b): Secured Tax Claim—Hamilton County Treasurer
               (Blairsburg Facility)................................................... 12

       5.03(c) Class 3(c): Secured Tax Claim—Hardin County Treasurer (Buck-
               eye Facility) .............................................................. 12

5.04   Class 4: Additional Secured Claim—Card Services............................. 13

5.05   Class 5: General Unsecured Claims..................................... 13

5.06   Class 6: Intercompany Interests .......................................... 13

5.07   Class 7: Interests in VBF USA ........................................... 14

5.08   Cramdown............................................................................ 14

ARTICLE VI       PROVISIONS REGARDING RESOLUTION OF CLAIMS AND
                 DISTRIBUTIONS UNDER THE PLAN .................................. 14

-i-

Exhibit "A"

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 6.01 | Method of Distributions Under the Plan | 14 |
| 6.02 | Claims Objections | 15 |
| 6.03 | Disputed Claims | 15 |
| 6.04 | Claims Estimation | 16 |
| 6.05 | Claims Allowance | 16 |
| ARTICLE VII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 16 |
| 7.01 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 16 |
| 7.02 | Rejection Damages Claims | 16 |
| 7.03 | Assumed Contracts; Cure of Defaults | 17 |
| ARTICLE VIII | UNSECURED CREDITOR TRUST | 18 |
| 8.01 | Unsecured Creditor Trust Declaration | 18 |
| 8.02 | Unsecured Creditor Trustee | 18 |
| 8.03 | Vesting of Assets | 18 |
| 8.04 | Creditor Trust Asset Administration | 19 |
| 8.05 | Case Administration | 19 |
| 8.06 | Creditor Trustee's Professionals | 19 |
| 8.07 | Quarterly Reports | 19 |
| 8.08 | Representative of Estate | 20 |
| 8.09 | Cooperation Regarding Assigned Causes of Action | 20 |
| 8.10 | Compensation of Creditor Trustee and Professionals | 20 |
| 8.11 | Exculpation | 20 |
| ARTICLE IX | OTHER MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN | 21 |
| 9.01 | Term of Bankruptcy Injunction or Stays | 21 |
| 9.02 | Consummation of the Plan | 21 |
| 9.03 | Sources of Cash for Plan Distributions | 21 |
| 9.04 | Compromise of Controversies | 21 |
| 9.05 | Effect of Plan on Undersecured Creditors | 21 |
| 9.06 | Effect of Plan on Debtors | 22 |
| 9.07 | Issuance of the Plan Sponsor New Equity Interest | 23 |

Exhibit "A"

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 9.08 | Plan Transactions | 24 |
| 9.09 | Cancellation of Unexercised and Unvested Interests | 24 |
| 9.10 | Preservation of Causes of Action | 25 |
| 9.11 | Powers and Duties of Reorganized Debtors | 25 |
| 9.12 | Default Remedies | 26 |
| 9.13 | Discharge | 26 |
| 9.14 | Debtor Releases | 27 |
| 9.15 | Releases by Holders of Claims and Interests | 28 |
| 9.16 | Exculpation | 29 |
| 9.17 | Injunction on Claims | 29 |
| ARTICLE X | SUBSTANTIVE CONSOLIDATION OF THE DEBTORS | 30 |
| ARTICLE XI | EFFECTIVENESS OF THE PLAN | 31 |
| 11.01 | Conditions Precedent to Effectiveness | 31 |
| 11.02 | Waiver of Conditions Precedent | 31 |
| 11.03 | Effect of Non-Occurrence of Effective Date | 31 |
| ARTICLE XII | RETENTION OF JURISDICTION | 31 |
| ARTICLE XIII | MISCELLANEOUS PROVISIONS | 32 |
| 13.01 | Aid in Implementation of Plan | 32 |
| 13.02 | Amendment or Modification of the Plan | 33 |
| 13.03 | Severability | 33 |
| 13.04 | Revocation or Withdrawal of the Plan | 33 |
| 13.05 | Binding Effect | 33 |
| 13.06 | Notices | 33 |
| 13.07 | Governing Law | 34 |
| 13.08 | Allocation of Plan Distributions Between Principal and Interest | 34 |

Exhibit "A"

.

## AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF VEROBLUE FARMS USA, INC. AND ITS AFFILIATED DEBTORS

## ARTICLE I
## INTRODUCTION

Pursuant to Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), VeroBlue Farms USA, Inc. ("**VBF USA**"), VBF Operations Inc., Iowa's First, Inc., VBF Transport, Inc., and VBF IP, Inc. (the "**Debtors**") propose the following Amended Joint Chapter 11 Plan of Reorganization (the "**Plan**"). This Plan revises the ~~p~~Plan filed on December 10, 2018 (Doc. 191). Holders of Claims and Interests should refer to the Disclosure Statement accompanying this Plan for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and liquidation analysis, as well as a summary and description of the Plan.[1]

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

### 2.01 **Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"**Additional Secured Claim**" means any Secured Claim other than the Broadmoor Secured Claim, the Secured Claim held by the Plan Sponsor arising from the Broadmoor Loan, or a Secured Tax Claim.

"**Administrative Expense Claim**" means any right to payment constituting a cost or expense of the Chapter 11 Cases under sections 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business or liquidation of their assets, any Professional Fee Claim, and any fees or charges assessed against the Estate under section 1930 of Title 28 of the United States Code.

"**Allowed**" means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim (a) for which a Proof of Claim was timely Filed with the Bankruptcy Court, and as to which no Claims Objection is interposed; (b) for which no Proof of Claim thereof was Filed, to the extent that such Claim has been listed by the respective Debtor in its Schedules as liquidated in amount and not disputed or contingent as to liability, and as to which no Claims Objection is interposed; (c) which arises from the recovery of property under sections 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

---

[1]All capitalized terms shall have meaning set forth in Article II of this Plan.

Exhibit "A"

"**Allowed Additional Secured Claim**" means an Additional Secured Claim that is Allowed.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is Allowed.

"**Allowed Claim"** means a Claim that is Allowed.

"**Allowed General Unsecured Claim**" means a General Unsecured Claim that is Allowed.

"**Allowed Interest**" means an Interest that is Allowed.

"**Allowed Priority Non-Tax Claim**" means a Priority Non-Tax Claim that is Allowed.

"**Allowed Priority Tax Claim**" means a Priority Tax Claim that is Allowed.

"**Allowed Professional Fee Claim**" means a Professional Fee Claim that is Allowed.

"**Allowed Secured Claim**" means a Secured Claim that is Allowed.

"**Allowed Secured Tax Claim**" means a Secured Tax Claim that is Allowed.

"**Assigned C~~auses~~onsensus of Action**" has the meaning ascribed thereto in section 8.0~~3~~4(c~~b~~) of the Plan

"**Assumed Contracts**" means those Executory Contracts and unexpired leases of the Debtors assumed pursuant to Article VII of this Plan.

"**Avoidance Claims**" means any and all rights, claims, Causes of Action, or rights to avoid any transfer or incurrence of debt that may be asserted or recovered by each Debtor in its capacity as debtor-in-possession pursuant to Chapter 5 of the Bankruptcy Code.

"**Bankruptcy Code**" shall have the meaning set forth in Article I of this Plan.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Iowa.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases.

"**Blairsburg Facility**" means the facility located at 2567 190th Street, Blairsburg, IA 50034, as described in more detail in Schedule A-1, attached to the Schedules Filed by Iowa's First, Inc.

"**Broadmoor**" means Broadmoor Financial, L.P., a Kansas limited partnership.

"**Broadmoor Deficiency Claim**" means Broadmoor's Allowed General Unsecured Claim equal, as of the Effective Date, to the amount the Debtors owe to Broadmoor pursuant to the

2

Broadmoor Loan, including any interest and fees accrued thereunder, less the amount of the Broad-moor Secured Claim.

"**Broadmoor Loan**" means the loan issued from Amstar Group, LLC and the Plan Sponsor to VBF Operations Inc. and Iowa's First, Inc., as borrowers, a portion of which was subsequently assigned from Amstar Group, LLC to Broadmoor, in the outstanding amount as of the Petition Date of $53,803,271.65.

"**Broadmoor Secured Claim**" means the Allowed Secured Claim held by Broadmoor in the amount of $11,025,000 arising from the Broadmoor Loan.

"**Buckeye Facility**" means the facility located in Radcliffe, Iowa, as described in more detail in Schedule A-2, attached to the Schedules Filed by Iowa's First, Inc.

"**Business Day**" means any day other than a Saturday, Sunday, or any legal holiday under federal law or the state of Iowa.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, in law, equity, or otherwise.

"**Chapter 11 Case(s)**" or "**Case(s)**" means the substantively consolidated chapter 11 cases commenced by the Debtors and jointly administered under case number 18-01297 in the Bankruptcy Court.

"**Claim**" has the meaning set forth in section 101(5) of the Bankruptcy Code.

"**Claims Objection**" means any objection, application, motion, complaint, or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim) or Interest.

"**Claims Register**" means the official register of Claims against and Interests in the Debtors.

"**Class**" means a class of Claims or Interests as classified under this Plan.

"**Collateral**" means any property or interest in property of the Estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"**Confirmation**" means entry of the Confirmation Order by the Bankruptcy Court.

Exhibit "A"

"**Committee**" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases on October 24, 2018 (Doc.88)[DATE], which appointment was amended on January 7, 2019.

"**Confirmation Hearing**" means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, including any continuances thereof.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

"**Consummation**" means the occurrence of the Effective Date.

"**Creditor**" has the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

"**Creditor Trust**" means the creditor trust established in Creditor Trust Agreement attached to the Plan as Exhibit "2."

"**Creditor Trust Agreement**" means the agreement attached to this Plan as Exhibit "2."

"**Creditor Trust Assets**" means the assets transferred to the Creditor Trust as is set forth in section 8.03 of this Plan.

"**Creditor Trustee**" means the trustee named in the Creditor Trust Agreement attached to this Plan as Exhibit "2."

"**Creditor Trustee Expenses**" means the expenses incurred by the Creditor Trustee to administer the Creditor Trust consistent with the Creditor Trust Agreement and the provisions of this Plan.

"**Debtor Releasees**" means each of the other Debtors, the Estate, the Reorganized Debtors, the Plan Sponsor, and each of the foregoing Entities' respective current and former officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, insurance providers, and other professionals and representatives, and each of their direct and indirect shareholders' and owners' respective officers, directors, members, employees, partners, managers, advisors, attorneys, financial advisors, investment bankers, accountants, and other professionals and representatives, including, without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, Anders Wester, and Norman McCowan. Notwithstanding the immediately preceding sentence, Debtor Releasees does not include Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth A. Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman, or any affiliate of the foregoing.

"**Debtors**" shall have the meaning set forth in Article I of this Plan.

4

Exhibit "A"

"**DIP Credit Agreement**" means that certain Debtor-in-Possession Credit Agreement, dated as of September 21, 2018 by and among the Debtors and the Plan Sponsor, and all exhibits, amendments, and supplements thereto.

"**DIP Facility**" means the debtor-in-possession financing provided to the Debtors during the Chapter 11 Cases pursuant to the DIP Credit Agreement.

"**DIP Facility Claims**" means all Claims held by the Plan Sponsor, or its successor or assignee, arising under or relating to the DIP Facilities, whether pursuant to the DIP Credit Agreement, the Final DIP Order, or otherwise.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or in part, by a Final Order; (b) has been withdrawn by agreement between the Debtors and the holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent, or unliquidated and in respect of which a Proof of Claim has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code, or any Final Order; (e) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the Filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court, or which is required to be Filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly Filed. In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

"**Disallowed Claim**" means a Claim that is Disallowed.

"**Disclosure Statement**" means the disclosure statement for the Plan, as it may be amended, supplemented, or modified from time to time, that is prepared and distributed in accordance with sections 1125, 1126(b), or 1145 of the Bankruptcy Code or Bankruptcy Rule 3018.

"**Disputed Claim**" means any Claim as to which a Claims Objection is pending, Filed, or contemplated by the Debtors or the Reorganized Debtors, as applicable.

"**Distribution**" means any payment of Cash or issuances of ownership interests in any Reorganized Debtor called for under the Plan.

"**Effective Date**" means the first day after the conditions to effectiveness of the Plan provided in sSection 110.01 hereof have been satisfied.

"**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

"**Estate**" means the substantively consolidated estates of each Debtor created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code and a Final Order.

"**Exculpated Party**" means the Debtors, the Plan Sponsor, Broadmoor, the Committee, and any of their respective members, partners, officers, directors, employees, advisors, attorneys, professionals, insurance providers, or agents and advisors of any of the foregoing, including,

Exhibit "A"

without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, and Anders Wester.

"**Executory Contract**" means a contract to which one or more of the Debtors are party that is considered an executory contract under the Bankruptcy Code and applicable case law.

"**Federal Judgment Rate**" means the interest rate provided for in 28 U.S.C. § 1961(a).

"**File**" or "**Filed**" means file or filed on the Claims Register or the docket of the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"**Final DIP Order**" means the Final Order approving the DIP Facility.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing, in form and substance, satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

"**General Unsecured Claim**" means any unsecured Claim other than a Priority Tax Claim, Priority Non-Tax Claim, or Administrative Expense Claim.

"**Impaired**" means impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Impaired Claim**" means a Claim that is Impaired.

"**Impaired Class**" means a Class containing Claims or Interests that are Impaired.

"**Intercompany Claims**" means any Claim held by one of the Debtors against any other Debtor, including (a) any account reflecting intercompany book entries by a Debtor with respect to any other Debtor, (b) any Claim not reflected in book entries that is held by such Debtor against any other Debtor or Debtors, and (c) any Claim derivatively asserted or assertible by or on behalf of a Debtor against any other Debtor or Debtors.

"**Intercompany Interests**" means any Interest held by one of the Debtors in any other Debtor.

"**Interest**" means any equity or ownership interests in and with respect to the Debtors, including any warrants, options, or contract rights to purchase or acquire such interests at any time.

"**Lien**" has the meaning set forth in section 101(37) of the Bankruptcy Code.

6

Exhibit "A"

"**Lists of Holders of Interests**" means the lists of equity security holders and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Petition Date**" means September 21, 2018.

"**Plan**" means this Chapter 11 plan, either in its present form or as the same may be altered, amended, or modified from time to time, and including the Plan Supplement.

"**Plan Released Parties**" means each of the Debtors, the Plan Sponsor, and any of their respective members, partners, officers, directors, employees, advisors, attorneys, professionals, or agents and advisors of any of the foregoing, including, without limitation, Eva Ebstein, Jens Haarkoetter, Ed Kerzner, Alan Sutherland, Björn Thelander, Anders Wester and Norman McCowan. For clarity and notwithstanding the foregoing sentence, Plan Released Parties do not include Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partnership, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman or any affiliate of the foregoing.

"**Plan Sponsor**" means Alder Aqua, Ltd. or its successor or assignee.

"**Plan Sponsor New Equity Interest**" means 100% of the new equity interests of the Reorganized VBF USA issued to the Plan Sponsor pursuant to ~~s~~Section 9~~8~~.06(a).

~~"**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to be Filed on or before 14 days prior to the deadline for the holders of Claims and Interests to vote on the Plan that supplements the Plan.~~

"**Post-Petition Interest**" means simple interest per annum at the Federal Judgment Rate, based on a 360-day year for the period from the Petition Date to, but excluding, the Effective Date.

"**Priority Non-Tax Claim**" means any Claim entitled to priority under section 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim for Professional Fees.

"**Professional Fees**" shall have the meaning set forth in ~~s~~Section 3.03 of this Plan.

"**Professionals**" means the professionals retained by the Debtors under Bankruptcy Code sections 327 or 1103 and to be compensated pursuant to Bankruptcy Code sections 327, 328, 330, 331, or 503(b)(2), (4), or (5).

"**Proof of Claim**" means a proof of claim Filed in connection with any of the Chapter 11 Cases.

"**Reorganized Debtors**" means the Debtors as reorganized as of the Effective Date.

Exhibit "A"

"**Reorganized Debtors' Constituent Documents**" means on or after the Effective Date, the governing documents of each Reorganized Debtor, each in form and substance satisfactory to the Debtors and the Plan Sponsor.

"**Reorganized V~~eroBlue Farms~~BF USA, Inc.**" means VBF USA as reorganized as of the Effective Date.

"**Schedules**" means, collectively, the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs.

"**Schedules of Assets and Liabilities**" means the schedules of assets and liabilities and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Secured Claim**" means a Claim that is secured by a Lien on property in which the Debtors' Estate has an interest, which lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

"**Secured Tax Claim**" means any Claim of a governmental unit for taxes owed by any of the Debtors that is secured by Lien.

"**Securities Exchange Act**" means the Securities and Exchange Act of 1934, as amended, codified at 15 U.S.C. § 78a *et seq*.

"**Statements of Financial Affairs**" means the statement of finical affairs and any amendments thereto the Debtors Filed in accordance with Bankruptcy Rule 1007.

"**Unimpaired**" means a Claim, Interest, or Class thereof that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Urban Farm**" means the facility located at 401 Des Moines Street, Webster City, IA 50595, as described in more detail in Schedule A-3, attached to the Schedules Filed by Iowa's First, Inc.

"**U.S. Trustee**" means the Office of the United States Trustee for Region XII.

2.02 **Rules of Interpretation**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective ~~s~~Section in, ~~a~~Article of, ~~s~~Schedule to, or ~~e~~Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is

8

not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

### 2.03 **Computation of Time**

In computing any period of time prescribed or Allowed by the Plan, the provisions of Rule 9006(a) of the Bankruptcy Rules shall apply.

**ARTICLE III**
**TREATMENT OF UNCLASSIFIED CLAIMS**

### 3.01 **Administrative Expense Claims**

Any party who claims to hold an Administrative Expense Claim (other than a Claim for Professional Fees) must File a motion seeking allowance of such Administrative Expense Claim on or before the date that is 28 days after the Effective Date, regardless of whether or not such party has previously asserted an Administrative Expense Claim in a Proof of Claim. Except to the extent any Entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim (other than a Claim for Professional Fees) shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim by the later of either (i) the Effective Date or as soon thereafter as is reasonably practicable, or (ii) the date that is 14 days after the Administrative Expense Claim becomes an Allowed Administrative Expense Claim.

Notwithstanding the foregoing sSection 3.01, upon the Effective Date, the Plan Sponsor's Allowed Administrative Expense Claim, other than the DIP Facility Claim, shall be fully satisfied by the Distribution of the Plan Sponsor New Equity Interest.

### 3.02 **DIP Facility Claim**

On the Effective Date, the DIP Facility Claim shall be deemed to be an Allowed Claim and, at the election of the Plan Sponsor, fully and finally satisfied by the Distribution of the Plan Sponsor New Equity Interest.  If the Plan Sponsor does not so elect, the DIP Facility Claim shall be paid in full in Cash on the Effective Date.

### 3.03 **Professional Fee Claims**

All Professionals seeking payment of Professional Fees or reimbursement of expenses incurred through and including the Effective Date under sections 503(b)(2), (3), (4) or (5) of the Bankruptcy Code ("**Professional Fees**") must File their respective final applications on or before the date that is 45 days after the Effective Date. Except to the extent that the holder of a Professional Fee Claim agrees to different treatment, each holder of an Allowed Professional Fee Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Claim as soon as practicable after such Claim is Allowed by the Bankruptcy Court.

9

### 3.04 **Post-Effective Date Professional Fees**

From and after the Effective Date, the Reorganized Debtors shall pay in Cash the reasonable fees and expenses incurred by the Reorganized Debtors' respective professionals, if any, without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, following the Effective Date, any requirement that a Professional comply with sections 327 through 331 of the Bankruptcy Code in seeking compensation for services rendered to the Debtors after such date shall terminate.

### 3.05 **Priority Tax Claims**

Except to the extent a holder of an Allowed Priority Tax Claim agrees to different treatment, the holder of such Claim shall receive, in full and final satisfaction of such Claim, a Distribution equal to the amount of the Allowed Priority Tax Claim as of the Effective Date either (i) in Cash on the Effective Date or (ii) in installment payments over a period of time not to exceed 5 years after the Petition Date, pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.

### 3.06 **Statutory Fees**

On the Effective Date, the Debtors shall make all payments required to be paid to the U.S. Trustee pursuant to section 1930 of Title 28 of the United States Code. All fees payable pursuant to section 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Reorganized Debtors on a quarterly basis until the Chapter 11 Case is closed, converted, or dismissed.

### ARTICLE IV
### DESIGNATION OF CLASSES

### 4.01 **Classification**

Claims and Interests are classified for all purposes, including voting, Confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| 1 | Priority Non-Tax Claim | Yes | Yes |
| 2 | Broadmoor Secured Claim | Yes | Yes |
| 3(a) | Secured Tax Claims—Hamilton County Treasurer (Urban Farm) | Yes | Yes |

10

Exhibit "A"

| 3(b) | Secured Tax Claims—Hamilton County Treasurer (Blairsburg Facility) | Yes | Yes |
|---|---|---|---|
| 3(c) | Secured Tax Claims—Hardin County Treasurer (Buckeye Facility) | Yes | Yes |
| 4 | Additional Secured Claim—Card Services | Yes | Yes |
| 5 | General Unsecured Claims | Yes | Yes |
| 6 | Intercompany Interests | No | No |
| 7 | Interests in VBF USA | Yes | No |

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### 5.01 **Class 1: Priority Non-Tax Claims**

(i)    *Treatment*: Unless the holder agrees otherwise, commencing on or as soon as practicable after the Effective Date or the date its Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, four4 quarterly payments totaling a value equal to the amount of such Allowed Priority Non-Tax Claim as of the Effective Date plus Post-Petition Interest where required under applicable law.

(ii)   *Voting*: The Claims in Class 1 are Impaired.  The holders of Allowed Priority Non-Tax Claim are entitled to vote to accept or reject this Plan.

### 5.02 **Class 2: Broadmoor Secured Claim**

(i)    *Treatment*:  The Broadmoor Secured Claim shall be treated as follows:

Restructured Note.  On the Effective Date, the Reorganized Debtors shall deliver to Broadmoor a note in the principal amount of $11,025,000, with interest accruing at the rate of 3% per annum.  The Reorganized Debtors shall make monthly payments of interest only until the first anniversary of the Effective Date.  On the first anniversary of the Effective Date, a principal payment of $6,000,000 shall be due.  Thereafter, the remaining balance shall be amortized in equal quarterly payments for three3 years, with final maturity on the fourth anniversary of the Effective Date.  The Reorganized Debtors shall have the right to pre-pay the note in whole or in part.

11

Exhibit "A"

Lien.  Broadmoor shall retain its Lien on the Collateral to secure the principal and interest due and payable pursuant to the note described in the preceding paragraph, with such Lien attaching to the Collateral in the same priority as prior to the Petition Date.  Upon payment of the principal and interest under the note described in the preceding paragraph, Broad-moor shall release its Liens.

Participation.  The sum of $5,025,000, representing the portion of the Broadmoor Loan allocated to the Collateral in which the Plan Sponsor, as participant, holds a first security interest, shall be payable to the Plan Sponsor on terms to be agreed upon by the Plan Spon-sor and Broadmoor.

Restated Loan Documents.  In the Plan Supplement, the Debtors may submit an amended and restated note and security documents, acceptable to Broadmoor, regarding the Broad-moor Secured Claim.

Broadmoor Deficiency Claim.  The Broadmoor Deficiency Claim shall be a Class 5 Gen-eral Unsecured Claim.

(ii)  *Voting*:  The Claim in Class 2 is Impaired.  Broadmoor, as the holder of the Broadmoor Secured Claim, is entitled to vote to accept or reject the Plan.

### 5.03 **Class 3(a), (b), and (c):  Secured Tax Claims**

### 5.03(a) **Class 3(a): Secured Tax Claim—Hamilton County Treasurer (Urban Farm)**

(i)  *Treatment*: Unless the Hamilton County Treasurer agrees otherwise, as relates to its Claim secured by an interest in the Urban Farm, commencing on or as soon as practicable after the Effective Date or the date the aforementioned Secured Tax Claim becomes an Allowed Secured Tax Claim, the Hamilton County Treasurer, in full and final satisfaction of such Claim, shall: (A~i~) retain its Lien on the Urban Farm in an amount equal to the value of such Claim, with the Lien attaching to the Urban Farm in the same relative priority as existed immediately prior to the Petition Date, and (B~ii~) four~4~ quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)  *Voting*: The Claim in Class 3(a) is Impaired. Hamilton County Treasurer is entitled to vote to accept or reject the Plan.

### 5.03(b) **Class 3(b): Secured Tax Claim—Hamilton County Treasurer (Blairsburg Fa-cility)**

(i)  *Treatment*: Unless Hamilton County Treasurer agrees otherwise, as relates to its Claim secured by an interest in the Blairsburg Facility, commencing on or as soon as practicable after the Effective Date or the date the aforementioned Secured Tax Claim becomes an Allowed Secured Tax Claim, Hamilton County Treasurer, in full and final satisfaction of such Claim, shall: (A~i~) retain its Lien on the Blairsburg Facility in an amount equal to the value of such Claim, with the Lien attaching to the Blairsburg Facility in the same relative priority as existed immediately prior to the Petition Date, and (B~ii~) four~4~ quarterly

Exhibit "A"

payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)  *Voting*: The Claim in Class 3(b) is Impaired. Hamilton County Treasurer is entitled to vote to accept or reject the Plan.

### 5.03(c)  **Class 3(c): Secured Tax Claim—Hardin County Treasurer (Buckeye Facility)**

(i)  *Treatment*: Unless Hardin County Treasurer agrees otherwise, commencing on or as soon as practicable after the Effective Date or the date its Additional Secured Claim becomes an Allowed Additional Secured Claim, Hardin County Treasurer, in full and final satisfaction of such Claim, shall: (Ai) retain its Lien on the Collateral in an amount equal to the value of such Claim, with the Lien attaching to the Collateral in the same relative priority as existed immediately prior to the Petition Date, and (Bii) receive four4 quarterly payments totaling a value, as of the Effective Date, equal to the amount of its Allowed Secured Tax Claim plus Post-Petition Interest where required under applicable law.

(ii)  *Voting*: The Claim in Class 3(c) is Impaired. Hardin County Treasurer is entitled to vote to accept or reject the Plan.

### 5.04  **Class 4: Additional Secured Claim—Card Services**

(i)  *Treatment*: Unless Card Services agrees otherwise, on the Effective Date, in full and final satisfaction of its Additional Secured Claim, it will be entitled to offset the amount of its Allowed Additional Secured Claim as of the Effective Date, plus Post-Petition Interest where required under applicable law, against the balance of the Certificate of Deposit at UMB Kansas City, Missouri, Cert. No. 21853261020. The balance of the Certificate of Deposit not offset, shall be returned to the Debtor without penalty for early surrender.

(ii)  *Voting*: The Claim in Class 4(b) is Impaired. Card services is entitled to vote to accept or reject the Plan.

### 5.05  **Class 5: General Unsecured Claims**

(i)  *Treatment*: Allowed Class 5 Claims shall be paid pro rata in accordance with this Plan and the Creditor Trust Agreement. In accordance with the Creditor Trust Agreement, the Creditor Trust assets shall be deposited in the Creditor Trust on the Effective Date. The Creditor Trustee shall liquidate the Creditor Trust Assets, as applicable, and distribute the Net Proceeds from time to time on dates determined by the Creditor Trustee within a reasonable time after the creation of appropriate reserves as determined by the Creditor Trustee in an amount that would be sufficient to: (Ai) make a pro rata distribution on account of Disputed Class 5 Claims that become Allowed Class 5 Claims; and (Bii) pay the Creditor Trustee's Expenses in full.

Provided that no challenge has been initiated to the Broadmoor Secured Claim, or the liens securing it, and no action has been brought against Broadmoor as of the Effective Date, and further provided that Class 5 votes to accept the Plan and the Effective Date occur on or before May 5, 2019, Broadmoor shall be deemed to waive Distribution on account of

13

Exhibit "A"

the Broadmoor Deficiency Claim. Broadmoor retains its right to vote the Broadmoor Deficiency Claim as a Class 5 General Unsecured Claim and all other rights.

(ii) *Voting*: The Claims in Class 5 are Impaired. The holders of Allowed General Unsecured Claims against any of the Debtors, including the Broadmoor Deficiency Claim, are entitled to vote to accept or reject this Plan.

### 5.06 **Class 6: Intercompany Interests**

(i) *Treatment*: Intercompany Interests shall be cancelled or reinstated, as determined by the Debtors with the consent of the Plan Sponsor.

(ii) *Voting*: Interests in Class 6 are Unimpaired if reinstated and Impaired if cancelled. The holders of Intercompany Interests are conclusively presumed to have accepted this Plan if such Interests are reinstated and to have rejected this Plan if such Interests are cancelled pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject this Plan.

### 5.07 **Class 7: Interests in VBF USA**

(i) *Treatment*: All Interests in VBF USA shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests.

(ii) *Voting*: Interests in Class 7 are Impaired. The holders of these Interests are conclusively deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject this Plan.

### 5.08 **Cramdown**

If any Class fails to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any Class that is Impaired and votes not to accept the Plan.

### ARTICLE VI
### PROVISIONS REGARDING RESOLUTION OF CLAIMS AND DISTRIBUTIONS UNDER THE PLAN

### 6.01 **Method of Distributions Under the Plan**

a. In General

Subject to Bankruptcy Rule 9010, all Distributions under the Plan shall be made to the holders of each Allowed Claim at the address of such holder as listed on the Schedules or Proof of Claim, as applicable.

b. Distributions of Cash

14

Exhibit "A"

Any Distributions made after the Effective Date under the Plan shall be made by the Reorganized Debtors or the Creditor Trustee (as to Class 5 Claims). Such Distributions shall be made by check unless a different method of payment is agreed upon between the individual Creditors and the Reorganized Debtors or the Creditor Trustee (as applicable). All checks for Distribution shall be negotiated within 120 days of the date of such check, after which such check shall be void. The holder of an Allowed Claim or Interest that does not negotiate payment within the 120-day period shall have 1 year after the check becomes void to assert payment on account of its Claim pursuant to this Plan, after which time its Claim shall be reduced to zero. At such time, the Reorganized Debtors or the Creditor Trustee (as applicable), shall no longer be obligated to reserve for such Claim or make any further Distributions in respect of such Claim.

Notwithstanding any other provision of this Plan, the Debtors, Reorganized Debtors, or the Creditor Trustee shall not be required to, but may in their discretion, make Distributions to any holder of a Claim in an amount less than $25. In addition, the Debtors, Reorganized Debtors, or the Creditor Trustee shall not be required to, but may in their discretion, make any payment on account of any Claim if the costs of making such payment exceeds the amount of such payment.

     c.    <u>Timing of Distributions</u>

Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

     d.    <u>Tax Withholding</u>

Distributions to holders of Allowed Claims and Interests shall be net of amounts required to be withheld pursuant to applicable state and federal wage or backup withholding requirements. In order to receive a Distribution, a holder of an Allowed Claim must provide the Debtors or Reorganized Debtors or the Creditor Trustee, as applicable, with a completed Department of Treasury Internal Revenue Service Form W-9.

**6.02 Claims Objections**

     a.    After the Effective Date, Claims Objections may be made, and Claims Objections made previous thereto shall be pursued, only by the Reorganized Debtors (or, as to Class 5 Claims only, by the Unsecured Creditor Trustee). The deadline for the Reorganized Debtors to File Claims Objections shall be 180 days after the Effective Date, subject to extension by motion to the Bankruptcy Court. After the Effective Date, the Reorganized Debtors shall, without further order of the Bankruptcy Court, have the right to retain and compensate counsel or other professionals to assist with Claims Objections or any other duties of the Reorganized Debtors under the Plan.

     b.    After the Effective Date, the Reorganized Debtors (or ~~Unsecured~~ Creditor Trustee as applicable) may settle any Disputed Claims where the proposed Allowed Claim is to be less than $25,000 without notice and a hearing and without an order of the Bankruptcy Court. All other settlements shall be subject to notice and a hearing pursuant to section 102(1) of the Bankruptcy Code and Bankruptcy Rule 9019.

Exhibit "A"

### 6.03 **Disputed Claims**

(a.)   Claims other than Class 5 Claims.

If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim. If any Distribution is made while there is an extant Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Disputed Claim is Allowed or Disallowed. If the Claim is Allowed, the holder of the Allowed Claim shall receive its withheld Distribution. If the Claim is Disallowed, then any Distribution that was withheld with respect to such Claim shall be released to the Reorganized Debtors.

(b.)   Class 5 Claims

If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim.  In the event a Distribution is made while there is a Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be withheld until the Claim is Allowed or Disallowed.  If the Claim is Allowed, the Holder of the Allowed Claim will receive its withheld Distribution

### 6.04 **Claims Estimation**

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such Claims Objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any Claims Objection, including during the pendency of any appeal relating to any such Claims Objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Allowed Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism pursuant to this Plan or approved by the Bankruptcy Court.

### 6.05 **Claims Allowance**

Except as expressly provided in the Plan or any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors shall have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date. All Claims of any Entity, subject to section 502(d) of the Bankruptcy Code, shall be deemed Disallowed as of the Effective Date unless and until such Entity pays in full the amount that it owes the Debtors.

Exhibit "A"

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01  **Assumption or Rejection of Executory Contracts and Unexpired Leases**

Any Executory Contract or unexpired lease that has not expired by its own terms on or prior to the Effective Date and that: (a~i~) the Debtors have not assumed, assigned, or rejected with the approval of the Bankruptcy Court, (b~ii~) is not identified as an Assumed Contract, and (c~iii~) is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtors, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

### 7.02  **Rejection Damages Claims**

With respect to Claims arising from the rejection of Executory Contracts or unexpired leases pursuant to s~S~ection 7.01 of this Plan, the bar date to File Proofs of Claim in these Cases shall be reopened for a period of 28 days after the Effective Date, and all such Proofs of Claim must be Filed with the Bankruptcy Court during that time. Any such Claim that is Allowed by the Bankruptcy Court shall be treated as a Class 5 General Unsecured Claim. Any Claim arising from the rejection of an Executory Contract or unexpired lease pursuant to S~s~ection 7.01 of this Plan for which a Proof of Claim is not timely Filed within that time period shall be a Disallowed Claim and shall further forever be barred from assertion against the Estate, the Debtors, the Reorganized Debtors, their successors and assigns, or their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

### 7.03  **Assumed Contracts; Cure of Defaults**

Any monetary amounts by which each Executory Contract or unexpired lease to be assumed is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each such Assumed Contract may otherwise agree. The Plan Supplement shall include the list of Assumed Contracts to be assumed by the Reorganized Debtors pursuant to the Plan. The Plan Supplement shall identify the Executory Contracts and unexpired contracts sought to be assumed, the counterparties thereto, and the proposed cure payments as of the projected Effective Date, and upon filing shall be served upon any affected counterparty in accordance with the Bankruptcy Rules. The Debtors reserve the right to remove Executory Contracts or unexpired leases from such list or to modify the cure amounts executed in connection therewith at any time prior to the Confirmation Hearing.

Any objection to: (a) the amount of any cure payments for the Assumed Contracts, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or lease to be assumed, or (c) any other matter pertaining to assumption, shall be Filed and served on the Debtors on or before the deadline established by the Bankruptcy Court for filing objections to the Plan. If an objection is Filed, the Debtors shall attempt to resolve such objection prior to the Confirmation Hearing. If the parties are unable to consensually resolve such objection prior to the Confirmation

Exhibit "A"

Hearing, such objection and any cure amounts to be paid shall be determined at the Confirmation Hearing or as otherwise agreed to by the parties or ordered by the Bankruptcy Court.

If a dispute remains unresolved as of the Effective Date regarding: (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made within a reasonable time following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such dispute, the Executory Contract at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court. However, any such "deemed" assumption shall not affect any counterparty's rights or remedies under section 365 of the Bankruptcy Code or otherwise, which shall be preserved pending final resolution notwithstanding the "deemed" assumption.

## ARTICLE VIII
## CREDITOR TRUST

### 8.01 **Creditor Trust AgreementDeclaration**

The Creditor Trust will be formed as of the Effective Date and shall be governed by the Creditor Trust DeclarationAgreement, substantially in the form filed herewith as **Exhibit 2**.

### 8.02 **Creditor Trustee**

[Mark Iammarto of Development Specialists, Inc.] shall be appointed as Creditor Trustee.

### 8.03 **Vesting of Assets**

On the Effective Date, the Creditor Trustee Aassets shall be transferred to and vest in the Creditor Trust and be deemed contributed thereto, subject to the terms of the Plan. The Creditor Trust Assets include:

a. Cash in the amount of $620,000;

b. all Avoidance Claims, except any claims arising against any of the following persons or entities:

   (i) Debtor Released Parties;

   (ii) Plan Released Parties;

   (iii) any professional retained by the Debtors pursuant to section 327 of the Bankruptcy Code or as an ordinary course professional;

   (iv) the persons or entities expressly identified in section 8.119.10 of the Plan; or

18

Exhibit "A"

        (v)      Pranger Industries, Inc., and such others to be agreed upon with the Creditor Trustee.

      c.      all Causes of Action held by the Debtors' estates against Rick Sheriff, or any of his affiliates, provided, however, that the Reorganized Debtors shall be entitled to 33 1/3% of Cash recoveries received by the Creditor Trust on account of such Causes of Action (net of attorneys' fees, expert fees, and other out-of-pocket costs) (with the Causes of Action described in (b) and (c) collectively defined as the "*Assigned Causes of Action*").  For the avoidance of doubt, all Creditor Trust Assets shall be held by the Creditor Trust solely in trust for the Holders of Allowed Class 5 Claims and shall not be deemed property of the Debtors (except the Reorganized Debtors' right to participate in the recoveries of the Rick Sheriff Causes of Action).  The Debtors are hereby authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Creditor Trust Assets to the Creditor Trust, subject to oversight from the Creditor Trustee, as applicable.

### 8.04  **Creditor Trust Asset Administration**

The Creditor Trustee shall administer the Creditor Trust Assets pursuant to the Plan and the Creditor Trust Agreement from and after the Effective Date.  As more fully set forth in the Creditor Trust Agreement, the Creditor Trustee shall be responsible for, *inter alia*, liquidating the Creditor Trust Assets, analyzing and reconciling Claims (including filing and pursuing objections to the extent required), pursuing the Assigned Causes of Action, making distributions of the Net Proceeds to the Beneficiaries of the Creditor Trust, maintaining and administering reserves for Disputed Claims and Claims of Creditors that may be the subject of Avoidance Claims, paying Trustee's Expenses, preparing and filing post-Effective Date operating reports, and all other activities typically related to trust administration.

### 8.05  **Case Administration**

From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Creditor Trustee shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases.  In addition to the foregoing, for all matters arising in, arising under, or related to the Chapter 11 Cases, the Creditor Trustee shall: (a) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, including, but not limited to, adversary proceedings; (b) be entitled to notice and opportunity for hearing; (c) have exclusive standing (including derivative standing on behalf of the Debtors) to commence and prosecute the Assigned Causes of Action; and (d) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Cases.

### 8.06  **Creditor Trustee's Professionals**

Upon the acceptance by the Creditor Trustee or his or her appointment in accordance with this Plan and the Creditor Trust Agreement, the Creditor Trustee may, without the need for Bankruptcy Court approval, retain such law firms, accounting firms, experts, advisors,

Exhibit "A"

consultants, investigators, or other Professionals as it may deem necessary, in accordance with the Creditor Trust Agreement, to aid in the performance of his ~~or her~~ responsibilities pursuant to the terms of the Plan, including, without limitation, the liquidation and distribution of the Creditor Trust Assets.  The Professionals retained by the Creditor T~~t~~rustee are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of any party in this Case, and the Creditor Trustee shall be permitted to retain any such Professional in light of the efficiencies implicit in continuity.

### 8.07 **Quarterly Reports**

The Creditor Trustee shall prepare and file with the Bankruptcy Court a report within ~~thirty~~ (30) days after the conclusion of every calendar quarter setting forth: (~~a~~i) all distributions in Class 5 Creditors during the calendar year; (~~b~~ii) a summary of the Creditor Trust deposits and disbursements during the calendar quarter; and (~~c~~iii) a summary of the Creditor Trust Assets.  As used in this section, "calendar quarter" shall mean a three-month period of time, and the first calendar quarter shall commence on the first day of the first quarter immediately following the occurrence of the Effective Date. To the extent the Effective Date does not fall on the first day of a calendar quarter, the first quarterly report shall include the period from (x) the Effective Date through the conclusion of the calendar quarter in which it falls ~~plus in which it falls;~~ plus (y) the succeeding calendar quarter.

### 8.08 **Representative of Estate**

For purposes of the Assigned Causes of Action, the Creditor Trustee shall be deemed the representative of the ~~E~~estate pursuant to section 1123(b)(3)(B) and may not further transfer any of the Assigned Causes of Action.

### 8.09 **Cooperation Regarding Assigned Causes of Action**

With respect to the Assigned Causes of Action, the Reorganized Debtors ~~shall~~, upon reasonable terms and reasonable notice shall~~:~~ (~~a~~i) respond to the ~~Unsecured~~ Creditor Trustee's reasonable requests for non-privileged documents related to claims or defenses asserted therein; and (~~b~~ii) make representatives of the Reorganized Debtors reasonably available for interview and deposition; provided, however, that the Reorganized Debtors shall not be required to incur out-of-pocket costs or maintain personnel on staff in order to satisfy obligations under this section.  Following the Effective Date, the ~~Unsecured~~ Creditor Trustee shall have sole authority and discretion to investigate, commence, prosecute and resolve the Assigned Causes of Action.  It is further understood that this provision does not impose obligations upon the Plan Sponsor.

### 8.10 **Compensation of Creditor Trustee and Professionals.**

The Creditor Trustee and any professionals retained by the Creditor Trustee are entitled to reasonable compensation at their standard rates.  When seeking payment, the Creditor Trustee or the relevant professional shall provide a copy of the statement to reorganized Debtors.  If no written objection to the payment request is received within 10 days, then the sum requested shall be promptly paid.  Any objection shall specify the amount objected to and reasons.  If an objection is made, the undisputed amount shall be promptly paid.  If the parties are unable to resolve any remaining disputes, the Bankruptcy Court shall resolve the dispute upon notice and a hearing.

Exhibit "A"

8.11 **Exculpation**

Neither the Creditor Trustee nor its designees, retained professionals or any duly desig-
nated agent or representative shall be liable for anything other than such pPerson's own acts as
shall constitute willful misconduct or gross negligence in the performance (or nonperformance) of
its duties, or acts contrary to the express terms of this Plan. The Creditor Trustee may, in connec-
tion with the performance of its functions, consult with counsel, accountants, and its agents, and
may reasonably rely upon advice or opinions received in the course of such consultation. If the
Creditor Trustee determines not to consult with counsel, accountants, or its agents, such determi-
nation shall not in itself be deemed to impose any liability on the Creditor Trustee, or its members
and/or its designees. The Creditor Trustee shall indemnify the Creditor Trustee for any and all
damages, fees, and expenses incurred in connection with these Cases or this Plan; except that the
Creditor Trustee shall not be indemnified from damages, fees, or expenses arising from hisits gross
negligence or willful misconduct.

**ARTICLE IX**
**OTHER MEANS FOR IMPLEMENTATION AND**
**EFFECT OF CONFIRMATION OF PLAN**

9.01 **Term of Bankruptcy Injunction or Stays**

Except as otherwise expressly provided in the Plan, all injunctions or stays provided for in
these Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as
of the date of entry of the Confirmation Order, shall remain in full force and effect until the closing
of these Chapter 11 Cases.

9.02 **Consummation of the Plan**

This Plan implements a comprehensive restructuring of the Debtors through the capital
infusion from the Plan Sponsor as provided in sSection 9.078.06. Conditions to Consummation of
the Plan are:

a.    Entry of an order confirming this Plan in form and substance acceptable to Plan
Sponsor; and

b.    The Final Orderorder confirming the Plan is not subject to a stay and has not been
reversed or modified on appeal.

9.03 **Sources of Cash for Plan Distributions**

Except as otherwise provided for in this Plan or the Confirmation Order, all Cash required
for Distributions shall come from the equity contribution as provided in sSection 9.078.06.

9.04 **Compromise of Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in con-
sideration for the classification, Distributions, releases, and other benefits provided under this Plan,
upon the Effective Date, the provisions of this Plan shall constitute a good-faith compromise and

21

settlement of Claims and Interests and controversies resolved pursuant to this Plan. Distributions made to holders of Allowed Claims in any Class are intended to be final.

### 9.05 **Effect of Plan on Undersecured Creditors**

Wastewater Technologies claims a mechanic's lien on the Urban Farms located in Webster City, Hamilton County, Iowa posted on April 23, 2018 as MNLR#015380-0. Midwest Manure Management, Inc. filed a mechanic's lien on the Buckeye Facility, located in Rural Radcliffe, Hardin County, Iowa posted on March 22, 2018 as MNLR#015124-0. Broadmoor's claim is secured by a first mortgage lien on all the bankruptcy estate's real estate, specifically including the real estate owned by Iowa's First, Inc. and scheduled on schedule A-3 and A-2 as the Urban Farms and the Buckeye Facility respectively. Copies of Schedules A-2 and A-3 are attached to this Plan as Exhibit "1" for clarity. The undisputed debt owed to Broadmoor is in excess of $53,000,000.00. Therefore, pursuant to 11 U.S.C. § 506(a)(1) the mechanic's liens of Wastewater Technologies and Midwest Manure Management, Inc. shall be void upon the confirmation of the Plan.

### 9.06 **Effect of Plan on Debtors**

a.      Interests in Reorganized Debtors and Continued Existence

Except as otherwise provided in this Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entities with all of the powers available to such legal entity under applicable law and pursuant to the Reorganized Debtors' Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law, and such Reorganized Debtor's Constituent Documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter; or (v) the reincorporation of a Reorganized Debtor under the law of a jurisdiction other than the law under which the Debtor currently is incorporated.

On the Effective Date, the ownership interests in VBF USA shall be cancelled. After giving effect to such cancellation, the Plan Sponsor shall be issued 100% of the ownership interests in Reorganized VBF USA. The ownership interests in the foregoing Reorganized Debtors shall have the rights, privileges, limitations, and restrictions set forth in the Reorganized Debtors' Constituent Documents of each respective Reorganized Debtor, as set forth in the Plan Supplement.

b.      Governance and Corporate Action

On and after the Effective Date, the Reorganized Debtors shall be managed by and under the direction of their respective boards of directors, as such boards of directors may be constituted from time to time under the Reorganized Debtors' Constituent Documents and applicable non-bankruptcy law. The Plan Sponsor shall have the right to appoint the board of directors of the

22

Exhibit "A"

Reorganized Debtors. The identities and affiliations of the initial officers and directors of the Re-organized Debtors shall be set forth in the Plan Supplement.

On and after the Effective Date, all actions contemplated by this Plan shall be deemed authorized, approved, and directed in all respects, including: (i) selection of the directors and officers of the Reorganized Debtors; (ii) the issuance of the Plan Sponsor New Equity Interests; and (iii) all other actions contemplated by this Plan (whether to occur before, on, or after the Effective Date) and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.

All matters provided for in this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the members, directors, or officers of the Debtors or the Reorganized Debtors or otherwise. On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, certificates of incorporation, operating agreements, and instruments contemplated by this Plan (or necessary or desirable to effect the transactions contemplated by this Plan) in the name of and on behalf of the Reorganized Debtors, including the Plan Sponsor New Equity Interests and any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by this sSection 98.06 shall be effective notwithstanding any requirements under non-bankruptcy law.

c.    Vesting of Assets

Except as otherwise provided in this Plan, on and after the Effective Date, all assets of the Estate, including all claims, rights, and Causes of Action, and any property acquired by the Debtors under or in connection with this Plan, shall vest in each respective Reorganized Debtor (or the Creditor Trust as it relates to the Creditor Trust Assets) free and clear of all Claims, Liens, charges, other encumbrances, and interests. Subject to the terms of this Plan, on and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property and prosecute, compromise, or, subject to sSection 6.02(b), settle any Claims, including any Administrative Expense Claims, and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

9.07 **Issuance of the Plan Sponsor New Equity Interest**

a.    The Plan is to be funded through an equity contribution by the Plan Sponsor. As set forth in the Disclosure Statement, the equity contribution is intended to be an amount up to $30,200,00029,930,000 as follows:

i. $2,000,000    This amount shall be used to pay for Chapter 11 Case costs and shall be advanced during the Chapter 11 Cases under the DIP Facility. This amount is based on the 13-week cash flow projections, and is intended to cover, among other things, operations and

Exhibit "A"

advisor costs during that time.

ii. $620,000  This amount shall be used to fund Distributions to holders of Allowed General Unsecured Claims. The amount is subject to adjustment.

iii. $6,180,000  This amount shall be used to pay for interest and principal payments to Broadmoor.  The interest is calculated for a 12-month period.

iv. $21,400,000  This amount shall be used to pay for capital investments for the Debtors' retrofit and additional working capital.

b.  In exchange for the Plan Sponsor's investment of equity necessary to make the payments required on the Effective Date of the Plan, the Plan Sponsor shall receive the Plan Sponsor New Equity Interest. The Plan Sponsor New Equity Interest shall be authorized under the Reorganized Debtors' Constituent Documents and issued to the Plan Sponsor on the Effective Date. The Plan Sponsor New Equity Interest issuable in accordance with this Plan, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable. The issuance of the Plan Sponsor New Equity Interest is authorized without the need for any further corporate action and without any further action by any holder of a Claim or Interest.

The Reorganized Debtors shall not be reporting companies under the Securities Exchange Act, and the Reorganized Debtors shall not be required to, and shall not, File reports with the SEC or any other governmental entity after the Effective Date. To prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, the Reorganized Debtors' Constituent Documents may impose certain trading restrictions, and the Plan Sponsor New Equity Interest shall be subject to certain transfer and other restrictions pursuant to the Reorganized Debtors' Constituent Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.

### 9.08 **Plan Transactions**

On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtors and the Reorganized Debtors (as applicable), are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the terms of this Plan, including, without limitation: (a) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms for which the applicable parties agree; (c) rejection or assumption, as applicable, of Executory Contracts or unexpired lease; (d) the filing or execution of appropriate certificates or articles of incorporation or organization, reincorporation, merger, consolidation, conversion, or dissolution, and bylaws; (e) execution of the Creditor Trust Agreement and any other documents reasonably necessary to effectuate the transfer of the Creditor Trust Assets to the Creditor Trust; and (f) all other actions that the Debtors or

Reorganized Debtors determine to be necessary or appropriate, including making filings or record-ings that may be required by applicable law.

### 9.09 **Cancellation of Unexercised and Unvested Interests**

On the Effective Date, any contingent or unexercised option, warrant, or right, contractual or otherwise, to acquire or be awarded any Interest shall be cancelled without the exchange of any similar interest in any Debtor or Reorganized Debtor, or other form of consideration. Any Proof of Claim Filed on account of Interests cancelled by this sSection 98.09 shall be Disallowed and the Claims Register shall be adjusted to reflect such disallowance.

### 9.10 **Preservation of Causes of Action**

(a) Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a release, waiver, or relinquishment of any Causes of Action. Avoidance Claims shall be preserved for the benefit of the Unsecured Creditors Trust, to the extent that they constitute Assigned Causes of Action. All other Avoidance Claims against a person or entity not released under the terms of the Plan shall be preserved and may be asserted by the Reorganized Debtors as representative of the Eestates as provided in section 1123(b)(3)(B). The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Causes of Action that the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, including all Ceauses of Aaction set forth in their Sschedules Ffiled as Docs. 47 through 52 as well as the amendments to those Sschedules Ffiled as Docs. 299 & 300, another amendment to be Ffiled after the date hereof and all the Reorganized Debtors' legal and equitable rights respecting any Claim that are not specifically waived or relin-quished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Assigned Causes of Action may be asserted on behalf of the Unsecured Creditor Trust.

(b) Without limiting the foregoing, all Avoidance Claims and Causes of Action against the following persons or entities are preserved, not assigned to the Creditor Trust, and may be asserted by the Reorganized Debtors:   Leslie A. Wulf, Bruce A. Hall, James Rea, John E. Rea, Keith Driver, Kenneth A. Lockard, Terry Lyon, Gregg Sedun, Sean Maniaci, Cassels Brock Blackwell, Jackson Walker, Cannacord Genuity, Steve Lobb, Mark Nelson, Jeff Nelson, SNB Farms Partner-ship, Opposing Flows Aquaculture, Inc., William Turk, Robert Goodman or any affiliate of any of the foregoing. Avoidance Claims and Causes of Action preserved include Causes of Action as-serted (or which could be asserted) by VBF USA in the case captioned *VeroBlue Farms USA, Inc. v. Wulf, et al*, Case No. 3:18:03047 (N.D. Iowa).

### 9.11 **Powers and Duties of Reorganized Debtors**

In addition to any other powers described in the Plan, the powers and duties of the Reor-ganized Debtors consist of the following:

a.      To take control of, preserve, and operate property of the Estate, subject to the terms of the Plan;

25

b.      To investigate and prosecute, settle, or abandon all Causes of Action belonging to or assertible by the Estate;

c.      To review, object to, seek equitable subordination of, or seek any other remedy with respect to Claims Filed against the Debtors;

d.      To abandon, discontinue, dismiss, amend, settle, compromise, negotiate, or otherwise resolve all disputes, including all Causes of Action and Claims Objections Filed by the Debtors;

e.      To make Distributions on account of all Allowed Claims and Interests consistent with the terms of this Plan;

f.      To retain Entities and Professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

g.      To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

h.      To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including Professional Fees incurred after the Effective Date;

i.      To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

j.      To effectuate any of the provisions in this Plan;

k.      To ask the Bankruptcy Court to enter the final decree; and

l.      To execute all documents appropriate to convey assets of the Estate consistent with the terms of this Plan.

## 9.12 **Default Remedies**

If the Reorganized Debtors fail to comply with any of their obligations under the Plan, Creditors or Interest holders, as applicable, shall move for relief in the Bankruptcy Court to enforce the terms of the Plan; provided, however, the creditors holding Class 2, 3, or 4 Allowed Secured Claims may enforce their rights in the event of default under applicable law without prior relief in the Bankruptcy Court.

## 9.13 **Discharge**

Except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of Claims, Interests, and Causes of Action of any nature whatsoever by any Entity, including any interest accrued on any Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtors, the Estate, or

any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of any Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a~~1~~) a Proof of Claim based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b~~2~~) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c~~3~~) the holder of such a Claim or Interest has accepted the Plan, effective as of the Effective Date. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, the Confirmation Order shall be a judicial determination of the complete and full discharge of all Claims and Interests by any Entity, subject to the Effective Date occurring. Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all property of the Estate shall vest in the Reorganized Debtors, free and clear of all Claims and Interests of any Entity and with the full and complete discharge of any and all Claims, Interests, or Causes of Action of any Entity.

9.14 **Debtor Releases**

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, AS OF THE EFFECTIVE DATE, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR RELEASEES ARE DEEMED RELEASED AND DISCHARGED BY EACH OF THE DEBTORS, EACH OF THE REORGANIZED DEBTORS, THE ESTATE, AND ANY ENTITY SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SET-OFF, AND OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR AVOIDANCE CLAIMS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED, OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED ON BEHALF OF THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, THE CONDUCT OF THE DEBTORS' BUSINESSES, THE IN-COURT OR OUT-OF-COURT EFFORTS TO RESTRUCTURE OR LIQUIDATE THE DEBTORS,**

27

THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGO-
TIATION, OR FILING OF THE DISCLOSURE STATEMENT OR PLAN (INCLUDING
THE PLAN SUPPLEMENT) OR ANY CONTRACT, INSTRUMENT, RELEASE, OR
OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNEC-
TION WITH OR PURSUANT TO THE DISCLOSURE STATEMENT, OR THE PLAN
(INCLUDING THE PLAN SUPPLEMENT), THE FILING AND PROSECUTION OF THE
CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CON-
SUMMATION, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS
GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS
PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE
DEBTORS, THE REORGANIZED DEBTORS, OR THE ESTATE, ON THE ONE HAND,
AND ANY DEBTOR RELEASEE, ON THE OTHER HAND, PREPETITION CON-
TRACTS AND AGREEMENTS WITH ANY DEBTOR, OR ANY OTHER ACT OR OMIS-
SION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING
PLACE BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THE
FOREGOING PROVISIONS OF THE DEBTOR RELEASES SHALL NOT OPERATE TO
WAIVE OR RELEASE (a1) ANY CAUSES OF ACTION ARISING FROM FRAUD,
GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL
ORDER OR ANY OTHER COURT OF COMPETENT JURISDICTION; (b2) ANY
CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THIS PLAN
OR THE PLAN SUPPLEMENT; OR (c3) THE RIGHT OF THE DEBTORS OR REOR-
GANIZED DEBTORS TO ENFORCE THIS PLAN AND THE CONTRACTS, INSTRU-
MENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED
UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS
PLAN OR ASSUMED PURSUANT TO A FINAL ORDER.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANK-
RUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE
RELEASES SET FORTH IN THIS SECTION 98.14, WHICH INCLUDES BY REFER-
ENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED
HEREIN, AND FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S
FINDING THAT SUCH RELEASES ARE: (a1) IN EXCHANGE FOR THE GOOD AND
VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASEES; (b2) A
GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY
THIS SECTION 98.14; (c3) IN THE BEST INTERESTS OF THE DEBTORS AND THE
ESTATE; (d4) FAIR, EQUITABLE, AND REASONABLE; (e5) GIVEN AND MADE AF-
TER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (f6) A BAR TO ANY
ENTITY ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED BY THIS
SECTION 98.14.

9.15 **Releases by Holders of Claims and Interests**

UPON THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERA-
TION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE
HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS THAT RE-
CEIVES A PAYMENT OR DISTRIBUTION UNDER THE PLAN, AND EACH OF SUCH
HOLDERS' PREDECESSORS, SUCCESSORS, ASSIGNS, AND EACH OF THEIR

Exhibit "A"

**PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, AND AGENTS (ACTING IN SUCH CAPACITY) SHALL BE DEEMED TO HAVE WAIVED, RELEASED, VOIDED, AND DISCHARGED THE PLAN RELEASED PARTIES FROM ANY AND ALL CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, JUDGMENTS, OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE PLAN RELEASED PARTIES' OBLIGATIONS UNDER THIS PLAN) WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING, OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, (INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY THE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVATIVELY) OF THE DEBTORS, THE ESTATE, THE REORGANIZED DEBTORS, EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS, AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS, AND AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE, OR THE VOTE, CONSENT, OR AUTHORIZATION OR APPROVAL OF ANY ENTITY. NOTWITHSTANDING ANYTHING IN THIS SECTION 9.15 THAT COULD BE CONSTRUED TO THE CONTRARY, BROADMOOR RETAINS ALL CLAIMS AND RIGHTS AGAINST ALDER AQUA, LTD AND ALDER AQUA, LTD RETAINS ALL CLAIMS AND RIGHTS AGAINST BROADMOOR PURSUANT TO THE PARTIES' PARTICIPATION AGREEMENT.**

9.16 **Exculpation**

None of the Exculpated Parties shall have or incur any liability to any Entity for any act taken or omitted to be taken in connection with and subsequent to the commencement of the Chapter 11 Cases, the formulation, preparation, dissemination, implementation, solicitation of votes, Confirmation, or approval of the Plan, or any compromises or settlements contained therein, the administration of the Plan or Distributions under the Plan, the Disclosure Statement, and any ancillary documents related thereto or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan; provided, however, the foregoing provisions of this Section 9.16 shall not affect the liability of any Exculpated Party that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct, and in all respects the Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

29

### 9.17 **Injunction on Claims**

Except as otherwise expressly provided in the Plan, the Confirmation Order, or any other order of the Bankruptcy Court that may be applicable, all holders of Claims or other debt or liability that is treated under the Plan or Interest or other right of interest that is terminated or cancelled pursuant to the Plan are permanently enjoined, from and after the Effective Date, from (a1) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or other debt or liability or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan against the Debtors, the Estate, or the Reorganized Debtors or any properties or interest in properties of the Debtors or the Reorganized Debtors; (b2) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors, the Estate, or the Reorganized Debtors, or any properties or interest in properties of the Debtors or the Reorganized Debtors; (c3) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Estate, or the Reorganized Debtors, or any properties or interest in properties of the Debtors or Reorganized Debtors; (d4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtors, the Estate, or the Reorganized Debtors, or any properties or interest in properties of the Debtors or the Reorganized Debtors; (e5) acting or proceeding in any manner that does not conform to or comply with the provisions of the Plan; and (f6) taking any actions to interfere with the implementation or Consummation of the Plan, with respect to any such Claim or other debt or liability that is discharged or Interest or other right of equity interest that is terminated or cancelled pursuant to the Plan.

### ARTICLE X
### SUBSTANTIVE CONSOLIDATION OF THE DEBTORS

For purposes of voting on, Confirmation of, and Distributions to be made to holders of Allowed Claims under this Plan, this Plan is predicated upon, and it is a condition precedent to Confirmation of this Plan, that the Bankruptcy Court enter an order providing for the consolidation of the estates of the Debtors into a single estate for purposes of this Plan, the Confirmation hereof, and Distributions hereunder.

Pursuant to the Confirmation Order: (1) all assets and liabilities of the consolidated Debtors shall be deemed to be merged solely for purposes of Distributions to be made hereunder, (2) the obligations of each Debtor shall be deemed to be the obligation of the consolidated Debtors solely for purposes of Distributions hereunder, (3) any Claims Filed or to be Filed in connection with any such obligations shall be deemed Claims against the consolidated Debtors, (4) each Claim Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against the Debtors in the consolidated Chapter 11 Cases in accordance with the limited consolidation of the assets and liabilities of the Debtors, (5) all transfers, disbursements, and Distributions made by any Debtor hereunder shall be deemed to be made by the consolidated Debtors, and (6) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors. Holders of Allowed Claims in each Class shall be entitled to their share of assets available for Distribution to such Class without regard to which Debtor was originally liable for such Claim. Intercompany Interests shall be treated as provided in Class 6 of this Plan.

Exhibit "A"

Notwithstanding the foregoing, such limited consolidation shall not affect: (1) the legal and corporate structure of the Reorganized Debtors, (2) any obligations under any contracts or leases that were entered into during the Chapter 11 Cases or Executory Contracts or unexpired leases that have been or shall be assumed pursuant to this Plan, (3) distributions from any insurance policies or proceeds of such policies, (4) the revesting of assets in the separate Reorganized Debtors pursuant to Article VIII of this Plan, or (5) guarantees that are required to be maintained post-Effective Date either: (a) in connection with Executory Contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or shall hereunder be, assumed or (b) pursuant to the express terms of this Plan. The consolidation proposed herein shall not affect each Debtor's obligation to File the necessary operating reports and pay any required fees pursuant to 28 U.S.C. § 1930(a)(6), which obligation shall continue until a Final Order is entered closing, dismissing, or converting each such Debtor's Chapter 11 Case.

### ARTICLE XI
### EFFECTIVENESS OF THE PLAN

#### 11.01 **Conditions Precedent to Effectiveness**

The Plan shall not become effective unless and until the following have been satisfied, or waived in accordance with Section 11.02 below:

a.  A Final Order directing the substantive consolidation of the Debtors' estates for purposes of Distributions shall have been entered and remain in full force and effect.

b.  The Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Plan Sponsor, shall have been entered by the Bankruptcy Court;

c.  There is no stay or injunction in effect with respect to the Confirmation Order; and

d.  14 days shall have passed since the Confirmation Order has been entered by the Bankruptcy Court.

#### 11.02 **Waiver of Conditions Precedent**

Only the Debtors, with the approval of the Plan Sponsor, may waive the conditions listed in Section 11.01 above, and such waiver may be without notice to parties in interest or the Bankruptcy Court and without a hearing.

#### 11.03 **Effect of Non-Occurrence of Effective Date**

If the conditions to the occurrence of the Effective Date have not been timely satisfied or waived pursuant to Section 11.02, and upon notification Filed by the Debtors with the Bankruptcy Court, the Confirmation Order shall be vacated and the Debtors and all parties in interest shall be restored to the *status quo ante*. If the Confirmation Order is vacated, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect.

31

## ARTICLE XII
## <u>RETENTION OF JURISDICTION</u>

If permitted under applicable law, the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      To determine pending applications for the assumption or rejection of Executory Contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

b.      To determine any and all adversary proceedings, applications, and contested matters;

c.      To determine any Claims Objections and Administrative Expense Claims;

d.      To approve settlements between the Reorganized Debtors and the holder of a Disputed Claim, if Bankruptcy Court approval is necessary under the terms of the Plan;

e.      To issue such orders in aid of execution and Consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

f.      To consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

g.      To determine all applications for compensation and reimbursement of expenses of Professionals under sections 330, 331, and 503(b) of the Bankruptcy Code;

h.      To determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

i.      To determine disputes arising in connection with the recovery of all assets of the Debtors and property of the Estate, wherever located;

j.      To determine matters concerning taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

k.      To determine any other matter not inconsistent with the Bankruptcy Code; and

l.      To enter a final decree closing the Chapter 11 Cases.

Exhibit "A"

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### 13.01 **Aid in Implementation of Plan**

The Bankruptcy Court may direct the Reorganized Debtors, the Debtors, and any other Entity to execute or deliver or to join the execution or delivery of any instrument required to effectuate the Plan, and to perform any other act necessary to consummate the Plan.

### 13.02 **Amendment or Modification of the Plan**

Alterations, amendments, or modifications of the Plan may be proposed in writing by the Debtors at any time before entry of the Confirmation Order, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended, or modified at any time after entry of the Confirmation Order and before substantial Consummation, provided that the Plan as altered, amended, or modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

### 13.03 **Severability**

If the Bankruptcy Court determines, before entry of the Confirmation Order, that any provision in the Plan is invalid, void, or unenforceable, such provision shall be invalid, void, or unenforceable with respect to the holder or holders of such Claims or Interests as to which the provision is determined to be invalid, void, or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

### 13.04 **Revocation or Withdrawal of the Plan**

The Debtors shall have the right to revoke or withdraw the Plan before entry of the Confirmation Order. If the Debtors revoke or withdraw the Plan, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

### 13.05 **Binding Effect**

The Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and Interests and their respective successors and assigns.

Exhibit "A"

13.06 **Notices**

To be effective, all notices, requests, and demands to or upon the Debtors or the Reorganized Debtors shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when it arrives at the following mailing addresses or, in the case of notice by electronic mail, when the electronic mail is received by the following electronic mail accounts:

> *If to the Debtors:*
> VeroBlue Farms USA, Inc.
> 401 Des Moines Street
> Webster City, IA 50595
> Attention:    Norman McCowan
>                     Chief Executive Officer
> Email:  norman.mccowan@verobluefarms.com
>
> Copies to:
>
> Joseph A. Peiffer
> Ag & Business Legal Strategies
> P.O. Box 11425
> Cedar Rapids, IA 52410-1425
> Email:  joe@ablsonline.com
>
> Dan Childers
> Elderkin & Pirnie, PLC
> 316 Second Street SE, Suite 124
> P.O. Box 1968
> Cedar Rapids, IA  52401
> Email:  dchilders@elderkinpirnie.com

13.07 **Governing Law**

Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the sState of Iowa without giving effect to the principles of conflicts of law of such jurisdiction.

13.08 **Allocation of Plan Distributions Between Principal and Interest**

If any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

Dated the date set forth above.

Exhibit "A"

VEROBLUE FARMS USA, INC.
on behalf of itself and its substantively con-
solidated debtors

By: /s/ Norman McCowan
      Norman McCowan
      Chief Executive Officer

ELDERKIN & PIRNIE, PLC

By: /s/ Dan Childers
      Dan Childers
      Attorney for Debtor

AG & BUSINESS LEGAL STRATEGIES

By: /s/ Joseph A. Peiffer
      Joseph A. Peiffer

      Attorney for Debtor

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of March 2019, a copy of the foregoing document was filed with the Clerk of Court for the United States Bank-ruptcy Court for the Northern District of Iowa using the CM/ECF system and served electronically on those participants that receive service through the CM/ECF System. The undersigned further certifies the foregoing document was sent to persons or rep-resentatives via electronic mail or U.S. Mail postage pre-paid as set forth below.

Signed: /s/ Hannah Hanser

| Phillip L. Sheets, Ltd.<br>c/o Phillip Sheets<br>7632 Jefferson Rd<br>Belleville, IL 62221 | William John Turk<br>5621 Valhalla Drive<br>North Richland Hills, TX 76180 |
|---|---|

35

Exhibit "A"

| | |
|---|---|
| McDonald Supply/Hajoca Corp<br>c/o Alysia Hedrick<br>P.O. Box 708<br>Dubuque, IA 52004-0708 | Elizabeth M. Lally<br>17838 Burke Street, Suite 250<br>Omaha, NE 68118 |
| Laura M. Hyer<br>Bradley & Riley PC<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 | Joseph E. Schmall<br>Bradley & Riley<br>P.O. Box 2804<br>Cedar Rapids, IA 52406-2804 |
| Eric W. Lam<br>Simmons Perrine Moyer Bergman PLC<br>115 Third Street SE, Suite 1200<br>Cedar Rapids, IA 52401 | |

18978952

36

Exhibit "A"

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>VEROBLUE FARMS USA, INC., *et al*<br><br>Debtors. | Chapter 11 Bankruptcy<br>Case No. 18-01297<br><br>**MINOR MODIFICATIONS TO PLAN** |

COMES NOW VeroBlue Farms USA, Inc. (it and other Debtors in this case are, for ease of reference, referred to as the "Debtor"), by and through counsel, pursuant to Bankruptcy Code section 1127(b):

1.      Sections 5.01, 5.02, 5.03(a), 5.03(b), and 5.03(c) of the Plan are amended to provide that the holder of the applicable Holder of the Allowed Claim will be paid in full in Cash on the Effective Date of the Plan or as soon thereafter as practicable.

2.      The following sentence shall be added to the end of Section 9.15:  "For the avoidance of doubt, Section 9.15 does not apply to the claims of any party to the litigation pending as 19-CV-764 in the United States District Court for the Northern District of Texas, provided that such party does not receive payment or distribution under the Plan.

3.      Section 9.14 of the Plan is amended by deletion of the following phrase:  "OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY."

4.      In addition, the following sentence shall be added to the end of Section 9.14: "Notwithstanding any provision in the Plan, upon entry of the Confirmation Order, parties in the litigation pending as 19-CV-764 in the United States District Court for the Northern District of Texas may, to the full extent the Bankruptcy Code permits, plead any and all

1

defenses for an amount up to but not exceeding any recovery that may be obtained by the
Debtors, without prejudice to each parties' rights to dispute such claims."

5.    All references to "Debtor Releasees" in the Plan shall refer to "Debtor
Released Parties," and vice versa.   The definition of Debtor Releases shall be amended with
the addition of "Rick Sheriff" to the final sentence immediate after "Robert Goodman" and
before "or any affiliate of the foregoing.

Dated:  April 18, 2019.

AG & BUSINESS LEGAL STRATEGIES

Joseph A. Peiffer
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

- and -

ELDERKIN & PIRNIE

/s/ Dan Childers_____
Dan Childers
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Telephone: (319) 362-2137
Facsimile: (319) 362-1640
Email:  dchilders@elderkinpirnie

*Counsel for the Debtors*

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE:<br><br>VEROBLUE FARMS USA, INC., *et al*<br><br>Debtors. | Chapter 11 Bankruptcy<br>Case No. 18-01297<br><br>**AMENDED AND RESTATED MINOR<br>MODIFICATIONS TO PLAN** |

COMES NOW VeroBlue Farms USA, Inc. (it and other Debtors in this case are, for ease of reference, referred to as the "Debtor"), by and through counsel, pursuant to Bankruptcy Code section 1127(b):

1.      Sections 5.01, 5.02, 5.03(a), 5.03(b), and 5.03(c) of the Plan are amended to provide that the holder of the applicable Holder of the Allowed Claim will be paid in full in Cash on the Effective Date of the Plan or as soon thereafter as practicable.

2.      The following sentence shall be added to the end of Section 9.15: "For the avoidance of doubt, Section 9.15 does not apply to any party to the litigation pending as 19-CV-764 in the United States District Court for the Northern District of Texas, provided that such party does not receive payment or distribution under the Plan.

3.      Section 9.14 of the Plan is amended by deletion of the following phrase: "OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR EQUITY INTEREST OR OTHER ENTITY."

4.      In addition, the following sentence shall be added to the end of Section 9.14: "Notwithstanding any provision in the Plan, upon entry of the Confirmation Order, parties in the litigation pending as 19-CV-764 in the United States District Court for the Northern District of Texas may, to the full extent the Bankruptcy Code permits, plead any and all

1

19117706

defenses for an amount up to but not exceeding any recovery that may be obtained by the Debtors, without prejudice to each parties' rights to dispute such claims."

      5.    All references to "Debtor Releasees" in the Plan shall refer to "Debtor Released Parties," and vice versa.   The definition of Debtor Releasees shall be amended with the addition of "Rick Sheriff" to the final sentence immediate after "Robert Goodman" and before "or any affiliate of the foregoing."

      Dated:  May 3, 2019 (reflecting changes announced in Court on April 18, 2019).

AG & BUSINESS LEGAL STRATEGIES

Joseph A. Peiffer
P.O. Box 11425
Cedar Rapids, IA 52410-1425
1350 Boyson Road, Suite A-1
Hiawatha, IA 52233-2211
Telephone: (319) 363-1641
Facsimile: (319) 200-2059
Email:  joe@ablsonline.com

  - and -

ELDERKIN & PIRNIE

/s/ Dan Childers_____
Dan Childers
316 Second Street SE, Suite 124
P.O. Box 1968
Cedar Rapids, IA  52401
Telephone: (319) 362-2137
Facsimile: (319) 362-1640
Email:  dchilders@elderkinpirnie

*Counsel for the Debtors*

2
